**Fidel Cassino-DuCloux**
  Federal Public Defender
**Stephen R. Sady**
  Chief Deputy Federal Public Defender
**Julie Vandiver, Jessica Snyder,**
**Robert Hamilton, Michael Benson,**
**Peyton E. Lee, and Megha Desai**
  Assistant Federal Public Defenders
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel:    (503) 326-2123
Fax:    (503) 326-5524

**David F. Sugerman**, OSB 862984
**Nadia H. Dahab**, OSB 125630
Sugerman Dahab
707 SW Washington St., Ste. 600
Portland, OR 97205
Tel:    (503) 228-6474
Fax:    (503) 228-2556

**Attorneys for Petitioners**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **WALTER BETSCHART, JOSHUA SHANE BARTLETT, CALEB AIONA, TYRIK DAWKINS, JOSHUA JAMES-RICHARDS, TANIELA KINI KIN LATU, RICHARD OWENS, LEON MICHAEL POLASKI, ALEX SARAT XOTOY, AND TIMOTHY WILSON,** on their behalf, and on behalf of all others similarly situated | Case No. 3:23-cv-01097-CL<br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER** |
|                               **Petitioners,**<br><br>    **v.**<br><br>**SHERIFF PATRICK GARRETT, WASHINGTON COUNTY SHERIFF,** in his official capacity.<br><br>                              **Respondent.** | |

The petitioners, through a petition for writ of habeas corpus, seek redress on behalf of a class of indigent criminal defendants in Washington County who are in custody pursuant to criminal charges but have not been provided with counsel. The petition, which was filed on July 27, 2023, requested expedited consideration and raised four claims of constitutional injury, including violations of the Sixth, Eighth, and Fourteenth Amendments. The Court has yet to screen and order the petition served on the respondent pursuant to Rule 4 of the Rules Governing Section 2254 Cases. On August 1, 2023, the petitioners filed a motion for an order to show cause, asking that the respondent be ordered to show cause within three days why relief should not be granted. ECF 4. That motion pointed the Court to the habeas statute's provision calling for the Court to "forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted." *Id.* at 3. On August 2, 2023, the petitioners filed a motion for provisional class certification demonstrating why a class action is appropriate. ECF 5. Because the petitioners are suffering ongoing irreparable harm, the petitioners now ask the Court to enforce the federal constitutional rights that are being violated by their unlawful custody.

The petitioners move the Court to issue a temporary restraining order for the release from custody without conditions of all class members in seven days unless counsel is appointed to represent them in their pending criminal cases. *See, e.g., Oregon Advocacy Center v. Mink*, 322 F.3d 1101 (9th Cir. 2003) (affirming Oregon district court injunction requiring criminal defendants to be placed at the state hospital within seven days of finding of mental incompetence); *Lavallee v. Justices in the Hampden Superior Court*, 812 N.E.2d 895, 911 (Mass. 2004) (ordering that indigent defendants may not be held more than seven days without counsel based on the duty "to remedy an ongoing violation of a fundamental constitutional right to counsel"). Each day that the respondent is permitted to hold the petitioners without counsel compounds the constitutional

injuries. Evidence is lost, opportunities to reach favorable settlements expire, and substantive hearings are held without valid waivers of the right to counsel under *Faretta v. California*, 422 U.S. 806 (1975). To prevent further irreparable harm based on flagrant violations of federal constitutional rights, the Court should order the unconditional release of persons held for an additional seven days without counsel or grant such other relief as "law and justice require" under 28 U.S.C. § 2243.

A.    **The Facts Before The Court Establish The Grounds For A Temporary Restraining Order.**

The requested temporary restraining order easily meets this Court's standards for providing interim injunctive relief, which are that "(1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) an injunction is in the public interest." *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 (D. Or. 2018) (quoting *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008)). The Court may grant a temporary restraining order "if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *Id*. (quoting *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012)). The temporary restraining order is generally of shorter and more limited duration than a preliminary injunction because of lack of notice. *Innovation Law Lab*, 310 F. Supp. 3d at 1156 (granting TRO); *Innovation Law Lab*, 342 F. Supp. 3d 1067 (D. Or. 2018) (granting preliminary injunction). Here, the authorities responsible for the petitioners' custody have had clear notice of the ongoing constitutional violations and the urgent need for relief from unlawful custody.

