IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| WALTER BETSCHART, JOSHUA SHANE BARTLETT, CALEB AIONA, TYRIK DAWKINS, JOSHUA JAMES-RICHARDS, TANIELA KINI KINI LATU, RICHARD OWENS, LEON MICHAEL POLASKI, ALEX SARAT XOTOY *and* TIMOTHY WILSON, *on their behalf, and on behalf of all others similarly situated*, | Case No.: 3:23-cv-01097-CL <br><br> OPINION AND ORDER |
| Plaintiffs, | |
| vs. | |
| SHERIFF PATRICK GARRETT, *Washington County Sheriff, in his official capacity*, *and* WASHINGTON COUNTY CIRCUIT COURT JUDGES, *in their official capacities*, | |
| Defendants. | |

MCSHANE, J.:

The Petitioners comprise two groups of pre-trial defendants who share the same constitutional challenge; they have been charged with crimes in Washington County, Oregon, and are without access to an attorney. Some of these petitioners have been released from custody and are subject to certain liberty constraints as a condition of their release. While the Court recognizes that these petitioners may in fact comprise a cognizable class, the record developed here is not sufficient at this stage for class certification, nor does the court believe that this

1 – OPINION AND ORDER

purported class's injury is so great as to require immediate emergency relief. The claims of this group of pre-trial defendants will be litigated further at the hearing for a Preliminary Order.

Of more immediate concern is that group of Petitioners who have been ordered detained to the custody of the Washington County Sheriff and are without an attorney or sufficient process to secure their release or defend their case. In essence, they have been locked away without a voice, being too poor to afford an advocate to speak for them in the courtroom. And the Petitioners are not alone. As of August 15, 2023, there are 32 indigent defendants housed in Washington County Detention Centers without access to counsel. [1] At their arraignments, many of these individuals were "appointed" a public defender through the Office of Public Defense Commission ("OPDC") as a placeholder, but no attorney ever appeared to represent them. Because these petitioners are suffering irreparable injury and likely to succeed on the merits of their claims, they (and those similarly situated) are entitled to the emergency relief discussed below.

## PROCEDURAL POSTURE

On July 27, 2023, Petitioners filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, seeking redress for the violation of their constitutional rights under the Sixth, Eighth, and Fourteenth Amendments. ECF No. 1. Before the Court are Petitioners' Motions for Provisional Class Certification and Temporary Restraining Order. ECF Nos. 6, 7. Petitioners seek (1) provisional class certification of all unrepresented indigent defendants in Washington County and (2) the unconditional release of all class members from custody, in seven days, unless counsel is appointed to represent them. Mot. for Prov. Class Cert. 2, ECF No. 6; Mot. Temp. Rest. Order 2, ECF No. 7. Respondent, Washington County Sheriff Patrick Garrett, filed a

---

[1] https://app.powerbigov.us/view?r=eyJrIjoiNDQ2NmMwYWMtNzhiZi00MWJhLWE3MjgtMjg2ZTRhNmNmMjdmIiwidCI6IjYxMzNlYzg5LWU1MWItNGExYy04YjY4LTE1ZTg2ZGU3MWY4ZiJ9.

2 – OPINION AND ORDER

Response on August 14, 2023, (ECF No. 19) and the Court held an emergency hearing on August 15, 2023. For the following reasons, Petitioners' Motion for Provisional Class Certification (ECF No. 6) is GRANTED in part and DENIED in part. Furthermore, because Petitioners have made a showing of irreparable harm, their Motion for Temporary Restraining Order (ECF No. 7) is GRANTED in part and DENIED in part.

## BACKGROUND

Joshua Shane Bartlett was housed at the Washington County Detention Center for 48 days and represented himself in five separate hearings without an attorney. Am. Pet. for Writ. Habeas Corpus. 6–7, ECF No. 18 ("Am. § 2241 Pet."). On August 13, 2023, Mr. Bartlett pled guilty to one count of Assault in the Fourth Degree — the Court assumes without the advice of counsel — and has since been released. Resp't's Obj. to Mot. for Temp. Rest. Order. 3, ECF No. 19 ("Resp't's Obj.").

