**Fidel Cassino-DuCloux**
  Federal Public Defender
**Stephen R. Sady**
  Chief Deputy Federal Public Defender
**Julie Vandiver, Jessica Snyder,**
**Robert Hamilton, Michael Benson,**
**Peyton E. Lee, and Megha Desai**
  Assistant Federal Public Defenders
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123
Fax: (503) 326-5524

**David F. Sugerman**, OSB 862984
**Nadia H. Dahab**, OSB 125630
Sugerman Dahab
707 SW Washington St., Ste. 600
Portland, OR 97205
Tel: (503) 228-6474
Fax: (503) 228-2556

**Attorneys for Petitioners**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **WALTER BETSCHART, JOSHUA SHANE BARTLETT, CALEB AIONA, TYRIK DAWKINS, JOSHUA JAMES-RICHARDS, TANIELA KINI KIN LATU, RICHARD OWENS, LEON MICHAEL POLASKI, ALEX SARAT XOTOY, TIMOTHY WILSON, JEFFREY DAVIS, RICHARD AARON CARROLL, SR., JENNIFER LYN BRUNETTE, NICHOLAS WALDBILLIG, DEREK PIMENO ZAVALA, CURTIS RAY ANTHONY REMINGTON, CRISTA JEAN DAVIS, NICHOLE LYNN WHALEN, and JACOB ISAAC NATHANIEL COLE**, on their behalf, and on behalf of all others similarly situated,<br><br>                                    **Petitioners,**<br><br>                            v.<br><br>**PATRICK GARRETT, WASHINGTON COUNTY SHERIFF**, in his official capacity, **WASHINGTON COUNTY CIRCUIT COURT JUDGES**, in their official capacities, and **THE STATE OF OREGON**,<br>                                    **Respondents.** | Case No. 23-cv-01097 CL<br><br>**MOTION FOR PRELIMINARY INJUNCTIONS IN FAVOR OF SUBCLASSES OF PETITIONERS IN CUSTODY IN VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS** |

# TABLE OF CONTENTS

**Page**

Table Of Authorities .................................................................................................................. ii

A. The Preliminary Injunction Standard Is Satisfied By Likely Proof Of A Constitutional Violation.............................................................................................2

B. The Court Should Enter A Preliminary Injunction Shortening The Time The Subclass Of Jailed Indigent Defendants Can Be Held Without Counsel. .........................4

C. The Court Should Grant Injunctive Relief To The Statewide Class Of Indigent Unrepresented Defendants Who Are Subjected To Restrictive Conditions In The Community.............................................................................................................7

    1. The Restrictive-Conditions Subclass Is Likely To Succeed On The Merits. ..........8

    2. The Restrictive-Conditions Subclass Is Suffering Irreparable Harm....................13

    3. The Balance Of The Equities And Public Interest Favor The Injunction. ............14

    4. Neither Lack Of Resources Nor Policing Interests Justify Violation Of Federal Constitutional Rights. ...........................................................................15

    5. The Court Has Full Authority Under The Habeas Corpus Statute To Implement The Requested Relief. ....................................................................17

Conclusion ....................................................................................................................19

# TABLE OF AUTHORITIES

## SUPREME COURT OPINIONS

*In re Bonner*,
   151 U.S. 242 (1894) ................................................................. 18

*Boumediene v. Bush*,
   553 U.S. 723 (2008) ................................................................. 18

*Brewer v. Williams*,
   430 U.S. 387 (1977) ................................................................... 5

*County of Riverside v. McLaughlin*,
   500 U.S. 44 (1991) ..................................................................... 7

*Dickerson v. United States*,
   530 U.S. 428 (2000) ................................................................. 17

*Elrod v. Burns*,
   427 U.S. 347 (1976) ................................................................... 3

*Fellers v. United States*,
   540 U.S. 519 (2004) ................................................................ 5, 9

*Gideon v. Wainwright*,
   372 U.S. 335 (1963) ................................................................. 15

*Glover v. United States*,
   531 U.S. 198 ((2001) ............................................................... 12

*Halbert v. Michigan*,
   545 U.S. 605 (2005) ................................................................. 11

*Harris v. Nelson*,
   394 U.S. 286 (1969) ................................................................. 18

*Hensley v. Municipal Court*,
   411 U.S. 345 (1973) .............................................................. 9, 18

*Hilton v. Braunskill*,
   481 U.S. 770 (1987) ................................................................. 18

*Jones v. Cunningham*,
   371 U.S. 236 (1963) ................................................................... 9

*Kastigar v. United States*,
   406 U.S. 441 (1972) ................................................................. 19

*Kirby v. Illinois,*
    406 U.S. 682 (1972) ............................................................. 5

*Lafler v. Cooper,*
    566 U.S. 156 (2012) ............................................... 11, 12, 19

*Maine v. Moulton,*
    474 U.S. 159 (1985) ......................................................... 5, 9

*Martin v. Hunter's Lessee,*
    14 U.S. 304 (1816) ............................................................ 17

*Massiah v. United States,*
    377 U.S. 201 (1964) ............................................................ 9

*Nix v. Williams,*
    467 U.S. 431 (1984) ........................................................... 19

*Nken v. Holder,*
    556 U.S. 418 (2009) ............................................................ 3

*Padilla v. Kentucky,*
    559 U.S. 356 (2010) ........................................................... 11

*Powell v. Alabama,*
    287 U.S. 45 (1932) ..................................................... 8, 9, 10

*Preiser v. Rodriguez,*
    411 U.S. 475 (1973) ..................................................... 9-10, 18

*Rothgery v. Gillespie County, Texas,*
    554 U.S. 191 (2008) ............................................................ 8

*Santobello v. New York,*
    404 U.S. 257 (1971) ........................................................... 19

*Schlup v. Delo,*
    513 U.S. 298 (1995) ........................................................... 18

*Spano v. New York,*
    360 U.S. 315 (1959) ......................................................... 9, 16

*Stone v. Powell,*
    428 U.S. 465 (1976) ........................................................... 17

*Strickland v. Washington,*
    466 U.S. 668 (1984) ............................................................ 5

*United States v. Henry,*
    447 U.S. 264 (1980) ............................................................ 9

*United States v. Marion*,
  404 U.S. 307 (1971) ............................................................ 10, 13

*United States v. Wade*,
  388 U.S. 218 (1967) ................................................................. 5

*Winter v. Natural Res. Def. Council*,
  555 U.S. 7 (2008) ................................................................. 2, 3

## U.S. CONSTITUTION

U.S. Const. amend. VI ................................................................. 8

U.S. Const. art. VI, cl. 2 ........................................................... 18

