**Fidel Cassino-DuCloux**
　Federal Public Defender
**Stephen R. Sady**
　Chief Deputy Federal Public Defender
**Julie Vandiver, Jessica Snyder,**
**Robert Hamilton, Michael Benson,**
**Peyton E. Lee, and Megha Desai**
　Assistant Federal Public Defenders
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123
Fax: (503) 326-5524

**David F. Sugerman**, OSB 862984
**Nadia H. Dahab**, OSB 125630
Sugerman Dahab
707 SW Washington St., Ste. 600
Portland, OR 97205
Tel: (503) 228-6474
Fax: (503) 228-2556

**Attorneys for Petitioners**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **WALTER BETSCHART, JOSHUA SHANE BARTLETT, CALEB AIONA, TYRIK DAWKINS, JOSHUA JAMES-RICHARDS, TANIELA KINI KIN LATU, RICHARD OWENS, LEON MICHAEL POLASKI, ALEX SARAT XOTOY, TIMOTHY WILSON, JEFFREY DAVIS, RICHARD AARON CARROLL, SR., JENNIFER LYN BRUNETTE, NICHOLAS WALDBILLIG, DEREK PIMENO ZAVALA, CURTIS RAY ANTHONY REMINGTON, CRISTA JEAN DAVIS, NICHOLE LYNN WHALEN, and JACOB ISAAC NATHANIEL COLE**, on their behalf, and on behalf of all others similarly situated, | Case No. 23-cv-01097 <br><br> **SECOND AMENDED PETITION PURSUANT TO 28 U.S.C. § 2241 FOR WRIT OF HABEAS CORPUS BY PERSONS IN STATE CUSTODY** <br><br> **Class Action Allegation Petition Expedited Consideration Requested** |
| 　　　　　　　　　　　**Petitioners,** | |
| v. | |
| **PATRICK GARRETT, WASHINGTON COUNTY SHERIFF**, in his official capacity, **WASHINGTON COUNTY CIRCUIT COURT JUDGES**, in their official capacities, and **THE STATE OF OREGON**, | |
| 　　　　　　　　　　　**Respondents.** | |

# I.     INTRODUCTION

The petitioners constitute a small percentage of the thousands of Oregonians who suffer an ongoing deprivation of liberty—both in jail and on restrictive conditions in the community—in violation of their federal constitutional rights to be represented by an attorney when charged with a crime. *Gideon v. Wainwright*, 372 U.S. 335 (1963). "[T]he right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothgery v. Gillespie County.*, 554 U.S. 191, 194 (2008). To be effective, the right to counsel requires client confidence and continuity of representation. *United States v. Bergeson*, 425 F.3d 1221, 1226 (9th Cir. 2005) ("A client's confidence in his lawyer, and continuity of the attorney-client relationship, are critical to our system of justice."). Contrary to their basic Sixth Amendment rights, the petitioners are in custody of the Washington County Sheriff or under the legal authority of the State of Oregon, without an attorney appointed to represent them, for many days, weeks, and months, after their first judicial appearance.

# II.     SUMMARY OF CLAIMS

In each of these cases, the Circuit Courts of the State of Oregon have appointed "OPDS" as a placeholder for counsel, yet no actual attorney appears to counsel and assist the petitioners.[1] This practice, and the long delay in appointment of actual counsel, harkens back to the Supreme Court's ruling 91 years ago in *Powell v. Alabama*, 287 U.S. 45 (1932). There, an Alabama court appointed "all members of the bar" to represent a group of young Black men charged with rape. The Court held such appointment was no more than a gesture, and explained why the defendants,

---

[1] Office of Public Defense Services. Recently passed legislation renames this organization Oregon Public Defense Commission (OPDC).

like the petitioners, were irreparably harmed: "from the time of their arraignment until the beginning of their trial, when consultation, thoroughgoing investigation and preparation were vitally important, the defendants did not have the aid of counsel in any real sense, although they were as much entitled to such aid during that period as at the trial itself." *Id*. at 57.

The period of time after the first adversarial appearance is critical because, once the prosecution begins, the "accused finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." *Rothgery*, 554 U.S. at 198 (internal quotation omitted). The Supreme Court has spoken clearly that "a defendant subject to accusation after initial appearance is headed for trial and needs to get a lawyer working, whether to attempt to avoid that trial or to be ready with a defense when the trial date arrives." *Id.* at 210. The American Bar Association standards that the Supreme Court has found to guide the norms for effective assistance of counsel require active advocacy from the time of the first appearance. *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (ABA standards reflect "[p]revailing norms of practice" and guide determinations of reasonable representation); ABA Criminal Justice Standards, Defense Function § 4-2.3 (4th Ed. 2017) ("A defense counsel should be made available in person to a criminally-accused person for consultation at or before any appearance before a judicial officer, including the first appearance."). In contrast, the petitioners are in custody under conditions that make a mockery of the ABA standards: they have no attorney at all to contest their detention or restrictions in the community, no one to counsel them about their charges, no one to investigate their cases and preserve relevant evidence. *See, e.g.*, ABA Standard 4-3.7 (Prompt and Thorough Actions to Protect the Client); § 4-4.1 (Duty to Investigate and Engage Investigators); 4-6.2 (Negotiated Disposition Discussions).

There is no difference in the right to counsel, and other related federal constitutional rights based on the degree of pretrial restraint the defendant faces, whether in jail or under restrictive conditions in the community. All such individuals are in unlawful "custody" within the meaning of 28 U.S.C. § 2241. *Hensley v. Municipal Court*, 411 U.S. 345, 349 (1973). With grant of the temporary restraining order for defendants in pretrial detention, and the addition of the State of Oregon as respondent, this Second Amended Petition adds named petitioners from across the State of Oregon who are facing criminal charges without counsel and are in the community with restrictions on their liberty. As of this filing, there are 2,454 persons in Oregon similarly situated. Some are under very restrictive conditions, like house arrest. Others are forced to strap a GPS monitoring device on their ankle and pay for expensive monitoring. All are required to return to Court as ordered and cannot move on with their lives with the ongoing prosecution looming over them.