The petitioners seek a temporary restraining order in a context analogous to the order entered in *Innovation Law Lab*. The temporary restraining order in *Innovation Law Lab* involved imminent and continuing irreparable harm to prisoners in the absence of access to immigration counsel. In *Innovation Law Lab*, the petitioners established a substantial likelihood of success based on the ongoing constitutional violation of keeping detainees from access to immigration lawyers. *Id.* at 1162-63. Here, in similar circumstances, the petitioners are in custody based on an ongoing violation of the Sixth Amendment requirement that they be represented by counsel as well as an array of federal rights that protect the indigent accused. *Rothgery v. Gillespie County*, 554 U.S. 191, 194 (2008) (holding that the right to counsel attaches at the initiation of criminal proceedings for a defendant who was detained for three weeks without the assistance of an attorney); *Gideon v. Wainwright*, 372 U.S. 335 (1963); *see Soldal v. Cook County*, 506 U.S. 56, 70 (1992) ("Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands."). The Sixth Amendment right is unequivocal and firmly established by the Supreme Court, as are the rights under the Eighth and Fourteenth Amendments.

Each of the considerations for issuance of a temporary restraining order are clearly established by the petitioners in this case.

### 1.    The Class Has A Substantial Likelihood Of Success On The Merits.

Petitioners are likely to succeed on the merits of their Sixth, Eighth, and Fourteenth Amendment Claims. There is no question that petitioners, and the class of indigent criminal defendants they represent, are constitutionally entitled to appointed counsel. *See Gideon*, 372 U.S. at 344 (the Sixth Amendment guarantee to counsel is a fundamental and essential right); *Rothgery*, 554 U.S. at 194 (the Sixth Amendment right to counsel attaches at the beginning of adversarial proceedings). Despite this right, scores of criminal defendants are facing charges in Washington

County but have not been provided a lawyer. The class has had their liberty curtailed without an adversarial hearing with the benefit of counsel in violation of the Eighth Amendment and substantive due process protected by the Fourteenth Amendment. *See United States v. Salerno*, 481 U.S. 739, 755 (1987) (to be constitutional, pretrial detention requires procedural safeguards and an adversarial hearing); *Boumediene v. Bush*, 553 U.S. 723, 739 (2008) (the Due Process Clause protects freedom from unlawful restraint). Furthermore, only indigent persons are deprived of their right to counsel and subject to uncounseled adversarial proceedings, in violation of the Equal Protection Clause of the Fourteenth Amendment. *Bearden v. Georgia*, 461 U.S. 660, 665 (1983) (differential treatment based on indigency violates the Equal Protection Clause).

The ongoing violation of these constitutional rights has been openly discussed and widely acknowledged. The State of Oregon publishes daily a summary of the persons who are unrepresented.[1] As of this filing, there are 309 persons facing criminal charges in Washington County who are without counsel.[2]

---

[1] Oregon Judicial Department's (OJD's) Unrepresented Individuals Data Dashboard, available at: https://app.powerbigov.us/view?r=eyJrIjoiNDQ2NmMwYWMtNzhiZi00MWJhLWE3MjgtMjg2 ZTRhNmNmMjdmIiwidCI6IjYxMzNlYzg5LWU1MWItNGExYy04YjY4LTE1ZTg2ZGU3MW Y4ZiJ9 (last visited Aug. 7, 2023).

[2] This dashboard uses the term "custody" to describe individuals in the Washington County Detention Center and "out of custody" to describe individuals who are in the community under restrictive conditions. For the purposes of habeas, both sets of individuals are in custody. *See Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973) (a person is in custody when subjected to restraints not shared by the public generally and has an obligation to appear at all times and places ordered by the court).