Walter Betschart made his first appearance in court on April 20, 2023 and has been held in detention since June 6, 2023. Am. § 2241 Pet. at 7. He went without an attorney for 102 days and made eight court appearances while unrepresented before being assigned counsel on July 31, 2023. *Id.*; Resp't's Obj. 3.

Tyrik Dawkins has been in custody at the Washington County Detention Center since May 10, 2023. Am. § 2241 Pet. at 8. Although he was appointed counsel after being detained for nearly a month, his counsel withdrew on June 27, 2023 and he has been unrepresented ever since. *Id*. Mr. Dawkins has appeared in court four times without counsel. *Id*.

Joshua James-Richards has been in custody since June 21, 2023 and has made three court appearances while unrepresented. *Id*. at 9. At these hearings, he appeared on his behalf and

testified under oath without "the benefit of counsel to discuss a choice to testify or not." *Id*. He has been without counsel for 56 days. *Id*.

Taniela Kini Kini Latu has been in custody since June 23, 2023 and appeared in court by himself three times before he was assigned counsel on July 31, 2023. *Id*.; Resp't's Obj. 3.

Richard Owens Jr. was placed in custody on June 12, 2023, without an attorney. Am. § 2241 Pet. at 10. At his pretrial detention hearing, "the court required Mr. Owens to waive counsel at that hearing in order for the court to consider releasing him[.]" *Id*. Mr. Owens could not afford his $100,000 bail and remained in custody until August 4, 2023, the day after he was finally appointed counsel. *Id*.; Resp't's Obj. 3–4.

Leon Michael Polaski has been in custody without an attorney since June 21, 2023 and has appeared for at least four hearings by himself. Am. § 2241 Pet. at 10–11. In a declaration to the Court, Mr. Polaski described one of his hearings as follows:

> At my court appearance for a preventative detention hearing on July 19, 2023, I asked Judge Summer when I would get a lawyer appointed. When Judge Summer responded, "I don't know," I told the court that this was "unconstitutional." Judge Summer responded, "I know . . . . you won't get a disagreement from me or from the prosecutor that you should have a lawyer. It is an unfortunate circumstance that we are in with the state." The court then proceeded with a preventative detention hearing without a lawyer assisting me.

Pet'rs' Ex. L, "Polaski Decl." at 2. Mr. Polaski was finally appointed an attorney on August 2, 2023, after 42 days without representation. Resp't's Obj. 4.

Alex Sarat Xotoy made his first appearance without counsel on December 5, 2022 and was held in custody until May 9, 2023, when he was conditionally released. Am. § 2241 Pet. at

11. Although he was briefly appointed counsel, he has been unrepresented for the past 137 days[2] and has made at least 16 court appearances on his own. *Id*. at 11-12.

Timothy Wilson was placed in custody on June 6, 2023 and attended at least five court hearings without counsel. *Id*. at 12. He was appointed counsel on August 2, 2023 and was conditionally released from custody on August 9, 2023. Resp't's Obj. 4.

Caleb Aiona has been unrepresented since April 17, 2023 and has made three appearances without counsel, while released on bail. Am. § 2241 Pet. at 6. As of today's date, Mr. Aiona has been without counsel for 121 days.

## STANDARDS

### I. Class Certification

A party seeking class certification must show the: "(1) numerosity of plaintiffs; (2) [that] common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)). Under Fed. R. Civ. P. 23(b)(1)-(3), "a party must also demonstrate one of the following:

> (a) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; (b) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (c) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action."

*Hernandez v. Lynch*, No. EDCV 16-00620-JGB, 2016 WL 7116611, at *13 (C.D. Cal. Nov. 10, 2016), *aff'd sub nom. Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017).

### II. Temporary Restraining Order

---

[2] At oral argument, Petitioners' counsel averred that Mr. Xotoy has been without an attorney for a *total* of 209 days.