## FEDERAL COURT OPINIONS

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ...................................................... 3

*American Airways Charters v. Regan*,
  746 F.2d 865 (D.C. Cir. 1984) ...................................................... 6

*Ariz. Dream Act Coal. v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014) ...................................................... 3

*Baird v. Bonta*,
  __ F.4th __, No. 23-15016, 2023 WL 5763345 (9th Cir. Sept. 7, 2023) ............... 2

*Betschart v. Garrett*,
  No. 3:23-CV-01097-CL, 2023 WL 5288098 (D. Or. Aug. 17, 2023) ............ 4, 8, 10, 13

*Dow v. Circuit Court of First Circuit*,
  995 F.2d 922 (9th Cir. 1993) ....................................................... 9

*Env't Prot. Info. Ctr. v. Carlson*,
  968 F.3d 985 (9th Cir. 2020) ....................................................... 2

*Hernandez v. Sessions*,
  872 F.3d 976 (9th Cir. 2017) ...................................................... 13

*Innovation Law Lab v. Nielsen*,
  310 F. Supp. 3d 1150 (D. Or. 2018) ............................................. 14-15

*Innovation Law Lab v. Nielsen*,
  342 F. Supp. 3d 1067 (D. Or. 2018) .............................................. 2, 3

*Klein v. City of San Clemente*,
  584 F.3d 1196 (9th Cir. 2009) ...................................................... 3

*M.R. v. Dreyfus*,
   697 F.3d 706 (9th Cir. 2012) ........................................................ 4

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) ................................................... 3, 14

*Ohlinger v. Watson*,
   652 F.2d 775 (9th Cir. 1980) ...................................................... 15

*Oregon Advocacy Center v. Mink*,
   322 F.3d 1101 (9th Cir. 2003) .................................................... 15

*Riley's Am. Heritage Farms v. Elsasser*,
   32 F.4th 707 (9th Cir. 2022) ........................................................ 3

*United States v. Donnelly*,
   41 F.4th 1102 (9th Cir. 2022) .................................................... 15

*United States v. Leonti*,
   326 F.3d 1111 (9th Cir. 2003) ............................................... 11, 12

*Zepeda v. INS*,
   753 F.2d 719 (9th Cir. 1983) ........................................................ 3

## UNITED STATES CODE

18 U.S.C. § 4241(d)(1) ................................................................ 15

28 U.S.C. § 2241 ........................................................................... 1

28 U.S.C. § 2243 ......................................................................... 18

## STATE CASES

*Lavallee v. Justices in the Hampden Superior Court*,
   812 N.E.2d 895 (Mass. 2004) .................................................. 15, 16

*State v. Gray*,
   370 Or. 116, 515 P.3d 348 (2022) ........................................ 6, 7, 11

## STATE STATUTES

Or. Rev. Stat. 132.320 ................................................................... 6

Or. Rev. Stat. 135.050 ................................................................. 18

Or. Rev. Stat. 135.245 ................................................................. 10

Or. Rev. Stat. 135.250 ................................................................. 18

The petitioners, through counsel, respectfully move the Court for issuance of preliminary injunctions in favor of each subclass named in the second amended petition and the forthcoming second motion for provisional class certification. The petitioners request the following relief in two stages:

First:

- Modify the existing temporary restraining order for the Washington County jailed defendants as a preliminary injunction to require appointment of counsel within 48 hours after arraignment; and

- Enter a preliminary injunction for the proposed statewide class of indigent unrepresented defendants who are on restrictive conditions (restrictive-conditions subclass) to require appointment of counsel within ten days of the Court's order, or arraignment, and, if counsel is not appointed, order them released from all restrictions connected with the pending charges by dismissal of charges without prejudice.

Second:

- After 30 days of its entry, the preliminary injunction shall require the State to provide counsel to the restrictive-conditions subclass within 48 hours after arraignment, and, if counsel is not appointed, release them from all restrictions connected with the pending charges by dismissing the charges without prejudice.

The proposed preliminary injunctions rest on two basic premises that foreclose the State of Oregon from subsidizing inadequately funded defense services and uncontrolled prosecutions with the systematic violation of poor people's federal constitutional rights:

- The State violates the federal constitutional rights of any poor person accused of a state crime when, after the first adversarial hearing, the person is forced to proceed without effective counsel.

- The federal constitutional rights of anyone in custody within the meaning of 28 U.S.C. § 2241 are identically violated, while, in general, the relative severity of the harm to those in jail and those on restrictive conditions warrants treating those individuals in subclasses.

Based on the foregoing, this motion is divided into three parts. First, the standards for issuance of preliminary injunctions strongly support relief where the plaintiffs will likely establish

a federal constitutional violation. Second, the temporary restraining order for the in-jail subclass should be converted into a preliminary injunction reducing the current ten days to provide effective counsel. Third, the terms of the temporary restraining order should be applied through a preliminary injunction to the statewide restrictive-conditions subclass requiring release after ten days without counsel. After a 30-day transition period from the date of the preliminary injunction, counsel should be provided within 48 hours after arraignment.

## A.  The Preliminary Injunction Standard Is Satisfied By Likely Proof Of A Constitutional Violation.

"A plaintiff seeking a preliminary injunction generally must show that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) an injunction is in the public interest." *Innovation Law Lab v. Nielsen*, 342 F. Supp. 3d 1067, 1071 (D. Or. 2018) (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008)). By establishing a substantial likelihood of a constitutional violation, the other three factors are generally met:

> It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation. And his likelihood of succeeding on the merits also tips the public interest sharply in his favor because it is "always in the public interest to prevent the violation of a party's constitutional rights.

*Baird v. Bonta*, __ F.4th __, No. 23-15016, 2023 WL 5763345, at *3 (9th Cir. Sept. 7, 2023) (citations omitted). Therefore, "[t]he first *Winter* factor, likelihood of success, 'is a threshold inquiry and is the most important factor' in any motion for a preliminary injunction," which "holds especially true for cases where a plaintiff seeks a preliminary injunction because of an alleged constitutional violation." *Id.* at *4 (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).

"[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Id*. (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). When an alleged violation of a constitutional right is involved, "most courts hold that no further showing of irreparable injury is necessary." *Id*. (citation omitted). Further, where the respondent is the government, "the last two *Winter* factors 'merge.'" *Id*. a *3 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The likelihood of succeeding on the constitutional merits "tips the public interest sharply" in favor of the petitioners because it is "always in the public interest to prevent the violation of a party's constitutional rights." *Id*. at *3 (quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) (quoting *Melendres*, 695 F.3d at 1002).