The Second Amended Petition also continues to press for relief for the class of petitioners who are in custody of Sheriff Garrett in the Washington County Detention Centers. While the Court previously granted a temporary restraining order allowing the Sheriff ten days to imprison a person without counsel, the Petition seeks permanent relief and to shorten the time period for which the Sheriff may hold them in violation of their constitutional rights.

The violations of Sixth Amendment rights are obvious but to date no effective state remedy has been afforded despite the year-long failures to provide appointed attorneys. In January 2022, the chair of Oregon's Senate Judiciary Committee stated: "We are primed for having a lawsuit filed against the state for not adequately providing legal services for those who have the right to them." Conrad Wilson, *Lawmakers say Oregon 'primed' for lawsuit after scathing American Bar*

*Association report*, Oregon Public Broadcasting (Jan. 22, 2022), https://www.opb.org/article/2022/01/22/lawmakers-say-oregon-primed-for-lawsuit-after-scathing-american-bar-association-report/ (last visited Aug. 29, 2023). Nineteen months later, the problem persists. As the Court recently held:

> IThere is simply no dispute that Washington County's failure to appoint counsel, while incarcerating pretrial detainees indefinitely, violates the Sixth Amendment's right to counsel and fundamentally impacts the liberty interest a pretrial detainee has under the Due Process Clause of the Fourteenth Amendment. No reliable process guaranteed by the Fourteenth Amendment is present when an indigent defendant is required to proceed against the power of the state without counsel. They are unable to adequately argue for conditional release, secure witnesses, review discovery, challenge the charging instrument, intervene in the Grand Jury process, negotiate with the prosecution in an arms-length fashion, request the preservation of evidence, or challenge the length of their confinement through speedy trial statutes. For some, an uncounseled guilty plea is the only avenue out of custody.
>
> The fact that these egregious constitutional deprivations are only happening to criminal defendants in Washington County who are too poor to afford an attorney, is a grave insult to our Constitution's commitment to due process and equal protection under the law.

ECF 25 at 11-12. Without federal court intervention, indigent defendants in Oregon have no effective state remedy to address the widespread deprivation of counsel despite years-long failure to provide appointed attorneys.

As with other historic state actions that systematically deprived classes of Americans of their constitutional rights, the federal courts provide the ultimate safeguard against Oregonians being held in jail or under restrictive conditions in the community in violation of their constitutional rights. The right to counsel is "essential" because defense attorneys "are the means through which the other rights of the person on trial are secured." *United States v. Cronic*, 466 U.S. 648, 653 (1984). The petitioners seek class certification and expedited consideration of this petition to breathe life into the Sixth Amendment: if there is no remedy, there is no right.

The petitioners seek a writ of habeas corpus, release from custody or from restrictive conditions, and dismissal of their charges without prejudice pursuant to 28 U.S.C. §2241 on the grounds that they are being unlawfully held in custody of the Washington County Sheriff or by the State of Oregon in violation of their federal constitutional rights. Each petitioner is indigent, and the Court has appointed undersigned counsel to represent them in this matter. This Second Amended petition is filed after the successful intervention of the State of Oregon into this suit. ECF 28 and 30. The instant petition alleges claims on behalf of a statewide class of persons charged with crimes but not provided counsel. The amended petition is attached to a Motion to Amend in compliance with Rule 15(a)(2) of the Federal Rules of Civil Procedure and Local Rule 15-1.

### III. NATURE OF THE ACTION

1.     The petitioners seek a writ of habeas corpus and equitable relief pursuant to 28 U.S.C. §2241 on the grounds that they are in custody of the Washington County Sheriff, Washington County Circuit Court Judges, or the State of Oregon based on a pending criminal prosecution brought in the name of the State of Oregon.

### IV. JURISDICTION AND VENUE

2.     The petitioners are in custody of the Washington County Sheriff, Washington County Circuit Court Judges, or the State of Oregon either because they are being held in Washington County Detention Centers or have been placed on restrictive conditions in the community pursuant to pending charges brought in the name of the State of Oregon and under release conditions entered into with the State of Oregon. This Court has subject-matter jurisdiction to redress deprivation, under color of state law, of rights secured by the Constitution under 28 U.S.C. §§ 1331 and 1343(a)(3), and authority to grant habeas corpus relief from unlawful custody under 28 U.S.C. §2241. A person is in custody for the purposes of habeas jurisdiction even if they

are released on their own recognizance. *Hensley*, 411 U.S. at 349 (a person released on his own recognizance is "subject to restraints 'not shared by the public generally,' . . . that is, the obligation to appear 'at all times and places as ordered' by 'any court or magistrate of competent jurisdiction' . . . He cannot come and go as he pleases. His freedom of movement rests in the hands of state judicial officers, who may demand his presence at any time and without a moment's notice.") (quoting *Jones v. Cunningham*, 371 U.S. 236, 236 (1963)). Venue is proper because the petitioners are in custody within the District of Oregon.

## V.    PARTIES

3.    The petitioners are indigent defendants facing criminal charges in the State of Oregon. Some petitioners are housed in Washington County Detention Centers, others are in custody statewide because their freedom is restricted by conditions in the community. They have either not had an attorney appointed to their case, or they have had an attorney appointed to their case who subsequently withdrew from the case and no substitute counsel has been appointed.

4.    Patrick Garrett is the Sheriff of Washington County and is the custodian of those within the Washington County Detention Center. He is named in his official capacity. He is the proper respondent because he has the power to bring the petitioners before the Court so that the writ can be issued and can release petitioners on this Court's orders.

5.    The State of Oregon intervened as a respondent in this matter. ECF 28 and 30. Each prosecution at issue in this case is undertaken in the name of the State of Oregon. Pretrial release conditions for petitioners and proposed class members are set by the State of Oregon. *See* ECF 28 at 4 ("[T]he state has an interest in enforcing the terms of the release agreements that it enters with each defendant released from physical custody pending trial"). In addition, the State of Oregon is responsible for providing indigent defense. Although the State of Oregon is not a person, "a habeas

petitioners who challenges a form of 'custody' other than present physical confinement may name as the respondent the entity or person who exercises legal control with respect to the challenged 'custody.'" *Rumsfeld v. Padilla*, 542 U.S. 426, 438 (2004).