The Washington County Circuit Court recently issued a ruling in an individual case acknowledging the large number of unrepresented persons and the lengthy delay in the provision of counsel:

> Since about February 2022, criminal defendants in Washington County, Oregon have waited longer to receive court appointed counsel than in previous months, and possibly years. Currently there are approximately seventy-nine defendants in custody waiting for attorneys in Washington County. Of those, two have been waiting for an attorney for over 100 days and they are faced with Measure 11 charges.[3]

A Washington County prosecutor has acknowledged the ongoing constitutional violations:

> At every turn OPDS insists on a framework which gives it sole control over violating the constitution [sic] rights of defendants and others by failing to provide legal representation. It disallows this Court's ability to step in despite this Court observing ongoing violations of constitutional rights under its own roof. The Presiding Judge is being told to step aside and not interfere when constitutional

---

[3] Order Re: State's Motion to Identify Counsel Without Delay and Increase Defense Attorney Compensation As Needed at 2, *Oregon v. Applegate*, 23CR16895 (Washington County July 10, 2023).

rights of criminal defendants and victims are being violated on an ongoing basis. This is insanity. It cannot be allowed to continue.[4]

In another pleading, the prosecutor, moving the state court to appoint defense counsel, described

the violation of the right to an attorney:

> Together, the State and the defendants face an analogous situation in the instant cases. The defendants have a constitutional right to an attorney, but the PDSC and OPDS are exercising statutory authority in a manner that effectively deprives them of that representation. Due Process requires this court to place the defendant's constitutional rights above the statutory authority of OPDS.[5]

In proposed class representative Sarat Xotoy's case, the prosecutor filed a motion for identification

of counsel, recognizing that his fundamental rights were being violated:

> It is a fundamental principal of our American justice system that criminal defendants are entitled to legal representation in court. Oregon courts are obligated and empowered to ensure criminal defendants are properly represented by counsel as required by both the Oregon and United States Constitution. *See State v. Langley*, 351 Or 652, 663 (2012) ("A defendant in a criminal case has a constitutional right to adequate assistance of counsel under both Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution."[6]

This statement was made in Mr. Sarat Xotoy's case in December 2022, and he is still without

counsel. Even a fraction of this delay is unacceptable. As the petitioners can easily establish that

their constitutional rights have been violated, they have met their burden to show a likelihood of

success on the merits.

---

[4] State's Memorandum in Response to OPDS Pleading and Argument at 7, *State v. Boyd, Smith, Applegate*, C130935CR; C053243CR; 23CR16895 (Washington County Circuit Court June 30, 2023).

[5] Motion to Identify Defense Counsel Without Delay and Increase Defense Attorney Compensation as Needed at 6-7, *State v. Boyd, Smith, Applegate*, C130935CR; C053243CR; 23CR16895 (Washington County Circuit Court June 12, 2023).

[6] Motion to Require the Identification of Defense Counsel Without Delay at 2, *Oregon v. Sarat Xotoy*, 22CR58185 (Washington County December 13, 2022).

2.    **The Class Is Suffering Irreparable Harm.**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976)). Nowhere is this deprivation more clearly established than where a person is incarcerated or otherwise in custody in violation of their constitutional rights. *See Zavydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.") (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). The Ninth Circuit has even upheld a finding of irreparable harm where the plaintiff shows a "real *possibility*" that they would be subjected to unlawful detention. *Melendres*, 695 F.3d at 1002 (emphasis added). Here, petitioners are presented with far more than a "real possibility"—they are actively and indefinitely being held in unlawful custody without access to an attorney.

During the petitioners' unlawful custody, none of the critical functions of defense counsel are being performed on their behalf: they have no attorney to contest their detention or restrictions in the community, no one to counsel them about their charges, and no one to investigate their cases and preserve relevant evidence. As the Supreme Court described in *Powell v. Alabama*, "from the time of their arraignment until the beginning of their trial, when consultation, thoroughgoing investigation and preparation were vitally important, the defendants did not have the aid of counsel in any real sense, although they were as much entitled to such aid during that period as at the trial itself." 287 U.S. 45, 57 (1932).

Members of the class face a terrible decision—go forward in the absence of counsel or allow their criminal case to stall. For those who decline to move forward without counsel, their lives are on hold, either because they are in detention, under house arrest, or the threat of their

conviction hangs over them. At a court appearance on July 19, 2023, proposed class representative Leon Polaski, who had been unrepresented and in custody for 30 days, asked when counsel would be appointed for him, and the Court responded it did not know. When Mr. Polaski asked to enter a no contest plea to his charges, the Court responded it would not take a plea from an unrepresented person. Another class member and named petitioner, Tyrik Dawkins was subject to an uncounseled preventative detention hearing during which the State introduced nine pieces of evidence and the victim gave a statement requesting Mr. Dawkins be detained. Other class members are unable to investigate their cases, either because they are in jail, on house arrest, or because their restrictive conditions preclude them from contacting witnesses or alleged victims.