5 – OPINION AND ORDER

A party seeking a preliminary injunction must establish (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and that (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365, 374 (2008). The mere possibility of irreparable harm is not enough. Rather, the plaintiff must establish such harm is likely. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The standards for issuing a temporary restraining order are similar to those required for a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Ca. 1995). The Court's decision on a motion for a temporary restraining order or a preliminary injunction is not a ruling on the merits. *See Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

## DISCUSSION

### I. Exhaustion of State Remedies

As an initial matter, this Court has jurisdiction over Petitioners' habeas corpus proceeding pursuant to 28 U.S.C. § 2241. Although section 2241 does not statutorily require petitioners to exhaust state remedies before bringing a habeas corpus petition, under the judicially created doctrine of exhaustion, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted. *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004). Generally, "federal courts elect not to entertain habeas corpus challenges to state court proceedings until habeas petitioners have exhausted state avenues for raising [a] federal claim." *Carden v. State of Montana*, 626 F.2d 82, 83 (9th Cir. 1980). The exhaustion principle stems from the doctrine of *Younger* abstention, which ordinarily "prevent[s]

federal interference with state adjudication, especially state criminal trials." *Id*; *See Younger v. Harris*, 401 U.S. 37, 46 (1971).

However, in limited circumstances, "courts have *discretion* to waive the exhaustion requirement when it is prudentially required." *Laing*, 370 F.3d at 998 (emphasis added). This is particularly true in situations where the pursuit of state remedies would be inadequate or futile, or where irreparable injury will occur without swift intervention. *Id*. at 1000–1001; *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). While *Hernandez* and *Laing* deal with exhaustion of administrative remedies, the Ninth circuit has applied the same reasoning to the exhaustion of state court remedies in habeas corpus proceedings involving the violation of criminal defendants' constitutional rights. *Hendricks v. Zenon*, 993 F.2d 664, 672 (9th Cir. 1993) (waiving exhaustion of remedies rule because State's violation of petitioner's Sixth amendment rights presented one of the "rare cases where exceptional circumstances of peculiar urgency are shown to exist."); *See also Carden*, 626 F.2d at 83. (Describing "extraordinary" or "special circumstances exception to the general rule against pre-conviction federal intervention in cases where [habeas] petitioners can show irreparable injury").

This appears to be a case of rare urgency, presenting the very extraordinary circumstances which demand federal intervention. Petitioners are being held in custody without counsel by order of the State, and they have a right to the prompt disposition of claims concerning the ongoing violation of their rights under the Sixth and Fourteenth Amendments of the United States Constitution. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994 (internal quotations omitted), (citing *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). For this reason alone, the Court may waive section 2241's exhaustion requirement.

7 – OPINION AND ORDER

Exhaustion here also appears futile. Without the aid of counsel, indigent defendants in custody cannot be expected to properly challenge the constitutionality of their detention, let alone proceed with their underlying criminal cases. Exhaustion of state remedies would require Petitioners to petition for their release before the Circuit Court in which they are being held. This is the very court that is depriving them of their right to counsel and holding them indefinitely in custody. Even if Petitioners were adequately suited to challenge their detention, it is apparent that the Circuit Court has already considered and rejected this constitutional matter each time it has held one of the Petitioners in custody without an attorney.[3] In other words, the Circuit Court appears here to have already taken a position that its procedure is acceptable under the Constitution. In such cases, exhaustion of a state court procedure would be futile.

To deny Petitioners relief today simply because of their inability to adhere to "arcane and scholastic procedural requirements" offends the very purpose of the habeas corpus statute. *Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist., Santa Clara Cnty., California*, 411 U.S. 345, 350 (1973). A petition for a writ of "habeas corpus is not a static, narrow, [or] formalistic remedy," but rather, one which provides the "speed, flexibility, and simplicity" to swiftly remedy unconstitutional "restraints on individual liberty." *Id*. at 349–351.

## II. Provisional Certification of Class Action

Petitioners ask this Court to provisionally certify the following class of individuals:

> All indigent persons facing criminal charges in Washington County, Oregon, who are housed in the Washington County Detention Center or are otherwise in custody because they have restrictions on their liberty in the community, and who have not had an attorney appointed to their case or have had an attorney appointed to their case who subsequently withdrew from the case and no substitute counsel has been appointed.

---

[3] *See supra*, at 4 ("Polaski Decl.") for an illustration of Mr. Polaski's futile attempt to challenge the unconstitutionality of his detention in a state court proceeding.