The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Id*. at *4 (quoting *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983)). Plaintiffs who are able to "establish[ ] a likelihood that [a] policy violates the U.S. Constitution . . . have also established that both the public interest and the balance of the equities favor a preliminary injunction." *Id*. (quoting *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014)). "[I]t is no surprise that 'our caselaw clearly favors granting preliminary injunctions to a plaintiff ... who is likely to succeed on the merits of his [constitutional] claim.'" *Id*. (quoting *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009)).[1]

---

[1] The alternative "serious questions" test would also favor relief because the balance of hardships would tilt sharply to the petitioners. "'[S]erious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Innovation Law Lab*, 342 F. Supp. 3d at 1071 (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)). Thus, a preliminary injunction is warranted "if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in

**B.    The Court Should Enter A Preliminary Injunction Shortening The Time The Subclass Of Jailed Indigent Defendants Can Be Held Without Counsel.**

The Court should convert its existing temporary restraining order into a preliminary injunction. In doing so, for the reasons identified below, the Court should eliminate or shorten the amount of time that a jailed indigent defendant may be held in violation of his or her constitutional rights. The showing for a preliminary injunction is the same of that required for the temporary restraining order. The Court should find that the same four elements have been met.

The Court should find the same likelihood of success on the merits regarding the violations of the Sixth Amendment:

> There is simply no dispute that Washington County's failure to appoint counsel, while incarcerating pretrial detainees indefinitely, violates the Sixth Amendment's right to counsel and fundamentally impacts the liberty interest a pretrial detainee has under the Due Process Clause of the Fourteenth Amendment. No reliable process guaranteed by the Fourteenth Amendment is present when an indigent defendant is required to proceed against the power of the state without counsel. They are unable to adequately argue for conditional release, secure witnesses, review discovery, challenge the charging instrument, intervene in the Grand Jury process, negotiate with the prosecution in an arms-length fashion, request the preservation of evidence, or challenge the length of their confinement through speedy trial statutes. For some, an uncounseled guilty plea is the only avenue out of custody.
>
> The fact that these egregious constitutional deprivations are only happening to criminal defendants in Washington County who are too poor to afford an attorney, is a grave insult to our Constitution's commitment to due process and equal protection under the law. The Court finds that Petitioners will prevail on their Sixth Amendment and Fourteenth Amendment claims.

*Betschart v. Garrett*, No. 3:23-CV-01097-CL, 2023 WL 5288098, at *6 (D. Or. Aug. 17, 2023). The Court found it "clear" that the petitioners have already "and will continue to suffer irreparable harm unless they are released from custody, or provided an attorney." *Id.* The Court also found

---

favor of the plaintiff; and the injunction is in the public interest." *Id.* at 1071-72 (quoting *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012)).

that the balance of equities and public interest favored issuance of the injunction based on the administrative interests in criminal proceedings, and "because the deprivation of class members' constitutional rights threatens the rights of all." *Id*. at *7.

The petitioners request a single modification of the temporary restraining order: reduction in the time to provide effective counsel or conditional release. The County has been on notice since the original filing of the petition on July 27, 2023, that federal constitutional rights must be honored. The Sixth Amendment is triggered by the first adversarial appearance in state court. *Fellers v. United States*, 540 U.S. 519, 523 (2004) ("The Sixth Amendment right to counsel is triggered 'at or after the time that judicial proceedings have been initiated ... "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."'") (quoting *Brewer v. Williams*, 430 U.S. 387, 398 (1977) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)).

The Supreme Court recognizes that "to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself." *Maine v. Moulton*, 474 U.S. 159, 170 (1985). "Recognizing that the right to the assistance of counsel is shaped by the need for the assistance of counsel, we have found that the right attaches at earlier, 'critical' stages in the criminal justice process 'where the results might well settle the accused's fate and reduce the trial itself to a mere formality.'" *Id*. (quoting *United States v. Wade*, 388 U.S. 218, 224 (1967)). Where there is no counsel, the Court presumes prejudice. *Strickland v. Washington*, 466 U.S. 668, 692 (1984) ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice."). Entry of a preliminary injunction now, shortening the time that Washington County violates the federal constitutional rights of its detainees, will reduce the

presumptive prejudice from the failure to provide counsel from the commencement of adversarial proceedings.[2]

Based on the foregoing, the Court should reduce to 48 hours the time allowed by the temporary restraining order for providing appointed counsel to indigent defendants whose adversarial proceedings have begun. Those in the subclass who are not provided counsel within the allotted time, but are released on conditions, would become members of the restrictive-conditions subclass.

During the temporary restraining order hearing, the Court mentioned the time for grand jury proceedings as a metric for the ten days for counsel to be provided. TRO Tr. at 60. But the relevant statute requires investigation, consultation, and decision-making "prior to the filing of an indictment":

> A defendant who has been arraigned on an information alleging a felony charge that is the subject of a grand jury proceeding and who is represented by an attorney has a right to appear before the grand jury as a witness if, prior to the filing of an indictment, the defense attorney serves upon the district attorney written notice requesting the appearance.

Or. Rev. Stat. 132.320(12)(a). Defense counsel "has a central role on this entire right." *State v. Gray*, 370 Or. 116, 124, 515 P.3d 348, 353 (2022). The court in *Gray* noted that the statutory role of defense counsel, especially the need for coordinating schedules, "at least raises the question whether the legislature expected that defense counsel would be present in the grand jury room for the defendant's testimony." *Id*. at 124, 353. As a matter of state constitutional law, the Oregon

---

[2] Even in the civil context, courts recognize the need for immediate assistance of counsel: "We stress particularly that, in our complex, highly adversarial legal system, an individual or entity may in fact be denied the most fundamental elements of justice without prompt access to counsel." *American Airways Charters v. Regan*, 746 F.2d 865, 872-73 (D.C. Cir. 1984) (Ginsburg, J., concurring).

court determined that the defendant has a "right to have his counsel present in the grand jury room during his testimony, although, contrary to relator's argument, that right is limited to having counsel advise and direct relator regarding his testimony." *Id*. at 128, 355. The *Gray* court's underlying assumption that the right to counsel begins with arraignment militates in favor of no delay in counsel's assessment and advice prior to grand jury proceedings or, at worst, only a brief delay.

While a criminal defendant is entitled to effective counsel from the beginning of adversarial proceedings, the Court should modify the existing order to limit the deprivation to no more than 48 hours. In the Fourth Amendment context, where there is no right to counsel for the judicial review of a probable cause determination, the Supreme Court set 48 hours from arrest as the outside limit for the determination to be made. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). In doing so, the Court noted that judicial probable cause determinations would be "candidates for combination" with other counseled proceedings, "such as bail hearings and arraignments." *Id*. at 58.