6.     The Washington County Circuit Court Judges are named in their official capacity. They were added in the First Amended Petition with the agreement of counsel for the respondent Sheriff "in order to foreclose disputes regarding the custody of persons on restrictions in the community and to expand the scope of potential remedies." ECF 18 at 4-5. They need not be parties if the State of Oregon agrees it has authority to carry out such remedial action as this Court orders and that no other respondent need be named.

## VI.     FACTUAL ALLEGATIONS

7.     All petitioners have suffered and continue to suffer irreparable harm from unconstitutional custody while subject to criminal prosecution. They have been unable to receive advice or advocacy from counsel during the pendency of their charges. They have no advocate to investigate their cases or preserve evidence. They are, by nature of their detention or their restrictive conditions, prevented or impaired from investigating their own cases. None have waived counsel in compliance with the constitutional requirements of *Faretta v. California*, 422 U.S. 806 (1975). Moreover, they have been forced to proceed with uncounseled hearings where they must choose to either make uncounseled statements or have no opportunity to be heard.

8.     The petitioners plead the following facts about the named petitioners who are presently held in custody of the Washington County Sheriff or were at the time of filing the initial habeas petition:

9.     **Joshua Shane Bartlett** was charged in two case numbers in Washington County: 23CR26723 (misdemeanor strangulation, misdemeanor assault, and two counts of misdemeanor

harassment); and 23CN03163 (contempt of court). Mr. Bartlett was also held in Washington County on a fugitive complaint for Attempted Grand Larceny, which is defined under Nevada law as attempting to steal the property of another valued at more than $1,200.

10.     Mr. Bartlett was without an attorney between May 31, 2023, and July 28, 2023. He was held in custody for 32 days without counsel. Mr. Bartlett made the following unrepresented court appearances: June 12, 2023, arraignment; June 26, 2023, arraignment; July 10, 2023, case management hearing; July 11, 2023, pretrial release hearing; July 24, 2023, case management hearing. It took only ten days after the appointment of counsel for Mr. Bartlett's case to come to an agreed upon resolution. He pled guilty on August 7, 2023, to two counts of misdemeanor assault in the fourth degree. He was sentenced to two years of probation and given credit for time served.

11.     **Walter Betschart** is charged in Washington Circuit Court Docket No. 23CR18586 with unlawful use of a weapon, menacing, and two counts of criminal mischief in the first degree. He is charged in Washington Circuit Court Docket No. 23CR26835 with violating a court's stalking protective order. He is also charged in Washington County Circuit Court Docket No. 23CN01889, 23CN02833, and 23CN01983 with contempt of court. Mr. Betschart was held in the Washington County Detention Center without counsel from April 20, 2023, to May 23, 2023, and again from June 7, 2023, to July 31, 2023, when counsel was appointed. Mr. Betschart was released from the detention center on August 16, 2023.  Mr. Betschart made his first appearance on April 20, 2023, and was arraigned on the unlawful use of weapon, menacing, and criminal mischief charges. Although Mr. Betschart is indigent, he went 102 days without counsel. Mr. Betschart made eight court appearances while unrepresented. Those appearances are April 20, 2023, arraignment (with arraignment-only counsel present); April 27, 2023, arraignment; May 15, 2023,

case management; May 30, 2023, case management; June 8, 2023, release hearing; June 20, 2023, case management hearing; July 18, 2023, case management hearing.

12. **Tyrik Dawkins** is charged in Washington County Circuit Court Docket No. 23CR08636 with four counts of rape in the first degree, four counts of sexual abuse in the first degree, four counts of sodomy in the first degree, two counts kidnapping in the first degree, and one count of coercion. Mr. Dawkins is currently incarcerated on those charges in the custody of the Washington County Sheriff, housed at the Washington County Detention Center since May 10, 2023. The case was initiated on February 22, 2023. Mr. Dawkins made his first appearance on May 11, 2023. Counsel was appointed on June 6, 2023, nearly one month after Mr. Dawkins was arraigned in Washington County, but that counsel was allowed to withdraw from the case on June 27, 2023, due to a conflict of interest under Oregon Rule of Professional Conduct 1.9. It was 52 days before new counsel was appointed to represent Mr. Dawkins.

13. Mr. Dawkins made six appearances while unrepresented. He appeared for an arraignment on an indictment on May 11, 2023 (with standby counsel appeared to complete the arraignment only). He appeared without counsel for a hearing on the government's motion for preventative detention on May 18, 2023. He was "preventatively detained" under Or. Rev. Stat. § 135.240(4)(a) because of that hearing, suspending his statutory right to a trial or release within 60 days. He appeared for a case management hearing on May 30, 2023, without counsel. After appointed counsel withdrew, he appeared without counsel on July 17, 2023, July 31, 2023, and August 14, 2023, for additional case management hearings.

14. New counsel was appointed for Mr. Dawkins after this Court granted the temporary restraining order. The prosecutor filed a motion on August 18, 2023, citing this Court's order and

asking counsel to be appointed within 24 hours. The circuit court granted that motion and appointed counsel for Mr. Dawkins the same day.

15. **Joshua James-Richards** is charged in Washington County Circuit Court Docket No. 23CR29312 with assaulting a public safety officer, strangulation and resisting arrest. Mr. James-Richards was incarcerated on those charges in the custody of the Washington County Sheriff, housed at Washington County Detention Center from June 21, 2023, to July 26, 2023. The case was initiated on June 21, 2023, when Mr. James-Richards made his first appearance. Although Mr. James-Richards is indigent, he has never received appointed counsel since the initiation of the case, a total of 73 days. Mr. James-Richards has made three appearances while unrepresented. He appeared for an arraignment on an information on June 21, 2023 (with standby counsel for the arraignment only). An order setting bail and release conditions was made at that time. He appeared for an arraignment on an indictment on June 28, 2023. A grand jury had already been convened and returned an indictment without Mr. James-Richards having the benefit of counsel to discuss a choice to testify or not. He appeared without counsel on July 24, 2023, at a case management conference. He again appeared on July 26, 2023, for modification of his pre-trial release conditions with the condition that he must check in with the release office every Wednesday.