Every day in custody is another day of the petitioners' lives they could have lived without these restraints on their liberty. The unnecessary deprivation of liberty in and of itself constitutes irreparable harm. *Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017) (granting preliminary injunction based on irreparable harm from due process violations related to immigration detention); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144-45 (9th Cir. 2013) (same). Moreover, custody imposes considerable economic and personal harm to petitioners. It is widely acknowledged that "[p]retrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975); *see also Barker v. Wingo*, 407 U.S. 514, 532-33 (1972) ("The time spent in jail awaiting trial . . . often means loss of a job; it disrupts family life; and it enforces idleness . . .. the time spent in jail is simply dead time . . .. even if a [defendant] is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility"). Furthermore, the families of these indigent defendants are also subject to collateral harms.

Without the intervention of a federal court, class members will remain indefinitely in custody and indefinitely uncounseled, resulting in current and future irreparable harm.

**3.      The Balance Of Equities Tips In Favor Of The Class.**

The balance of the equities strongly favors the petitioners. The ongoing and serious harm to petitioners caused by their continued custody and deprivation of constitutional rights greatly outweighs any potential harm to the respondent. Furthermore, the petitioners and the proposed class members are blameless for their lack of counsel while state actors have failed to either provide appointed counsel or make charging decisions commensurate with available defense counsel. *See Innovation Law Lab*, 310 F. Supp. 3d at 1163 ("The equities in this case also tip sharply in favor of emergency relief. Plaintiffs request only that BOP and ICE actually provide the same degree of access to legal assistance that their own regulations purport to guarantee."). Without immediate relief, petitioners and proposed class members will remain in custody and without an attorney. Conversely, there is no countervailing injury to the respondent because the restraining order asks for counsel, something to which each proposed class member already has a constitutional and statutory entitlement. Therefore, the respondent cannot show that the requested temporary restraining order will pose any undue burden on their time, resources, or personnel. Importantly, any such burden is more than justified by the constitutional obligation to fulfill petitioners' and proposed class members' constitutional rights. *Id.*

**4.      A Temporary Restraining Order Is In The Public Interest.**

The public interest is necessarily served with the vindication of an individual's federal constitutional rights. *Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."); *accord Innovation Law Lab*, 310 F. Supp. at 1163 (same). This is particularly true in this case, as the constitutional rights at issue here are the most

fundamental of the rights protected by the Fifth, Sixth, Eighth, and Fourteenth Amendments. The public interest is also undoubtedly furthered by protecting the petitioners' presumption of innocence—"that bedrock 'axiomatic and elementary principle whose 'enforcement lies at the foundation of the administration of our criminal law.'" *In re Winship*, 397 U.S. 358, 363 (1970) (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895)).

Further, the failure to provide counsel to the class members impedes the progress of criminal prosecutions, contrary to the public interest in a functioning court system. In a recent proceeding Washington County Circuit Court described the impact from the denial of counsel: "It's not just a tragedy for the defendants. Isn't it a tragedy for the victims who may not have their day in court again and are waiting for justice? And justice could be denied if these people don't get attorneys."[7] There is a substantial public interest in ensuring that all government agencies "abide by the federal laws that govern their existence and operations." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). Finally, the widespread detention of criminal defendants in violation of their constitutional rights erodes the public faith in the court system. For all these reasons, granting this temporary restraining order serves the public interest.

**B.      This Court Should Adopt The Remedy For Ongoing Federal Constitutional Violations Of Unconditional Relief If No Counsel is Provided Within Seven Days.**

The petitioners should not spend another day in unlawful custody because, in the Sixth Amendment context, "any amount of additional jail time" has constitutional significance. *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) (citing *Glover v. United States*, 531 U.S. 198, 203 (2001)). In formulating equitable relief in analogous circumstances, courts have permitted seven days for

---

[7] Ex. A Transcript of Proceedings in *State v. Applegate*, Case No. 23CR16895 at 25.