8 – OPINION AND ORDER

Mot. for Prov. Class Cert. 2. Respondent Garrett argues that this class broadly "lump[s] together two separate but critically distinct groups" of individuals; those who are being held in physical custody and those who have been conditionally released into the community. Resp't's. Obj. 8. The Court agrees that unrepresented indigent defendants who are presently *out of custody* in Washington County do not require the same level of urgency as those being physically detained. The Court will determine whether an ascertainable out of custody class exists at a future date, but for now, the Court simply does not have an adequate record to decide whether the conditionally released defendants share the same issues of fact or are being so harmed as to justify emergency relief.

At present, the Court will provisionally certify a class of criminal defendants who are: (1) indigent and unable to afford an attorney, (2) facing criminal charges in Washington County, (3) who are physically housed in a Washington County Detention Center, and (4) who have not had an attorney appointed to represent them within ten days of their initial appearance, (5) or have had an attorney appointed to their case who subsequently withdrew and no substituted counsel has been appointed within ten days of their withdrawal.

Respondent Garrett argues that Petitioners cannot adequately represent the in-custody defendant class because several of the named Petitioners have now been assigned counsel or their criminal matters have resolved, and therefore, their habeas claims are moot. Resp't's. Obj. 1, 9, 10. But courts have "recognized the right of class representatives to prosecute inherently transitory claims (claims which by their nature may expire for any one individual during the course of the litigation) for those remaining members of the class who are still being injured by the policy or practice." *Padilla v. U.S. Immigr. & Customs Enf't*, 379 F. Supp. 3d 1170, 1174 (W.D. Wash. 2019), *reversed on other grounds*; *Sosna v. Iowa*, 419 US 393, 402 (1975) ("[A]

9 – OPINION AND ORDER

controversy may exist . . . between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot."). Although named Petitioners Betschart, Latu, Owens Jr., Polaski, and Wilson were recently appointed attorneys, the transitory nature of their claims allows them to represent the fluctuating class of defendants in Washington County detention who face ongoing constitutional violations.

The Court finds that this class meets the requirements of numerosity, commonality, typicality, and adequacy under Fed. R. Civ. P. 23(a)-(b). Petitioners who are (or were) in physical custody in Washington County fairly and adequately represent the interests of the class and are represented by experienced and competent counsel in this matter. Their claims are typical of the class, and class members share common questions of law and fact. They are all in-custody indigent individuals who have been charged with a crime and are being detained indefinitely without counsel in violation of the Sixth and Fourteenth Amendments.

Moreover, class members are easily ascertainable and sufficiently numerous that individual litigation is impractical. *See* FED. R. CIV. P. 23(b)(1)-(3). Individual litigation would lead to transitory claims that may expire, resulting in an unconstitutional practice that is "capable of repetition yet evading review." *See Sosna*, 419 US at 399–401. It is evident from the dismissal of prior cases brought against Washington County by individual habeas petitioners (who were subsequently appointed counsel), that certification of this class is the only means to safeguard relief for all current and future unrepresented indigent defendants being detained in Washington County.

### III.   Temporary Restraining Order

Finally, the Court finds that the requisite elements have been met to grant Petitioners' request for a temporary restraining order, as applied to class defined above.

### A. **Likelihood of Succeeding on the Merits**

First, Petitioners' claims under the Sixth and Fourteenth Amendments are likely to succeed on the merits.[4] The Sixth Amendment guarantees "the fundamental right of the accused to the aid of counsel in a criminal prosecution." *Gideon v. Wainwright*, 372 U.S. 335, 343 (1963). This right attaches as soon as the prosecution commences, or in other words, "the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothgery v. Gillespie Cnty., Texas.*, 554 U.S. 191, 194, 198 (2008). The Fourteenth Amendment guarantees due process and equal protection under the law. U.S. Const. amend. XIV. In the criminal context, the Due Process Clause prohibits the government from physically detaining citizens prior to trial unless certain procedural safeguards are met – such as providing counsel at an adversarial hearing. *United States v. Salerno*, 481 U.S. 739, 755 (1987). Due process and equal protection principles also "prohibi[t] our government from discriminating against the poor in providing access to fundamental rights, including the freedom from physical restraints on individual liberty." *Hernandez*, 872 F.3d at 981.