**C.      The Court Should Grant Injunctive Relief To The Statewide Class Of Indigent Unrepresented Defendants Who Are Subjected To Restrictive Conditions In The Community.**

The petitioners ask, on their behalf and on behalf of the proposed restrictive-conditions subclass, that the Court enter a preliminary injunction requiring that they be provided with counsel within ten days of arraignment or of the Court's granting of a preliminary injunction and that, if counsel is not provided, they should be released from custody, which, as explained below, requires dismissal of charges. For the reasons that follow, the petitioners satisfy each element of the preliminary injunction standard.

1.      **The Restrictive-Conditions Subclass Is Likely To Succeed On The Merits.**

The restrictive-conditions subclass faces the same constitutional deprivations as those in jail without counsel. This Court found that the subclass of in-jail petitioners will succeed on the merits of their Sixth and Fourteenth Amendment claims, finding that the Sixth Amendment right to counsel "attaches as soon as the prosecution commences," namely, the first appearance. *Betschart*, 2023 WL 5288098, at *6 (citing *Rothgery v. Gillespie County, Texas*, 554 U.S. 191, 194, 198 (2008)). This Court held that "failure to appoint counsel, while incarcerating pretrial detainees indefinitely, violates the Sixth Amendment's right to counsel and fundamentally impacts the liberty interest a pretrial detainee has under the Due Process Clause of the Fourteenth Amendment." *Id*. The Court found that the due process clause prevents physical detention of citizens without procedural protections, including counsel at an adversarial hearing. *Id*. The Court also found that due process and equal protection prohibit the government from discriminating against the poor in providing access to fundamental rights. *Id.*

These rights are not diluted depending on where a person is housed during the critical pretrial stages of a criminal case. The Sixth Amendment applies "[i]n all criminal prosecutions" regardless of whether the accused is in or out of jail. U.S. Const. amend. VI. The equal application of the Sixth Amendment to those in pretrial detention and those on restrictions in the community is reflected in the Supreme Court's jurisprudence on police contacts after entry of formal charges. The Supreme Court has viewed "as a constitutional principle established long ago" in *Powell v. Alabama*, 287 U.S. 45, 57 (1932), that, "during perhaps the most critical period of the proceedings," that is, "from the time of their arraignment until the beginning of their trial, when consultation, thorough-going investigation and preparation [are] vitally important," defendants are

"as much entitled to such aid [of counsel] during that period as at the trial itself." *Massiah v. United States*, 377 U.S. 201, 205 (1964) (quoting *Powell*).

As a corollary of the right to counsel, any interrogation of the defendant after arraignment, without the protection afforded by the presence of counsel, violates basic fairness and the fundamental rights of persons charged with crimes. *Id.* at 204-05 (citing *Spano v. New York*, 360 U.S. 315 (1959)). The Court has enforced its Sixth Amendment rule regardless of whether the person is in jail or on conditions in the community. *Compare Massiah*, 377 U.S. at 202 (released on bail), *and Maine v. Moulton*, 474 U.S. 159, 162 (1985) (released on bond), *with Fellers*, 540 U.S. at 521 (post-arrest police custody), *and United States v. Henry*, 447 U.S. 264, 266 (1980) (in jail pending trial).

Those facing prosecution, regardless of the details of their release agreement, are not free. The petitioners suffer "severe restraints on individual liberty" because they may not come and go as they please: their "freedom rests in the hands of state judicial officers, who may demand [their] presence at any time and without a moment's notice." *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973); *see also Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963) (a parolee is in custody for the purposes of habeas because the parole board imposes restraints that "significantly restrain petitioner's liberty to do those things which in this country free men are entitled to do"); *Dow v. Circuit Court of First Circuit*, 995 F.2d 922, 923 (9th Cir. 1993) (mandatory attendance at an alcohol-rehabilitation class constituted custody for the purpose of the habeas corpus statute). A person is in custody for the purposes of habeas corpus even if they are released on their own recognizance. *See Dow*, 995 F.2d at 923 (collecting authorities, including *Hensley*, for the proposition that a person released on personal recognizance is in custody). Release is the fundamental remedy available in habeas. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("It is

clear, not only from the language of §§ 2241(c)(3) and 2254(a), but also from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."). Accordingly, for the restrictive-conditions subclass to be released, their criminal charges must be dismissed.

That this relief is warranted, is demonstrated by this Court's temporary restraining order opinion. This Court enumerated how the indigent unrepresented are harmed by the lack of counsel: "They are unable to adequately argue for conditional release, secure witnesses, review discovery, challenge the charging instrument, intervene in the Grand Jury process, negotiate with the prosecution in an arms-length fashion, request the preservation of evidence, or challenge the length of their confinement through speedy trial statutes." *Betschart*, 2023 WL 5288098, at *17. Those who are not in jail, but face prosecution without counsel, endure the same hardships regarding trial preparation, preservation of evidence, lack of advice, and negotiations. The pending prosecution, without more, also burdens the petitioners' ability to live normal lives: "Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *United States v. Marion*, 404 U.S. 307, 320 (1971). While the state court has a range of statutorily acceptable release options, the unrepresented are unable, without counsel, to advocate for imposition of the least restrictive conditions. Or. Rev. Stat. 135.245(3)-(4). While the charging instrument may be defective, indigent unrepresented defendants are "incapable, generally, of determining for [themselves] whether the indictment is good or bad." *Powell*, 287 U.S. at 69.

The indigent unrepresented are likewise unable, because of lack of resources, skill, or restrictive conditions, to secure witnesses to testify on their behalf and take other actions necessary to defend themselves. *See Halbert v. Michigan*, 545 U.S. 605, 607 (2005) (noting in the appellate context the difficulties prisoners face given the high rates of illiteracy, learning disabilities, and mental impairments in the prison population). The indigent unrepresented have no advocate to advise them of their right to testify at the grand jury. *See Gray*, 370 Or. at 124, 515 P.3d at 353. While their cases could be resolved with an agreed upon disposition, the unrepresented have no way of negotiating with the prosecution in an arms-length fashion. *See Lafler v. Cooper*, 566 U.S. 156, 162 (2012) ("Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010) ("[W]e have long recognized that the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel.").