16. Mr. James-Richards is houseless, has no address, no phone number, and no phone. On August 14, 2023, a case management hearing was held at which Mr. James-Richards was not present and no counsel was there for him. A pretrial release supervisor wrote the court to report that Mr. James-Richard had not checked in. On August 28, 2023, a further case management hearing was held without Mr. Richards and with no counsel, a bench warrant was issued. Mr.

James-Richards has no counsel to advise him of his court appearances or advise him of the consequences of not appearing for those court appearances.

17. **Taniela Kini Kini Latu** is charged with Burglary in the First Degree, Theft in the First Degree, and Felon in Possession of a Firearm in case number 23CR29887. He was held in custody without an attorney from June 23, 2023, to July 31, 2023, for a total of 39 days. Mr. Latu made the following unrepresented appearances in court: June 23, 2023, arraignment; June 30, 2023, arraignment; July 17, 2023, case management hearing. On June 23, 2023, the court set bail security of $250,000, with a requirement that Mr. Latu post ten percent of the security amount ($25,000), be under the supervision of a court approved "responsible person," and be under house arrest. Counsel was appointed on July 31, 2023, after which bail was reduced to $75,000. Mr. Latu remains in the custody of the Washington County Sheriff.

18. **Richard Owens** was arraigned on charges of unlawful use of a weapon, menacing, and felon in possession of a firearm on June 12, 2023, in Washington County case 23CR27632. No lawyer was appointed to represent him until August 3, 2023, 53 days later. On June 16, the court held a pre-trial release hearing, and the Washington County District Attorney moved for preventative detention. Mr. Owens appeared at that hearing without the assistance of counsel. The court continued to detain Mr. Owens without bail but ordered the Washington County District Attorney to send Mr. Owens a copy of the documents relied on in the motion. The court held a second pretrial release hearing on June 30, 2023. The court continued to detain Mr. Owens but set a further pretrial detention hearing for July 10, 2023. Mr. Owens appeared at that hearing without the assistance of counsel. The court required Mr. Owens to waive counsel at that hearing in order to consider releasing him. The court set his bail at $100,000 and placed him on house arrest. Mr.

Owens could not afford bail and was excluded from returning to his home by the same order, and thus could not comply with house arrest.

19.     On August 3, 2023, counsel was appointed to represent Mr. Owens, and his pretrial release conditions were modified to remove the bail requirement and impose requirements that he reside with a responsible adult and comply with GPS monitoring. Mr. Owens is in the community under those conditions.

20.     **Leon Michael Polaski** was arraigned on charges of, strangulation, assault in the fourth degree, interference with making a report, and tampering with a witness on June 21, 2023, in Washington County case number 23CR29349. No lawyer was appointed to represent him until August 2, 2023. The Washington County District Attorney filed a motion for preventative detention on June 26, 2023. Mr. Polaski appeared without counsel for a probable cause and pretrial release hearing without the assistance of counsel on June 28, 2023. The court held the hearing, denied him release, and arraigned him on an indictment returned that same day. The court set a further pretrial release hearing for July 19, 2023. Mr. Polaski appeared at the July 19, 2023, hearing without the assistance of counsel. The court set bail at $10,000 and authorized release under certain conditions. Mr. Polaski was unable to meet those conditions or post bail. Mr. Polaski also appeared for a case management hearing on July 24, 2023, without the assistance of counsel. After counsel was appointed to represent Mr. Polaski, a disposition was negotiated within 16 days. Mr. Polaski entered a guilty plea to misdemeanor assault in the fourth degree, misdemeanor interference with making a report, and felony tampering with a witness. Mr. Polaski was sentenced to six months in jail and three years of probation. He is currently serving his sentence in the Washington County jail.

21.      **Timothy Wilson** was arraigned June 6, 2023, on charges of public indecency in Washington County in case number 23CR26613. Mr. Wilson went without counsel until August 2, 2023, a total of 58 days. Mr. Wilson appeared for an arraignment on an indictment without counsel on June 13, 2023. The court set a case management hearing for June 26, 2023. He appeared at that hearing without counsel. The court set another case management hearing for July 10, 2023, at which he again appeared without counsel. Mr. Wilson also appeared without counsel for a pre-trial release hearing on July 25, 2023. The court modified his conditions of release at that hearing, recommending that he be placed in community corrections. Counsel was appointed to represent Mr. Wilson on August 2, 2023. On August 9, 2023, Mr. Wilson was conditionally released.

22.      In its order granting a temporary restraining order and provisional class certification, this Court explained that "[a]lthough named Petitioners Betschart, Latu, Owens Jr., Polaski and Wilson were recently appointed attorneys, the transitory nature of their claims allows them to represent the fluctuating class of defendants in Washington County detention who face ongoing constitutional violations." ECF 25 at 10.

23.      The petitioners plead the following facts with respect to the named petitioners who are in the custody pursuant to pending prosecutions done in the name of the State of Oregon and under release agreements executed with the State of Oregon:

24.      **Caleb Aiona** was arraigned in Washington County Circuit Court, Case Number 23CR17208 on April 17, 2023, on charges of unlawful use of a weapon and menacing constituting domestic violence.  No lawyer was appointed to represent him.  The court set bail at $10,000 and ordered restrictive conditions in the community including: complete house arrest other than to attend work, and medical, legal, and mental health appointments; residing with the responsible

person; inability to leave the residence unless accompanied by the responsible person or person approved by Court Release Office. When the court set these restrictive conditions at arraignment, Mr. Aiona did not have counsel to oppose them. Mr. Aiona paid $1,000 in bail on April 17, 2023. Mr. Aiona has made four appearances in court while unrepresented: April 17, 2023, arraignment; May 10, 2023, status conference; July 10, 2023, status conference; August 22, 2023, case management.