**Page 11 MOTION FOR TEMPORARY RESTRAINING ORDER**

state actors to comply with constitutional obligations. The requested relief is well-established by the Ninth Circuit in *Mink* as reinforced by the *Lavallee* opinion.

> 1.    In ***Mink***, The Ninth Circuit Approved A Seven-Day Limit To Redress The Due Process Rights Of Persons Committed For Competency Restoration.

In *Mink*, this Court set a seven-day limit on the time mentally incompetent state criminal defendants could be held in jail while waiting for a treatment bed. *Oregon Advocacy Center v. Mink*, No. CV 02-339-PA, 2002 WL 35578910 (D. Or. May 10, 2002), *judgment entered*, No. CV 02-339-PA, 2002 WL 35578888 (D. Or. May 15, 2002). Judge Panner entered findings of fact that persons adjudicated mentally incompetent were not being properly transported to a treatment bed, and were instead being kept in jails waiting, concluding that the state actors "have violated, and are violating, the due process rights of criminal defendants determined by the state courts to be incompetent to stand trial." *Id*. at *6.

The state competency statute, which was designed to adhere to the constitutional requirements of *Jackson v. Indiana*, 406 U.S. 715 (1972), provided for transportation to a treatment bed "as soon as practicable." *Id*. at *2. The state's claim that resources were insufficient to comply with the Constitution provided no excuse:

> There is no rationalization that passes constitutional muster for unreasonably detaining persons found unfit to proceed in county jails. The lack of funds, staff or facilities cannot justify defendants' failure to provide persons found unfit with the treatment that is necessary to attempt restoration of competency.

*Id*. at *6. Judge Panner's order, adopted into a permanent injunction, provided for admission of state criminal defendants to treatment in a timely manner, "completed not later than seven days after the issuance of an order determining a criminal defendant to be unfit to proceed to trial because of mental incapacities." *Id*. at *7.

**Page 12 MOTION FOR TEMPORARY RESTRAINING ORDER**

The present case involves even more egregious violations of federal constitutional rights and the same complaint about lack of resources. Here, the Sixth Amendment right to counsel and the accompanying rights to due process and equal protection unequivocally have been and are currently being violated. The state statute implementing the Sixth Amendment requires appointment of counsel at arraignment. Or. Rev. Stat. 135.045(a) provides that "[i]f a defendant in a criminal action appears without counsel at arraignment or thereafter, the court shall determine whether the defendant wishes to be represented by counsel." The following subsection provides that "[i]f the defendant does wish to be represented by counsel," and is eligible for court-appointed counsel, "the court . . . shall appoint counsel to represent the defendant." Or. Rev. Stat. 135.045(b). Counsel is to be provided for any financially eligible person "who is before a court . . . charged with a crime." Or. Rev. Stat. 135.050(5)(a).

As with the *Mink* claims of insufficient resources, the state actors in the present case also complain that they are helpless to prevent the violation of the right to counsel due to lack of resources. As in *Mink*, this Court should reject claims that constitutional rights are only available to the extent that the state chooses to fund them. *See also United States v. Donnelly*, 41 F.4th 1102, 1108–09 (9th Cir. 2022) ("The BOP's bureaucratic failure to allocate adequate agency resources to meet the demand for competency evaluations is not, of course, a legitimate excuse for failing to comply with the four-month time limit Congress imposed in § 4241(d)(1).") (Watford, J., concurring).