There is simply no dispute that Washington County's failure to appoint counsel, while incarcerating pretrial detainees indefinitely, violates the Sixth Amendment's right to counsel and fundamentally impacts the liberty interest a pretrial detainee has under the Due Process Clause of the Fourteenth Amendment. No reliable process guaranteed by the Fourteenth Amendment is present when an indigent defendant is required to proceed against the power of the state without

---

[4] Petitioners also assert constitutional violations under the Eighth Amendment's prohibition against excessive bail. U.S. Const. amend. VIII.; *United States v. Salerno*, 481 U.S. 739, 752 (1987). Because Petitioners have established that they can prevail on their Sixth Amendment and Fourteenth Amendment claims, the Court does not need to determine their likelihood of success under the Eighth Amendment for purposes of granting the TRO.

11 – OPINION AND ORDER

counsel. They are unable to adequately argue for conditional release, secure witnesses, review discovery, challenge the charging instrument, intervene in the Grand Jury process, negotiate with the prosecution in an arms-length fashion, request the preservation of evidence, or challenge the length of their confinement through speedy trial statutes. For some, an uncounseled guilty plea is the only avenue out of custody.

The fact that these egregious constitutional deprivations are only happening to criminal defendants in Washington County who are too poor to afford an attorney, is a grave insult to our Constitution's commitment to due process and equal protection under the law. The Court finds that Petitioners will prevail on their Sixth Amendment and Fourteenth Amendment claims.

### B. Petitioner's will Suffer Irreparable Harm

By now it should be clear that Petitioners already have, and will continue to suffer irreparable harm unless they are released from custody, or are provided an attorney. As noted *supra*, "[i]t is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994 (internal quotations omitted) (citing *Melendres*, 695 F.3d at 1002). There is simply no alternative redress for the harm that is being suffered here; no money damages could possibly restore the liberty that is lost. The time that Petitioners have lost in custody cannot be restored by legal fiat.

### C. Balance of Equities and Public Interest

Finally, the requested relief here poses no fiscal or administrative burden on the government. Providing counsel for class members within ten days of their first appearance, will guarantee efficiency, make criminal proceedings less burdensome on all involved, and will prevent cases from being needlessly delayed. Further, it is not apparent to the Court that conditionally releasing unrepresented defendants into the community will increase administrative

costs. However, if such costs do exist, they are "far outweighed by the considerable harm to Plaintiffs' constitutional rights in the absence of the injunction." *Hernandez*, 872 F.3d at 995–996. And while the government certainly has an interest in community safety, this Order will not interfere with the Circuit Court's ability to set *reasonable* pre-trial conditions for release.

This Order also weighs in favor of the public interest because the deprivation of class members' constitutional rights threatens the rights of all. "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Id*. at 996 (quoting *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)).  And while the release of certain pretrial defendants into the community may cause some concern about community safety, that theoretical fear does not mean that we should suspend the Constitution as our response. The public's interest in the rule of law and the protection of our fundamental rights is at the heart of our democracy.

## CONCLUSION

Petitioners' Motion for Provisional Class Certification (ECF No. 6) is GRANTED in part and DENIED in part. The Court provisionally certifies as a class all unrepresented indigent defendants held in Washington County Detention Centers. Furthermore, Petitioners' Motion for Temporary Restraining Order (ECF No. 7) is GRANTED in part and DENIED in part.

1. If counsel is not secured within ten days of this Order for any class member currently in physical custody, the Washington County Sheriff is ordered to release that class member.
2. Any future class member who has not secured counsel within ten days of their initial appearance must be released from physical custody.

3.  Released class members are subject to the conditions of release set forth in ORS 135.250 and any other conditions that the Circuit Court may impose that are related to assuring the appearance of the class member and the safety of the community.

4.  The Circuit Court shall ensure that a release agreement is presented to and executed by the class member at the time of their release. Failure of the class member to execute the release agreement will result in the continued detention of the class member. Failure of the class member to abide by the conditions of release set forth in the release agreement may result in the revocation of their release. The Circuit Court retains its statutory authority to impose release conditions on pre-trial defendants and to enforce compliance with those conditions.  The conditions must be reasonable.

IT IS SO ORDERED.

Dated this 17th day of August, 2023.

                                                                   _____/s/ Michael McShane_____
                                                                           Michael McShane
                                                                 United States District Judge