The ability to negotiate a case through counsel may begin from the time of arrest, and, if there is the potential to ameliorate a sentence through cooperation, representation by counsel is essential. *See United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003) ("[T]he profound effect a substantial assistance motion can have on a defendant's sentence qualifies the cooperation period as a 'critical stage' of the criminal process."). This Sixth Amendment function involves a wide range of the attorney's duty "to bring to bear such skill and knowledge" to the adversarial process, "including, but not limited to, facilitating communication between the defendant and the government, attending proffer sessions, ascertaining the government's expectations and whether the defendant is satisfying them, communicating the client's limitations to the government, and establishing a record of attempts to cooperate." *Id.* at 118-19. Although *Leonti* was decided in the context of the federal guidelines after the entry of the guilty plea, the state system similarly

involves the potential for mitigation of charges and sentences through cooperation that is not limited by the time the potential for cooperation arises. In general, the earlier the cooperation the more valuable.

After *Leonti*, the Court in *Lafler* clarified that the "critical stage" analysis overlapped with the minimum constitutional requirements throughout the adversarial proceedings: "The constitutional guarantee applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice." 566 U.S. at 165; *see generally* ABA Criminal Justice Standards, Defense Function (4th Ed. 2017) (describing defense counsel's obligations throughout the course of a criminal prosecution). The need for counsel during the whole course of criminal proceedings is animated by the Court's understanding that ineffective assistance of counsel that results in even an additional day of liberty lost implicates the Sixth Amendment. *Lafler*, 566 U.S. at 165 ("[A]ny amount of [additional] jail time has Sixth Amendment significance.") (quoting *Glover v. United States*, 531 U.S. 198, 203 ((2001)).

Not only are the members of the restrictive-conditions subclass suffering the same constitutional deprivations as those in jail, but they suffer the deprivation longer. According to the Oregon Circuit Courts' Unrepresented Individuals Dashboard, the average time that a person not in jail goes without counsel is 64 days compared to 15 days for a person who is in jail.[3] As the Second Amended Petition demonstrates, many petitioners go much longer than 64 days without

---

[3] Oregon Judicial Department's (OJD's) Unrepresented Individuals Data Dashboard, available at:
https://app.powerbigov.us/view?r=eyJrIjoiNDQ2NmMwYWMtNzhiZi00MWJhLWE3MjgtMjg2ZTRhNmNmMjdmIiwidCI6IjYxMzNlYzg5LWU1MWItNGExYy04YjY4LTE1ZTg2ZGU3MWY4ZiJ9 (last visited Sept. 8, 2023)

counsel. Mr. Zavala has been without counsel for 218 days, Mr. Sarat Xotoy has been without counsel for a total of 240 days, and Ms. Davis has been without counsel for 269 days. This subclass is also larger. As of this filing, according to the Oregon Judicial Department dashboard there are 2,405 persons in the restrictive-conditions subclass. The Court should extend its holding that the in-jail subclass is likely to succeed on the merits to the restrictive-conditions subclass.

### 2. The Restrictive-Conditions Subclass Is Suffering Irreparable Harm.

The Court should likewise extend its ruling to find that the restrictive-conditions subclass suffers irreparable harm from the continuing deprivation of constitutional rights. *See Betschart*, 2023 WL 5288098 at *17-18 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)). The Court found that there is "no alternative redress for the harm that is being suffered here; no money damages could possibly restore the liberty that is lost." *Id*. The restrictive-conditions subclass also suffers an irredeemable deprivation of liberty that cannot be repaid later. *See Marion*, 404 U.S. at 320 (arrest is an infringement on liberty whether the person is out on bail or not).

Although a finding of a constitutional violation is sufficient to establish irreparable harm, the Court may also find that other irreparable harm accompanies the constitutional violations. Restrictive conditions can cause loss of jobs, housing, and create family separation from significant others and children. Ex. 1 at 1(Declaration of Whitney Boise). These consequences are evident in the petitioners and the proposed class representatives. Mr. Carroll, for example, is homeless because of his release conditions. Mr. Sarat Xotoy has been unable to maintain contact with his children. Mr. Waldbillig has been unable to find employment because of his open criminal case.

The eventual defense to the criminal charges is also irreparably harmed because, as time passes without counsel, "[w]itness memories fade, including that of the defendant, exculpatory evidence like surveillance tapes is lost, important evidence like DNA, fingerprints, and toxicology

are destroyed, and the mental state of the defendant at the time of the incident may be lost forever." Ex. 1 at 2; *see also* Ex. 2 at 3 (Noah Horst Declaration). The loss of this evidence undermines the ability of late-appointed counsel to exonerate a client or present critical mitigating evidence. Ex. 1 at 2.

The restrictive-conditions subclass is also irreparably harmed because they are "unable to negotiate an early case resolution, unable to dissuade the prosecutor from going forward with a case for a multitude of reasons, including innocence, and the value to a defendant to cooperate with the government to mitigate a sentence may be lost." Ex. 1. at 2. They also do not have the benefit of a lawyer to locate or facilitate treatment or other services in the community that may help them later negotiate a lesser sentence. Ex. 2 at 4.

**3. The Balance Of The Equities And Public Interest Favor The Injunction.**

The Court should find that the final two elements of the preliminary injunction standard are also met. The balance of equities should be resolved by the Court's finding that there is a substantial likelihood that the petitioners' federal constitutional rights are being violated by being denied appointed counsel after the onset of adversarial proceedings that trigger the Sixth Amendment right to counsel. *Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."). As the Court in *Innovation Law Lab v. Nielsen* stated in granting the temporary restraining order regarding access to immigration counsel, the equities "tip sharply in favor of emergency relief":

> Plaintiffs request only that [Bureau of Prisons] and [Immigration and Customs Enforcement] actually provide the same degree of access to legal assistance that their own regulations purport to guarantee. Defendants, thus, cannot show that the requested TRO will pose an undue burden on their time, resources, or personnel. Moreover, any such burden on Defendants is more than justified by the need to ensure the fulfillment of Plaintiffs' constitutional rights and to prevent the improper denial of meritorious asylum applications.

310 F. Supp. 3d 1150, 1163 (D. Or. 2018). Even more emphatically here, both the state and federal constitutions require appointment of counsel for indigent defendants from the time adversarial proceedings commence, so the respondents are only being required to do what statutes and constitutional provisions require.