25.     **Alex Sarat Xotoy** is charged in Washington Circuit Court Docket No. 22CR58185 with attempted rape, three counts of sexual abuse in the first degree, attempted sexual abuse in the first degree, and assault in the fourth degree. The case was initiated on December 5, 2022. Mr. Sarat Xotoy made his first appearance that same day. Mr. Sarat Xotoy was held in the Washington County Detention Center until May 9, 2023, when he was placed on house arrest and under further conditions in the community. His house arrest conditions include restrictions on his ability to leave his house except for work, counseling, legal or medical appointments, prohibition on possession or use of alcohol, and prohibition on contact with described individuals. He is required to wear an GPS monitoring bracelet.

26.     Although Mr. Sarat Xotoy is indigent, he does not presently have appointed counsel. On February 13, 2023, Vicki Vernon appeared on behalf of Mr. Sarat Xotoy. On March 17, 2023, Ms. Vernon moved to withdraw, citing a conflict of interest. On March 30, 2023, a subsequent order was entered granting Ms. Vernon's motion to withdraw and again appointing "OPDS" to represent Mr. Sarat Xotoy. Mr. Sarat Xotoy has had an attorney for only 31 of the 271 days that he has faced the state's charges. It has been 156 days since Mr. Sarat Xotoy last had counsel. Mr. Sarat Xotoy has made at least seventeen court appearances while unrepresented.

Those appearances are: December 5, 2022, arraignment; December 12, 2022, pretrial release hearing; December 20, 2022, pretrial release hearing; December 27, 2022, case management hearing; January 9, 2023, case management hearing; January 23, 2023, case management hearing; January 30, 2023, case management hearing; April 10, 2023, case management hearing; April 24, 2023, case management hearing; April 25, 2023, case management hearing; May 4, 2023, pretrial release hearing; May 11, 2023, status check hearing; May 22, 2023, case management hearing; May 24, 2023, hearing on motion to modify release conditions; June 21, 2023, case management hearing; June 29, 2023, hearing on motion to modify release conditions; August 1, 2023, case management hearing.

27.     The pending prosecution and release conditions have interrupted every aspect of Mr. Sarat-Xotoy's life. He is in a constant limbo unsure of whether he will be incarcerated. He at times goes hungry because his house arrest does not allow him to leave to go to the grocery store and he is dependent on the availability and kindness of friends to bring him food and other essentials. He wants to see his children. And though the court removed the condition preventing contact with them, he has no way to contact them without violating his other release conditions, which include staying away from the alleged victim.

28.     **Richard Aaron Carroll, Sr.**, is charged with strangulation, a class C felony, menacing, and two counts of assault in the fourth degree, class A misdemeanors, in Douglas County in case number 23CR39037. Mr. Carroll was arraigned on August 14, 2023, and, although he requested a court appointed attorney, he was not provided with an attorney and was not able to speak with an attorney. "OPDS" was assigned to his case. Mr. Carroll, a Navy veteran, had court appearances on August 22 and August 24, 2023, without counsel. On August 25, 2023, the Douglas

County Court appointed the Umpqua Valley Public Defender, who moved to withdraw citing a nonwaivable conflict of interest. The motion was granted on August 29, 2023. Mr. Carroll has been released on the condition that he appear at the Douglas County Circuit Courtroom on October 2, 2023, and that he not contact the alleged victim and not go to the address of the alleged victim. The alleged victim lives in Mr. Carroll's home, so he is homeless as a result of the release conditions.

29.     **Jennifer Lyn Brunette**, is charged with failure to report as a sex offender, in Lincoln County in case number 23CR25533. Ms. Brunette was arrested on her charges on May 17, 2023. She was released the following day on the conditions that she appear at all court appearances in Lincoln County Circuit Court, not use or possess any intoxicants, and not enter any bars, taverns, liquor stores or dispensaries. Ms. Brunette was arraigned on her charges on June 5, 2023, where her counsel was listed as "OPDS." Ms. Brunette was found to be eligible for court appointed counsel and the court awarded a judgment to the State of Oregon for $401.00, $20 for an application fee for counsel, $381.00 for a contribution amount to the costs of counsel. The judgment requires Ms. Brunette to pay $50 a month to the State of Oregon starting on July 6, 2023, and each month thereafter until the amount is paid in full. On July 25, 2023, an indictment was returned by a grand jury for two counts of failure to report as a sex offender from a proceeding at which Ms. Brunette had no counsel to advise her of her right to testify before the grand jury. Ms. Brunette had a court date on July 31, 2023, at which she did not have counsel to represent her. The court has not indicated when counsel will be available for Ms. Brunette.

30.     Ms. Brunette has various mental and physical disabilities and is unable to represent herself in court; she is transient and lives in a camper van is unable to afford counsel. The pendency of these charges without the guidance of counsel causes her great anxiety and worry.

31.     **Nicholas Waldbillig** was charged with kidnapping in the first degree, robbery in the first degree, unauthorized use of a vehicle, coercion, tampering with a witness, contempt of court, resisting arrest, kidnapping in the second degree, sodomy in the first degree (two counts), sexual abuse in the first degree (two counts) in Deschutes County, in case numbers 10FE1396MS and 10FE1180MS. Mr. Waldbillig was tried on these charges in 2012 and was acquitted of kidnapping in the first degree, robbery, and unauthorized use of a vehicle. A judgment of conviction was entered on the charges of coercion, kidnapping in the second degree, sodomy in the first degree (two counts), sexual abuse in the first degree (two counts) based on a non-unanimous jury verdicts. He received unanimous jury verdicts only on charges of resisting arrest, violation of restraining order, and tampering with a witness. After the Oregon Supreme Court decided in *Watkins v. Ackley*, 370 Or. 604 (2002), that conviction by nonunanimous jury verdict is a constitutional violation of such magnitude that the conviction is void, the convictions obtained through nonunanimous jury verdicts were vacated and the case was remanded to the Deschutes County Circuit Court for further proceedings. A notice to that effect was filed on March 2, 2023, in the Deschutes County Circuit Court.