On the state's appeal of *Mink*, the Ninth Circuit affirmed in a published opinion. *Oregon Advocacy Center v. Mink*, 322 F.3d 1101 (9th Cir. 2003). As in the present case, the Ninth Circuit recognized the continuing irreparable harm to pretrial criminal defendants in violation of their substantive due process rights: "We are also mindful of the undisputed harms that incapacitated

criminal defendants suffer when they spend weeks or months in jail waiting for transfer to [Oregon State Hospital]." *Mink*, 322 F.3d at 1120. The court also acknowledged that pretrial detainees have a due process right to liberty absent a criminal conviction. *Id*. at 1121. And that this liberty interest cannot be impaired based on claims that resources are insufficient to comply with constitutional minimum standards: "Lack of funds, staff or facilities cannot justify the State's failure to provide [such persons] with [the] treatment necessary for rehabilitation." *Id*. (quoting *Ohlinger v. Watson*, 652 F.2d 775, 779 (9th Cir. 1980)). The Ninth Circuit concluded that the state's "ongoing violations of substantive and procedural due process are sufficient to support the district court's injunction." *Id*. at 1122 (footnotes omitted).[8]

The petitioners are reluctant to advocate a hierarchy of federal constitutional violations, but the serious constitutional violations suffered by the *Mink* plaintiffs are matched and exceeded in the present case. Each person in the proposed class suffers dead time delay while waiting for an attorney to be appointed, just as the mentally incompetent defendants did waiting for treatment in *Mink*. But even worse, the petitioners here have no attorney advocating for them, preserving evidence, explaining procedures, negotiating on their behalf, and providing resources for defendants and their families in both trial preparation as well as the comfort of not standing alone before the power of the prosecution. Furthermore, unlike *Mink*, this class is limited to those lacking

---

[8] In response to the pandemic emergency, the Court modified the permanent injunction while recognizing the ongoing harm to pretrial detainees, which the Ninth Circuit vacated as insufficiently protective of the defendants' rights. *Oregon Advocacy Center v. Mink*, No. 3:02-CV-00339-MO, 2020 WL 2465331(D. Or. May 13, 2020), *vacated and remanded sub nom. Oregon Advocacy Center v. Allen*, No. 20-35540, 2021 WL 3615536 (9th Cir. Aug. 16, 2021) ("The district court's modification of the Mink injunction's mandatory seven-day deadline for OSH to admit .370 patients without imposing meaningful parameters to ensure that the interests of those patients are served to the greatest possible extent."). In ruling, the Ninth Circuit quoted Judge Panner's 2002 opinion: "Every day of delay in transport harms those found unfit to proceed and hampers their ability to defend themselves." *Id*. at *1.

Page 14 MOTION FOR TEMPORARY RESTRAINING ORDER

sufficient wealth to hire an attorney: identically situated defendants suffer none of the isolation, delay, lack of preparation, and other harms suffered by the indigent accused who are without counsel.

This Court should follow the *Mink* example by enjoining any further restriction on liberty if counsel is not provided within seven days.

**2.     In *Lavallee*, The Massachusetts Supreme Court Ordered Release Of Pretrial Detainees If Court-Appointed Counsel Were Not Provided Within Seven Days.**

In *Lavallee v. Justices in the Hampden Superior Court*, the Committee for Public Counsel Services and the ACLU of Massachusetts filed petitions on behalf of indigent criminal defendants being held in custody without an attorney because of "chronic underfunding of the assigned counsel system[.]" 812 N.E.2d 895, 900 (Mass. 2004). Although the state court asserted lack of resources to provide appointed counsel, the Massachusetts Supreme Judicial Court held that the petitioners were being unlawfully deprived of their constitutional right to counsel, resulting in severe restrictions on their liberty and other constitutional interests. As a remedy, the court ordered that, "on a showing that no counsel was available to represent a particular indigent defendant despite good faith efforts, such a defendant could not be held more than seven days and the criminal cases against such a defendant could not continue beyond 45 days." *Id*. at 901. Furthermore, the court insisted that "proceedings in which a defendant cannot participate meaningfully may not be allowed to proceed." *Id*. at 911.

The seven-day time limit the court ordered in *Lavallee* was informed by the severity of the ongoing constitutional violations as well as the court's assessment of the public interest more broadly. Pretrial restrictions implicated fundamental liberty interests: "Several petitioners allege, and it is not disputed, that they have been ordered held in lieu of bail, or pursuant to an order of

Page 15 **MOTION FOR TEMPORARY RESTRAINING ORDER**

preventive detention, without the assistance of counsel." *Id*. at 902. The court explained that "ordering [a seven-day time limit] recognizes the public's strong interest in bringing serious criminals to justice swiftly, but it also recognizes society's vital interest in the fair conduct of criminal proceedings." *Id*. at 911.[9]

In its opinion, the Massachusetts Supreme Court emphasized the importance of establishing a time limit in order to adequately and expeditiously respond to the severe, ongoing violations of criminal defendants' rights. "That deadline provides certainty to the defendants who are suffering a violation of their rights, and also provides all concerned with an opportunity of known duration to make all reasonable efforts to cure this violation in the most direct and effective way, i.e., to secure counsel for the defendant." *Id*. at 912.