### 4. Neither Lack Of Resources Nor Policing Interests Justify Violation Of Federal Constitutional Rights.

The respondents cannot claim lack of adequate resources to comply with constitutional obligations that have been fixed in the federal constitutional system since *Gideon v. Wainwright*, 372 U.S. 335 (1963). *See Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003) ("Lack of funds, staff or facilities cannot justify the State's failure to provide [such persons] with [the] treatment necessary for rehabilitation.") (quoting *Ohlinger v. Watson*, 652 F.2d 775, 779 (9th Cir. 1980)); *United States v. Donnelly*, 41 F.4th 1102, 1108-09 (9th Cir. 2022) ("The BOP's bureaucratic failure to allocate adequate agency resources to meet the demand for competency evaluations is not, of course, a legitimate excuse for failing to comply with the four-month time limit Congress imposed in [18 U.S.C. § 4241(d)(1)].") (Watford, J., concurring)). The respondents' "ongoing violations of substantive and procedural due process are sufficient to support the district court's injunction." *Mink*, 322 F. 3d at 1122 (footnotes omitted).

The petitioners, on behalf of the restrictive-conditions subclass, ask the Court to provide the same ten-day limit for the provision of counsel that the Court initially granted for the in-jail subclass. After a 30-day transition period, the Court should hold the respondents closer to the constitutional minimum. The reasoning in *Lavallee v. Justices in the Hampden Superior Court*, 812 N.E.2d 895 (Mass. 2004), is instructive. Faced with "chronic underfunding of the assigned counsel system," the court explained that "ordering [a seven-day time limit] recognizes the

public's strong interest in bringing serious criminals to justice swiftly, but it also recognizes society's vital interest in the fair conduct of criminal proceedings." *Id*. at 911. "That deadline provides certainty to the defendants who are suffering a violation of their rights, and also provides all concerned with an opportunity of known duration to make all reasonable efforts to cure this violation in the most direct and effective way, *i.e.*, to secure counsel for the defendant." *Id*. at 912. Once a transitional period has been provided, the Court should modify the injunction to require counsel within 48 hours of the first appearance.

The court in *Lavallee* made clear that the seriousness of crimes charged did not permit abandonment of the constitutional rights at issue: "Public safety, however, comes with a cost." *Id*. at 910. "One of the components of that cost is the level of compensation at which counsel for indigent defendants will provide the representation required by our Constitution." *Id*. The court noted that the lack of counsel resulted from decisions and policies years in the making, but the burden could not be borne by the indigent accused: "The continuation of what is now an unconstitutional state of affairs cannot be tolerated." *Id*. As the Supreme Court found in the context of coerced confessions, "in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves." *Spano*, 360 U.S. at 320-21.

To the extent that public safety clashes with federal constitutional rights, the latter must prevail.[4] For example, the State could not decide that public safety requires use of statements

---

[4] The petitioners did not oppose the State of Oregon's motion to intervene in this case. ECF 28. As reflected in the second amended petition, the State provides an appropriate respondent to implement this Court's remedial orders regarding persons on restrictive conditions in the community. ECF 34 at Attachment 1. However, the State's motion neglected to provide a full statement of its legitimate interests in this matter: the State is constitutionally and statutorily

obtained in violation of *Miranda*, or by coercive interrogation, nor could dragnet searches or other violations of the Fourth Amendment be justified by public safety concerns. Not even Congress can override the protections guaranteed by the federal constitution. *See Dickerson v. United States*, 530 U.S. 428, 437 (2000) ("Congress may not legislatively supersede our decisions interpreting and applying the Constitution."). The Supremacy Clause forecloses any argument that the State can elevate public safety over well-established federal constitutional law. *See Stone v. Powell*, 428 U.S. 465, 494 n.35 (1976) ("State courts, like federal courts, have a constitutional obligation to safeguard personal liberties and to uphold federal law.") (citing *Martin v. Hunter's Lessee*, 14 U.S. 304, 341-44 (1816)).

But even if public safety could trump well-established federal constitutional rights—which it cannot—the requested injunctive relief does not compromise legitimate public safety interests. First, for the many in the subclass who are released on minimally restrictive conditions, there has been a judicial determination that they do not pose a significant risk in the community, so dismissal without prejudice to bringing the case once counsel is available provides reasonable relief. Second, for those that have been released on more restrictive conditions, the statutory scheme that provides for that release presumes that counsel will be appointed to represent the defendant during the determination of whether lesser restrictions are consistent with public safety.

> 5. **The Court Has Full Authority Under The Habeas Corpus Statute To Implement The Requested Relief.**

The Court has the authority to order either order release, and necessarily dismissal, for the restrictive-conditions class. The habeas corpus statute permits the Court to enter orders "as law

---

obligated to also defend the interests of presumptively innocent Oregonians whose federal constitutional rights are being violated.

and justice require." 28 U.S.C. § 2243. Habeas corpus "is, at its core, an equitable remedy." *Boumediene v. Bush*, 553 U.S. 723, 780 (2008) (quoting *Schlup v. Delo*, 513 U.S. 298, 319 (1995)). "The very nature of the writ demands that it be administered with the initiative and flexibility essential to ensure that miscarriages of justice within its reach are surfaced and corrected." *Harris v. Nelson*, 394 U.S. 286, 291 (1969).

As a result, a federal court considering a habeas corpus claim is vested with "the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (quoting *In re Bonner*, 151 U.S. 242, 261 (1894)). The basic remedy available to the Court is a petitioner's release pursuant to a grant of the writ of habeas corpus. *Preiser*, 411 U.S. at 484 ("the traditional function of the writ is to secure release from illegal custody."). As even a recognizance release constitutes custody, the Court can, and must, order release with no conditions and dismissal of criminal charges. *See Hensley*, 411 U.S. at 351 (individuals are not free when they may be summoned to court and subjected to criminal penalties for failing to appear).

The Court expressed concern at the temporary restraining order hearing that it could not order unconditional release without running afoul of the mandatory statutory release conditions in Or. Rev. Stat. 135.250. However, the state statutory system is predicated on the assumption that the accused will have counsel. Or. Rev. Stat. 135.050 (providing that suitable counsel shall be appointed for a defendant who come before the court having been charged with a crime). The setting of conditions without the opportunity for counsel to object is itself a manifestation of the overall Sixth Amendment violation. And, of course, the federal constitutional rights of the accused trump a state statute. U.S. Const. art. VI, cl. 2.

By ordering unconditional release and dismissal of charges without prejudice, the Court returns members of the restrictive-conditions subclass to their condition prior to the constitutional violation. *Lafler v. Cooper*, 566 U.S. 156, 174 (2012) (remedy for Sixth Amendment violation involved specific performance of reoffering the uncommunicated plea offer); *see Nix v. Williams*, 467 U.S. 431 (1984) (Fourth Amendment's exclusionary rule seeks to place the police in no better nor worse position before the constitutional violation); *Kastigar v. United States*, 406 U.S. 441, 453 (1972) (Fifth Amendment remedy must afford protection commensurate with the privilege); *Santobello v. New York*, 404 U.S. 257, 263 (1971) (remedy for government's violation of plea agreement through specific performance and sentencing before a different judge).