32.     Counsel was appointed for Mr. Waldbillig on March 7, 2023. On April 19, 2023, while Mr. Waldbillig was still represented by counsel, he was released on $70,000 bail; his parents paid the $7,000 necessary security, and he was required to wear an GPS ankle monitor. On May 26, 2023, Mr. Waldbillig's counsel moved to withdraw, citing ethical constraints. The motion was

granted on June 5, 2023, and his case was reassigned to the Bend Attorney Group. Ten days later, the new counsel also withdrew, citing ethical constraints. The order was granted on June 26, 2023, and the order noted that the case was sent to OPDS to assign. Mr. Waldbillig has been without counsel for the last 67 days. He has effectively been without counsel since his initial counsel filed his motion to withdraw, 99 days ago.

33.     Without counsel, Mr. Waldbillig is unable to move his case toward resolution. His family struggles financially from the loss of the $7,000 it put forward as security. Mr. Waldbillig is paying $380 a month for GPS monitoring and is $2,000 in debt. He is unable to find employment because of his open criminal case, and his debt deepens as each month passes without resolution. Mr. Walbillig has a trial set for November 28, 2023, and a pretrial hearing set for November 21, 2023. Without counsel appointed and able to prepare for that date, Mr. Waldbilling faces more months of uncertainty and financial hardship.

34.     **Jeffrey A. Davis** is charged with unlawful use of a weapon and menacing in Benton County in case number 23CR22103. He was arraigned on May 16, 2023, and conditionally released on the conditions that he would appear in court as directed, have no contact with the alleged victim, report for fingerprinting, and not leave the State of Oregon without permission of the court with enumerated exceptions. Mr. Davis was found to be financially eligible for court-appointed counsel and "OPDS" was appointed to represent him. The Circuit Court entered a money judgment against Mr. Davis with the State of Oregon as the creditor, awarding the State $20 for the application fee for court appointed counsel and $381 dollars for the counsel contribution amount. The judgment was entered on May 16, 2023, and the $401 was ordered to be paid in full immediately. Mr. Davis has appeared in court twice without a lawyer. Each time he was told that

there was no one to represent him and he would need to come in for another arraignment. He has a third arraignment scheduled for September 16, 2023. Despite being ordered to pay $401 dollars for a public defender, no attorney has ever appeared on Mr. Davis's behalf. He has been without counsel for 113 days.

35.     Mr. Davis's release conditions prevent him from having contact with the alleged victim or his family. The alleged victim worked at the school Mr. Davis's children attend and, because of the release conditions, Mr. Davis is prevented from going to the school, even to pick up a sick child.

36.     **Derek Pimeno Zavala** is charged with burglary in the first degree and assault in the fourth degree in Coos County case number 23CR03968. Mr. Zavala was arraigned on these charges on January 26, 2023. Although a lawyer stood next to him at arraignment, he has never met with an attorney. On January 27, 2023, an attorney moved to withdraw citing ethical concerns. On January 30, 2023, the motion was granted and "OPDS" was appointed to represent Mr. Zavala. He spent four days in jail and was released after posting $5,000 in security. Other than the ostensible appearance of a conflicted attorney for one day, Mr. Zavala has not had a lawyer for the 218 days that he has faced criminal charges.

37.     He has been to court nine times without a lawyer: February 2, 2023, arraignment; February 22, 2023, entry of not guilty plea; March 8, 2023, attorney status; March 29, 2023, attorney status; April 26, 2023, attorney status; May 24, 2023, attorney status; June 21, 2023, attorney status; July 19, 2023, attorney status; August 16, 2023, attorney status. In the hearings to determine whether Mr. Zavala has an attorney, the court asks whether anyone from OPDS is there to represent Mr. Zavala. When no one responds, the Court releases Mr. Zavala on the same

conditions. Mr. Zavala who has a young child, loses approximately $100 in lost wages and gas money every time he must miss work and drive to a court appearance.

38.     On February 9, 2023, the Coos County Circuit Court issued a limited judgment against Mr. Zavala awarding the State of Oregon $890, $20 of which represents an application fee, and $870 a contribution amount toward his defense. The judgment provides that Mr. Zavala is to pay the fee within 365 days or accrue more charges. Again, Mr. Zavala has been without counsel for 218 days.

39.     **Curtis Ray Anthony Remington** is charged with Manufacturing/Delivery of a Controlled Substance in Schedule II (2 counts); Felon in Possession of a Firearm (3 counts); Attempt to Commit a Class B Felony (2 counts); Unlawful Possession of Cocaine; Unlawful Possession of Methamphetamine; and Unlawful Possession of a Controlled Substance—Schedule II in Multnomah County in case number 22CR60860. An indictment was filed on December 20, 2022. Mr. Remington was represented at arraignment and with respect to a warrant on February 2, 2023, by retained counsel Barry Engle. However, Mr. Remington was unable to pay the $35,000 fee requested by Mr. Engle to represent him for his full case and Mr. Engle was allowed to withdraw on March 13, 2023. Mr. Remington was found to qualify for court-appointed counsel, but no person has appeared on his behalf in the 112 since he completed his affidavit of indigency on May 12, 2023.

40.     Mr. Remington's release conditions prevent him from leaving the State of Oregon except to see his brother who lives in Vancouver, Washington. Mr. Remington's father lives in Seattle, Washington and he has family in Everett, Washington. His grandfather, who lived in Everett, passed away, and Mr. Remington has been unable to travel to be with his family. The

pendency of these criminal charges causes great stress and anxiety to Mr. Remington who has no one to explain the charges against him or counsel him regarding possible outcomes. The inability of his case to move toward resolution creates a hardship on him and his family.