The court also made clear that the seriousness of crimes charged did not permit abandonment of the constitutional rights at issue: "Public safety, however, comes with a cost." *Id*. at 910. "One of the components of that cost is the level of compensation at which counsel for indigent defendants will provide the representation required by our Constitution." *Id*. The court noted that the lack of counsel resulted from decisions and policies years in the making, but the burden could not be borne by the indigent accused: "The continuation of what is now an unconstitutional state of affairs cannot be tolerated." *Id*.

This Court should share the *Lavallee* court's revulsion at the ongoing violations of indigent defendants' constitutional rights, its commitment to remedying these violations, and its confidence

---

[9] The forty-five-day time limit set before dismissing defendants' criminal charges without prejudice was based on the Massachusetts Rule of Criminal Procedure: "[Forty-five days is] a period of time that approximates the outer limits contemplated by the rules of criminal procedure for the completion of discovery and making decisions about specific defenses in routine cases where counsel is actively involved." *Id*.

**Page 16 MOTION FOR TEMPORARY RESTRAINING ORDER**

that, by foreclosing an unconstitutional status quo, "the legislative and the executive branches [will] devise a response to the right of indigent criminal defendants to counsel that fully protects the public safety." *Id*. Accordingly, this Court should order a seven-day time limit on custody for indigent criminal defendants without an attorney.

### 3.    The Requested Relief Is Well Within The Authority Of The Court.

The Supreme Court has recognized the federal courts' obligation and broad authority to enforce all persons' constitutional rights in contexts where the enforcement of individual rights may be administratively inconvenient. *See Brown v. Plata*, 563 U.S. 493, 511 (2011) (stating that the Court will "not shrink from [its] obligation to enforce the constitutional rights of all persons . . . [and] courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration"); *Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies"); *Missouri v. Jenkins*, 515 U.S. 70, 124-25 (1995) (explaining that, when the Constitution is violated, trial courts have "virtually boundless discretion in crafting remedies") (Thomas, J., concurring).

The recognition of federal courts' broad authority to enforce the Constitution is consistent with the congressional directive that this Court should resolve habeas corpus claims "as law and justice require." 28 U.S.C. § 2241. Habeas corpus "is, at its core, an equitable remedy." *Boumediene*, 553 U.S. at 780 (quoting *Schlup v. Delo*, 513 U.S. 298, 319 (1995)). "The very nature of the writ demands that it be administered with the initiative and flexibility essential to ensure that miscarriages of justice within its reach are surfaced and corrected." *Harris v. Nelson*, 394 U.S. 286, 291 (1969). As a result, a federal court considering a habeas corpus claim is vested with "the

largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (quoting *In re Bonner*, 151 U.S. 242, 261 (1894)). The Court should exercise its full equitable authority to require compliance with minimum standards required by federal constitutional provisions by ordering unconditional release of class members if counsel is not provided within seven days and such other relief "as law and justice require."

For the foregoing reasons, the petitioners respectfully request that the Court enter an order granting the motion for provision class certification and require the respondent to release all class members from custody within seven days unless they are provided counsel.

Respectfully submitted, this 8th day of August, 2023.

*/s/ Fidel Cassino-DuCloux*          */s/ David Sugerman*
Fidel Cassino-DuCloux               David Sugerman

*/s/ Stephen R. Sady*               */s/ Nadia Dahab*
Stephen R. Sady                     Nadia Dahab

*/s/ Julie Vandiver*
Julie Vandiver

*/s/ Jessica Snyder*
Jessica Snyder

*/s/ Robert Hamilton*
Robert Hamilton

*/s/ Peyton E. Lee*
Peyton E. Lee

*/s/ Megha Desai*
Megha Desai

*/s/ Michael Benson*
Michael Benson