The violation of the Sixth Amendment and other basic federal constitutional rights requires a remedy commensurate with the wrong. Here, the petitioners should either have counsel or be placed in the status quo ante until counsel can be provided. It is for the State to resolve the systematic violation of the Sixth Amendment in Oregon by providing adequate defense resources, modifying prosecutorial practices, or both. The State has adequate tools to reasonably protect public safety without requiring poor people to routinely suffer violations of fundamental federal constitutional rights. This Court's injunctions will foreclose institutionalization of federal constitutional violations as a solution to the funding and discretionary choices of the State.

**Conclusion**

For the foregoing reasons, and those stated in the previous filings in this case, the petitioners respectfully request that the Court enter the following orders:

- Grant a preliminary injunction for the subclass of jailed indigent accused who are without counsel requiring release if counsel is not provided within 48 hours of arraignment.

- Grant a preliminary injunction for the restrictive-conditions subclass requiring that they be released from all conditions and their charges dismissed without prejudice if they are not provided with counsel within ten days of the entrance of the preliminary injunction or from arraignment and, after 30 days, require release and dismissal if counsel is not provided within 48 hours of arraignment.

Respectfully submitted this 8th day of September, 2023.

/s/ Fidel Cassino-DuCloux
Fidel Cassino-DuCloux

/s/ David Sugerman
David Sugerman

/s/ Stephen R. Sady
Stephen R. Sady

/s/ Nadia Dahab
Nadia Dahab

/s/ Julie Vandiver
Julie Vandiver

/s/ Jessica Snyder
Jessica Snyder

/s/ Robert Hamilton
Robert Hamilton

/s/ Peyton E. Lee
Peyton E. Lee

/s/ Megha Desai
Megha Desai

/s/ Michael Benson
Michael Benson

*Attorneys for Petitioners*

1

2

3

4          DECLARATION OF WHITNEY P. BOISE

5

6          I, WHITNEY P. BOISE, hereby declare and say as follows:

7          1.          I was admitted to the practice of law in 1985.

8          2.          In 1987 I began working at the Metropolitan Public Defenders Office as a trial

9    attorney. I worked in the Multnomah County office for four years, working on cases ranging

10   from misdemeanors to murder.

11          3.          From 1991 to today I have worked as a criminal defense lawyer in state and

12   federal court, doing primarily retained criminal cases. During this time my state court practice

13   has been primarily in the Portland Metropolitan area. As a consequence, many of my cases have

14   been in the Washington County, Oregon, justice system.

15          4.          Based on my experience as a criminal defense attorney for the last 36 years, I

16   believe unrepresented defendants, being prosecuted in the state court criminal justice system in

17   Washington County, are being harmed in significant ways. Many of the resulting harms they will

18   carry for the rest of their lives. The following are among the ways in which these unrepresented

19   defendants are being harmed:

20          •   The inability to effectively advocate for alternatives to pretrial detention in

21              jail, or to mitigate restrictive release conditions, resulting in the loss of jobs and

22              housing, family separation from significant others and children, interruption of

23              medical and mental health treatment, and the long-term effects of incarceration on

24              the mental and physical health of the individual. These harms will inevitably alter

25              the lives of these individuals, often in drastic ways.

Page 1  -    DECLARATION OF WHITNEY P. BOISE

**BOISE MATTHEWS DONEGAN LLP**
805 S.W. Broadway, Suite 1900
Portland, OR 97205
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

Exhibit 1
Page 1 of 3

1  • Without attorney representation, time sensitive investigation and preservation

2 of evidence will not occur. Witnesses move their residences or for other reasons the

3 defense will be unable to identify them at a later time. Witness memories fade,

4 including that of the defendant, exculpatory evidence like surveillance tapes is lost,

5 important evidence like DNA, fingerprints, and toxicology are destroyed, and the

6 mental state of the defendant at the time of the incident may be lost forever. Not only

7 is this loss of evidence important to exonerate a client, it is often important to try and

8 provide critical mitigating evidence to assist in negotiating a more favorable

9 sentence.

10  • Without counsel, defendants are unable to negotiate an early case resolution,

11 unable to dissuade the prosecutor from going forward with a case for a multitude of

12 reasons, including innocence, and the value to a defendant to cooperate with the

13 government to mitigate a sentence may be lost.

14  • Without counsel, there is no one to explain to the defendant the nature of the

15 charges, the criminal justice system process, or the strengths and weaknesses of a

16 case. This attorney-client relationship is vitally important for the mental and physical

17 well-being of the defendant. Most devastating is the defendant who is a target of

18 violence by other inmates; without counsel that defendant has no advocate for

19 protection from the severe physical and mental abuse that occurs in jails.

20  • The right to counsel is essential to the criminal justice system because

21 defense attorneys are the means through which the constitutional rights of the

22 accused are preserved.

23  • When individuals are incarcerated, marriages and significant relationships

24 are terminated, parent and child relationships are strained, jobs are lost, possessions

25 are stolen, and housing opportunities vanish. In short, pretrial detention and the

Page 2 - DECLARATION OF WHITNEY P. BOISE

**BOISE MATTHEWS DONEGAN LLP**
805 S.W. Broadway, Suite 1900
Portland, OR 97205
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

Exhibit 1
Page 2 of 3

1    consequences of inadequate representation follow people for the rest of their lives.

2    These are among the reasons it is vitally important that individuals are provided

3    attorneys at the outset of a criminal prosecution.

4

5    I hereby declare under penalty of perjury that the foregoing statements are true and

6    to the best of knowledge and belief.

7    DATED this 14th day of August, 2023.

8                              /s/ *Whitney P. Boise*
                              WHITNEY P. BOISE, OSB #851570
9                              whitney@boisematthews.com
                              (503) 228-0487
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3  -    DECLARATION OF WHITNEY P. BOISE

**BOISE MATTHEWS DONEGAN LLP**
805 S.W. Broadway, Suite 1900
Portland, OR 97205
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

Exhibit 1
Page 3 of 3

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **WALTER BETSCHART, JOSHUA SHANE BARTLETT, CALEB AIONA, TYRIK DAWKINS, JOSHUA JAMES-RICHARDS, TANIELA KINI KIN LATU, RICHARD OWENS, LEON MICHAEL POLASKI, ALEX SARAT XOTOY, AND TIMOTHY WILSON, on their behalf, and on behalf of all others similarly situated Petitioners**,<br><br>      vs.<br><br>**SHERIFF PATRICK GARRETT, WASHINGTON COUNTY SHERIFF, in his official capacity, and WASHINGTON COUNTY CIRCUIT COURT JUDGES, in their official capacities**,<br><br>      **Respondents.** | Case No. **3:23-cv-01097-CL**<br><br><br>**DECLARATION OF NOAH HORST IN SUPPORT OF PETITIONERS** |