41. **Crista Jean Davis** is charged with burglary in the first degree, theft in the first degree, unauthorized use of a vehicle, conspiracy to commit a class A felony, and conspiracy to commit a class C felony (2 counts) in Douglas County in case number 22CR58420. Ms. Davis was arraigned on a prosecutor's information on December 6, 2022. Despite being unable to afford a lawyer and qualifying for court-appointed counsel, Ms. Davis has never had an attorney appointed to represent her. Ms. Davis has been to court ten times without an attorney: December 21, 2022, arraignment on indictment; January 9, 2023, attorney status check; January 17, 2023, status check; February 8, 2023, status check; March 9, 2023, status check; April 13, 2023, status check; May 12, 2023, status check; June 13, 2023, status check; July 14, 2023, status check; August 14, 2023, status check. The court has not indicated when Ms. Davis will be provided an attorney. Her release conditions require her to make her court appearances, not to leave the state, not to use intoxicants, and not to have contact with her codefendants.

42. The repeated court appearances with no progress toward appointment of counsel is a hardship to Ms. Davis who has no car. She lives twelve miles from the courthouse and must arrange transportation for each fruitless appearance. Ms. Davis has been without counsel for 269 days.

43. **Nichole Lynn Whalen** is charged with assault in the third degree in Jackson County in case number 23CR22963. Ms. Whalen was arraigned on an indictment on May 31, 2023. She was released on conditions that she appear at future court dates and will not leave the state of

Oregon or have contact with her alleged victim. She has had no attorney appointed to represent her at any time. She had a hearing on August 14, 2023, at which she did not have counsel. Her next court date is not set until January 2, 2024. There has been no indication when Ms. Whalen will have counsel appointed for her.

44.     **Jacob Isaac Nathaniel Cole** is charged with criminal mischief in the first degree in Jackson County in case number 23CR18372. Mr. Cole was arraigned on this charge on April 28, 2023. He was released on the conditions that he appear at his court hearings, not depart the State of Oregon without permission and not have contact with the alleged victim. Mr. Cole was found eligible for court-appointed counsel and ordered to pay a $20 counsel application fee payable to the State of Oregon. He has never had counsel appear on his behalf. On his own motion, he was permitted to leave the State of Oregon for commercial fishing. His next court date is December 11, 2023.

45.     All petitioners have suffered and continue to suffer irreparable harm from unconstitutional custody while subject to criminal prosecution. ECF 25 at 12.

### VII.    CLASS ACTION ALLEGATIONS

46.     Each of the petitioners are in custody for the purposes of 28 U.S.C. § 2241(c). The petitioners propose two subclasses, one for those in custody of the Washington County detention center, and another for those in custody of the State of Oregon statewide under restrictive conditions in the community. Each of the petitioners are indigent for the purposes of the Sixth Amendment and do not have individual counsel assigned to represent them on their pending charge.

47.     **Washington County Detainees**: The Court has provisionally certified a class of criminal defendants who are: (1) indigent and unable to afford an attorney, (2) facing criminal

charges in Washington County, (3) who are physically housed in a Washington County Detention Center, and (4) who have not had an attorney appointed to represent them within ten days of their initial appearance, or (5) have had an attorney appointed to their case who subsequently withdrew and no substituted counsel has been appointed within ten days of their withdrawal. ECF 25 at 9.

48.     The petitioners allege that the federal constitution requires the provisional class to be expanded to include indigent criminal defendants who have not had an attorney appointed within 48 hours of their initial appearance or have not had a substitute attorney appointed within 48 hours of the withdrawal of their previously appointed attorney.

49.     At the time of filing the original petition in this action there were 56 individuals in custody at the Washington County Detention Center without counsel. On August 17, 2023, the Court recognized the above class and issued a temporary restraining order requiring Sheriff Garrett to release the provisional class members who had not been provided with counsel within ten days of its order. The numbers of unrepresented in the Washington County Detention Center have decreased since the entry of the temporary restraining order. As of this filing, there are 10 individuals in the Washington County Detention Center without counsel. There are an unknown number of future class members.

50.     **Individuals On Restrictive Conditions In The Community**: The petitioners raise the following allegations on behalf of the statewide class of indigent criminal defendants who have not been provided with counsel but are prosecuted in the name of the State of Oregon, and, without counsel, have entered into release agreements with the State of Oregon. These release agreements, at a minimum require the petitioners and proposed class members to return to court at a date and

time set by the court. This requirement is sufficient to constitute custody for the purposes of habeas relief under 28 U.S.C. § 2241. *Hensley*, 411 U.S. at 349.

51.     Statewide, there are approximately 2,454 similarly situated potential class members charged in with crimes brought in the name of the State of Oregon who qualify for court-appointed counsel, but either have not had counsel appointed, or have had counsel withdraw, and no substitute counsel has been appointed. There are an unknown number of future class members.

52.     All similarly situated persons constitute a class who are: (1) indigent and unable to afford an attorney, (2) facing criminal charges brought in the name of the State of Oregon, (3) who, without counsel, have executed a release agreement with the State of Oregon and/or are required to return to court for future appearances in that prosecution, and (4) who have not had an attorney appointed to represent them after their initial appearance, or (5) have had an attorney appointed to their case who subsequently withdrew and no substituted counsel has been appointed.

53.     The members of the defined classes are so numerous that joinder is impractical.

54.     Petitioners and members of the class share one or more common questions of law and fact regarding the deprivation of federal constitutional rights after the Sixth Amendment right to counsel attaches.

55.     The petitioners' claims are typical of the claims of members of the class, in that all allege unlawful deprivation of federal constitutional rights under the Sixth Amendment and Due Process and Equal Protection Clauses.

56.      The petitioners will fairly and adequately represent the interests of the class. Counsel for the class has extensive experience litigating similar issues and expertise in class representation.

57.    The class seeks injunctive and declaratory relief under Rule 23(b)(2).

## VIII.    CLAIMS FOR RELIEF

### First Claim for Relief
### Violation Of The Right To Counsel

58.    Based on the foregoing, the petitioners' custody violates the Sixth Amendment, made applicable to the State of Oregon through the Fourteenth Amendment, which guarantees indigent defendants charged with felonies the right to appointed counsel to assist in their defense following initiation of criminal proceedings. *Rothgery*, 554 U.S. at 194; *Gideon*, 372 U.S. at 343-45. "The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment." *Avery v. Alabama*, 308 U.S. 444, 446 (1940).