     I, Noah Horst, base the following statement on my personal knowledge and experience and hereby state under penalty of perjury under the laws of the United States of America pursuant to 28 USC § 1746 that the following is true and correct:

     1.     I have practiced criminal defense in Oregon since 2007. I began my legal career at Metropolitan Public Defenders Inc. in Portland, representing clients during every stage of criminal proceedings. In 2012, I started a private practice, Levi Merrithew Horst, with three partners who were also experienced public defenders. Our practice has grown to include six

DECLARATION OF NOAH HORST IN SUPPORT OF PETITIONERS - 1
(Case No. 3:23-CV-01097-CL)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

Exhibit 2
Page 1 of 5

lawyers and three other full-time employees including one in-house investigator, as well as several law clerks.

2.     Over time, the firm cultivated a civil rights practice representing plaintiffs in state and federal court.  We still maintain a robust criminal defense practice across federal and state courts in Oregon and I am a member of the federal Criminal Justice Act panel. In addition to representing Oregon defendants in state and federal courts, we represent victims and witnesses in criminal cases, juveniles, litigants in stalking and restraining order cases, and families in child abuse investigations.

3.     Defendants who have attorneys involved with their case from the beginning have an enormous advantage over similarly situated defendants who are without counsel. Sometimes clients hire us before law enforcement has even commenced its investigation. The earlier my defense team begins work on a client's case, the better our client's outcome. We consider, but do not rely on, the governments' evidence to defend our cases. Rather, we conduct our own investigation, hire our own experts, and begin developing mitigation information immediately after meeting our clients. Criminal defense is a client-centered practice that succeeds on the strength of relationships. However, gaining a client's trust takes time. Likewise, it is labor intensive to gather the information necessary to develop a theory of defense and to credibly tell the client's story.

4.     Defendants in jail face even greater burdens when representation is delayed. Jail visiting hours are limited. The defense team must travel to the institution to visit with their client. Privacy is limited. Working conditions are uncomfortable with sensitive conversations often happening through glass or worse. It is significantly harder to review discovery and work collaboratively with a client in custody. Any delay in meeting a new client hampers the

DECLARATION OF NOAH HORST IN SUPPORT OF PETITIONERS - 2
(Case No. 3:23-CV-01097-CL)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

Exhibit 2
Page 2 of 5

development of a working attorney-client relationship and puts the client and the defense team at a disadvantage. Adequate development of a defense requires the attorney and client to meet promptly after appointment and regularly thereafter. Trust is lost if the client waits in custody without speaking to their lawyer. Crucial mitigating evidence may also be lost if an attorney does not meet quickly with a new client.

5.      Every additional day a defendant goes without a lawyer increases the disadvantage they face. For example, in cases with co-defendants, whichever defendant gets their lawyer first wins a head start in negotiations, expert selection, and the crucial opportunity to begin telling the client's story to the government, inevitably shaping the narrative of the case. I begin legal research, staff my cases with my team, and begin trial preparation within days of meeting a client. Evidence can become stale or lost with passing time. For example, a client accused of being intoxicated during a crime will lose the ability to test their blood or hair for chemical metabolites with the passage of time. Video evidence from businesses or residences is often overwritten within days or weeks and thus irretrievably lost. Law enforcement often finds witnesses who tell a story consistent with the alleged victim; in so doing, they frequently miss witnesses and evidence that can be exculpatory. Moreover, witnesses' memories fade with each passing day and recording a witness's statement close in time to an incident is much more valuable to the defense than tracking down a witness days or months later. Some defendants may have a strategic advantage in requesting a speedy trial and catching the government on its heels but cannot intelligently assess their position without defense counsel.

6.      When a client is in custody, one of a defense attorney's first jobs attorney is to seek release of their client. Clients held in custody often lose housing, employment, treatment opportunities, and relationships simply waiting for a release hearing. Prior to the hearing, my

DECLARATION OF NOAH HORST IN SUPPORT OF PETITIONERS - 3
(Case No. 3:23-CV-01097-CL)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

Exhibit 2
Page 3 of 5

defense team develops a plan to support a client upon release and keep them on track while their case is pending. When a judge releases an in-custody client, I ensure the release plan is immediately set in motion. Often this support includes treatment or counseling, connecting a client with resources, such as employment, and beginning the process of obtaining forensic and other essential expert evaluations. The sooner a client can enter treatment and begin working with my team to get their life on track, the better we can advocate for them at a future sentencing. Experience has shown that a client who is out of custody and has, for example, graduated treatment, is more likely to receive a favorable sentence than one who is in custody and has not had the opportunity to address the personal issues that may have contributed to their offense or gained skills necessary to avoid legal trouble in the future.

7.      In my experience, when defendants obtain release and receive treatment and other services in the community, they are not only more likely to receive a lighter sentence, but they are also less likely to recidivate. I have reviewed research that supports my personal experience. *See The Benefits of Early Release from Pretrial Detention*, Advancing Pretrial Policy & Research, *available at*

https://cdn.filestackcontent.com/security=policy:eyJleHBpcnkiOjQwNzg3NjQwMDAsImNhbG wiOlsicGljayIsInJlYWQiLCJ3cml0ZSIsIndyaXRlVXJsIiwic3RvcmVUiLCJjb252ZXJ0IiwicmVtb 3ZlIiwicnVuV29ya2Zsb3ciXX0=,signature:9df63ee50143fbd862145c8fb4ed2fcc17d068183103 740b1212c4.

8.      I am acutely aware of the years-long public defense crisis in Oregon. I have observed myriad significant advantages non-indigent defendants have over indigent defendants. For example, a client with means can access qualified counsel early in their case and benefit from counsel's early investigation and advocacy. Non-indigent clients are often able to post

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

Exhibit 2
Page 4 of 5

substantial bail to obtain release, thus permitting them to meet with their attorneys on a regular basis, access treatment or other services, maintain employment, and fight their case without the many significant barriers created by pre-trial incarceration.

 

**DATED** this 14th day of August, 2023.

By:    <u>s/ Noah Horst</u> OSB No. 076089
p. 971.229.1241
noah@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder St. Suite 415
Portland, OR 972045

DECLARATION OF NOAH HORST IN SUPPORT OF PETITIONERS - 5
(Case No. 3:23-CV-01097-CL)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

Exhibit 2
Page 5 of 5