59.    The Sixth Amendment requires the presence of counsel at all critical stages of the criminal process. *United States v. Wade*, 388 U.S. 218, 237 (1967); *Powell*, 287 U.S. at 57. "In deciding what qualifies as a critical stage, courts have recognized that the period from arraignment to trial is 'perhaps the most critical period of the proceedings.'" *United States v. Hamilton*, 391 F.3d 1066, 1070 (9th Cir. 2004) (simplified) (quoting *Wade* and *Powell*). Arraignments are "[a]mong the stages of a prosecution deemed 'critical' for Sixth Amendment purposes[.]" *Id.* (citing *Hamilton v. Alabama*, 368 U.S. 52, 53-55 (1961)). Preliminary hearings and bail hearings are also critical stages, *Coleman v. Alabama*, 399 U.S. 1, 9-10 (1970), as is "the process of plea bargaining and period of defendant's potential cooperation with the government." *Hamilton*, 391 F.3d at 1070 (citing *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003)).

60.    The Sixth Amendment right to "'counsel is by far the most pervasive'" of all constitutional rights because it affects a defendant's "'ability to assert any other rights he may have.'" *Cronic*, 466 U.S. at 654 (citation omitted). Deprivation of the right to the assistance of

counsel in criminal proceedings constitutes structural error and is prejudicial per se. *Hamilton*, 391 F.3d at 1070 ("Where counsel is absent during a critical stage, the defendant need not show prejudice. Rather, prejudice is presumed, 'because the adversary process itself has become presumptively unreliable.'") (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000) (quoting *Cronic*, 466 U.S. at 659)).

61.     The Sixth Amendment also requires the appointment of conflict-free counsel (*Holloway v. Arkansas*, 435 U.S. 475, 484-90 (1978)) and effective counsel (*Strickland v. Washington*, 466 U.S. 668 (1984)). As the Ninth Circuit held in *Delgado v. Lewis*, 223 F.3d 976, 980 (9th Cir. 2000), the Sixth Amendment "'guarantees more than just a warm body to stand next to the accused during critical stages of the proceedings' an accused is entitled to an attorney who plays a role necessary to ensure that the proceedings are fair.'") (quoting *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1015 (7th Cir. 1988)). To the extent that the state circuit courts appoint conflicted counsel or counsel who unable to perform effectively, that does not satisfy the Sixth Amendment.

## Second Claim for Relief
### Violation Of Due Process Liberty And The Eighth Amendment

62.     Based on the foregoing, the physical restraint of the petitioners without counsel violates the Eighth Amendment and the Due Process Clause. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The carefully limited exception forecloses detention unless, "after an adversary hearing," certain factual determinations are made. *Id*. To comply with due process and the Eighth Amendment, "[d]etainees have a right to counsel at the detention hearing." *Id*. at 751 (citing the Bail Reform Act). "The Framers viewed freedom from unlawful restraint as

a fundamental precept of liberty[.]" *Boumediene v. Bush*, 553 U.S. 723, 739 (2008). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that [the Due Process] Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

### Third Claim For Relief:
### Violation Of Procedural Due Process By Prosecution Without Counsel

63.    Based on the foregoing, the petitioners are in custody in violation of the procedural due process guaranteed by the Fifth and Fourteenth Amendments. The balance of interests establishes that, where liberty is at issue and the State is represented by counsel, requiring the indigent defendant who has not waived counsel to proceed without counsel is unconstitutional. *See United States v. Salerno*, 481 U.S. 739, 746 (1987) (citing *Matthews v. Eldridge*, 424 U.S. 319 (1976)). The failure to provide counsel to the petitioners during their criminal proceedings has deprived them of important procedural protections. By conducting proceedings with the petitioners in the absence of counsel and without a voluntary waiver in compliance with *Faretta*, they are required to either make uncounseled statements and interact directly with the court hearing their case and the prosecutor charging them, or alternatively have no opportunity to be heard.

### Fourth Claim for Relief:
### Violation Of Equal Protection And Due Process Based On Indigency

64.    Based on the foregoing, the petitioners are in custody in violation of the equal protection and due process protections against discrimination based on wealth. *Bearden v. Georgia*, 461 U.S. 660, 665 (1983) (where discrimination is based on indigency, "[d]ue process and equal protection principles converge in the Court's analysis[.]").

## IX.    PRAYER FOR RELIEF

The petitioners, respectfully request that this Court:

1.      Certify the two subclasses of indigent criminal defendants detained in the Washington County Detention Center or released on restrictive conditions in the community statewide who have either not had an attorney appointed to their case, or they have had an attorney appointed to their case who subsequently withdrew from the case and no substitute counsel has been appointed.

2.      Authorize such procedural steps as needed to resolve any disputes regarding the facts alleged in this petition, including but not limited to discovery such as depositions, requests for admissions, interrogatories, and preservation of evidence, as well as holding an evidentiary hearing to resolve any disputed facts.

3.      Grant a writ of habeas corpus and enter a declaratory judgment that class members including the petitioners have been held in unlawful custody in violation of their rights under the Sixth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment from the commencement of adversarial proceedings to such time as counsel is appointed with full ethical responsibility to represent the individual class member.

4.      Grant a writ of habeas corpus ordering such equitable relief as "law and justice require" under 28 U.S.C. § 2243 including but not limited to release without conditions from custody, or, in the alternative, provision of sufficient money for class members to hire private attorneys, or for dismissal of charges without prejudice, and such further relief as is appropriate and just.

Respectfully submitted, this 1st day of September, 2023.

*/s/ Fidel Cassino-DuCloux*
Fidel Cassino-DuCloux

*/s/ David Sugerman*
David Sugerman

/s/ Nadia Dahab
Nadia Dahab

/s/ Stephen R. Sady
Stephen R. Sady


/s/ Julie Vandiver
Julie Vandiver


/s/ Jessica Snyder
Jessica Snyder


/s/ Robert Hamilton
Robert Hamilton


/s/ Peyton E. Lee
Peyton E. Lee


/s/ Megha Desai
Megha Desai


/s/ Michael Benson
Michael Benson


*Attorneys for Petitioners*