ELLEN F. ROSENBLUM
Attorney General
JAMES M. AARON  #132865
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4794
Email:  James.Aaron@doj.state.or.us

Attorneys for Respondents Washington County Circuit Court Judges and State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| WALTER BETSCHART, ET AL., <br><br> Petitioners, <br><br> v. <br><br> SHERIFF PATRICK GARRETT, ET AL., <br><br> Respondents. | Case No.  3:23-cv-01097-CL <br><br> STATE RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR PRELIMINARY INJUNCTIONS |

**I.     INTRODUCTION**

Petitioners bring this putative class action habeas corpus proceeding under 28 U.S.C. § 2241, alleging that they and similarly situated indigent defendants are in custody in violation of various constitutional rights because of delays in appointing them counsel.  This Court previously issued a preliminary injunction requiring the release of any defendant in physical custody in Washington County who does not have counsel appointed within 10 days of initial appearance or withdrawal of previously appointed counsel.  (ECF No. 25.)  Petitioners now ask to reduce that time to 48 hours.  (ECF No. 37 at 10–13.)  They also seek extraordinarily broad

Page 1 -     STATE RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR
                  PRELIMINARY INJUNCTIONS
                  JA/mmv/912543969

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

and unprecedented relief for a new subclass:[1] the removal of all conditions of release and dismissal of charges without prejudice for each of the roughly 2,500 unrepresented defendants out of physical custody with pending charges in Oregon. (*Id.* at 13–23.) As explained below, petitioners have not established that they are entitled to such expansive relief, and this Court should therefore deny both requests.[2]

## II. FACTUAL AND PROCEDURAL BACKGROUND

The claims in this case arise from what all parties agree is a crisis in Oregon's public defense system. The causes are multifaceted and systemic, and therefore no panacea is available to immediately resolve the issues. Nevertheless, the State is and has been taking steps to reshape public defense to ensure that every defendant receives adequate and effective assistance of counsel, regardless of their ability to pay. Most recently, the legislature enacted a bill that significantly reforms the structure of the commission responsible for providing public defense services throughout the state, begins the process of creating a trial-level division within the commission to employ trial attorneys directly, and requires each judicial district to develop and implement a crisis plan no later than September 1, 2023. 2023 Or. Laws ch. 281.

Each of the named petitioners in the Second Amended Petition has spent varying amounts of time unrepresented while charges were pending, some while in physical custody in a Washington County detention facility and others while on conditional release. They seek to assert claims on behalf of all indigent defendants in Oregon who have not been appointed counsel and are on conditional release, along with those in physical custody in Washington County. As of the date of this filing, about 2,500 defendants statewide were awaiting counsel

---

[1] The state respondents address the propriety of certifying that class separately in the concurrently filed response to petitioners' second motion for provisional class certification.

[2] Respondents Washington County Circuit Court Judges have moved to dismiss themselves as parties to this action, because they do not have custody of any of the petitioners or proposed class members and therefore do not fall within this Court's personal jurisdiction. (*See* ECF No. 53.) The judicial respondents do not intend to waive that argument and join in this response in the alternative.

Page 2 -   STATE RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR
           PRELIMINARY INJUNCTIONS
           JA/mmv/912543969

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

while on pretrial release in criminal or contempt cases. Unrepresented Individuals Dashboard, https://app.powerbigov.us/view?r=eyJrIjoiNDQ2NmMwYWMtNzhiZi00MWJhLWE3MjgtMjg2ZTRhNmNmMjdmIiwidCI6IjYxMzNlYzg5LWU1MWItNGExYy04YjY4LTE1ZTg2ZGU3MWY4ZiJ9 (last accessed September 26, 2023).

As explained previously in detail, each of the 19 named petitioners was represented by counsel at the time of arraignment but did not have appointed counsel afterward—some from the time of arraignment and others after initial counsel withdrew for a variety of reasons. (*See* ECF No. 52 at 9–23.) The courts have approved each of their requests for appointed counsel but have been unable to locate attorneys willing and able to represent them for various lengths of time. In those circumstances, the court appoints "OPDS"—the Office of Public Defense Services—as a placeholder, indicating that counsel needs to be identified for the person. OPDS then takes steps, in conjunction with the court, to identify counsel. The ultimate appointment can be made to individual attorneys, but more often a law firm or consortium is appointed.

### III. PRELIMINARY INJUNCTION STANDARD

The Supreme Court has emphasized that preliminary injunctions are an "extraordinary remedy never awarded as of right." *Winter v. NRDC*, 555 U.S. 7, 24 (2008). Petitioners must satisfy *Winter*'s four-factor test, showing that they are "likely to succeed on the merits," that they are "likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Id.* at 20. The first factor—likelihood of success on the merits—is the most important. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). The Ninth Circuit employs a "sliding scale" test, however, which allows a preliminary injunction when a movant shows "that serious questions going to the merits were raised and the balance of hardships tips sharply" in the movant's favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

Page 3 -   STATE RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR
           PRELIMINARY INJUNCTIONS
   JA/mmv/912543969

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

**IV. ARGUMENT**

Petitioners' request to lower the time limit for those unrepresented while in physical custody in Washington County to 48 hours offers no basis for this Court to reconsider its prior order, and such a time limit is wholly without any support in the law in any event. Petitioners' proposed subclass, moreover, is not likely to succeed on the merits of their claims, and the balance of the equities and public interest weigh against the preliminary relief they seek. This Court should therefore deny both requests.

### A. Petitioners provide no basis for this Court to reconsider the existing preliminary injunction.

Petitioners ask that this Court's previous order be converted from a temporary restraining order into a preliminary injunction and that the 10-day limit on physical custody imposed by that order be reduced to 48 hours. The order is already a preliminary injunction, however, and petitioners do not establish any grounds on which this Court could reconsider its order.

Although petitioners' motion was phrased as a motion for "temporary restraining order," this Court's order was not issued *ex parte* and does not terminate within 14 days or less. (*See* ECF No. 25.) It is therefore effectively a preliminary injunction, notwithstanding the lack of such a designation. *See* Fed. R. Civ. P. 65 (requiring notice to issue preliminary injunction and imposing 14-day limit on temporary restraining order (holding for purposes of appellate jurisdiction that an order is considered to be a preliminary injunction, regardless of how it is denominated, if it "possesses the qualities of a preliminary injunction"). In other words, there is no need for this Court to convert the order.

As to modifying the substance of the order, petitioners do not identify the basis for their request. Preliminary injunctions may be modified "at any time" before entry of a final judgment under Rule 54(b) or altered or amended under Rule 59(e).[3] A court "must look beyond the

---

[3] Both rules refer to a "judgment," but that term is defined more broadly for purposes of the rules than in other contexts and includes "any order from which an appeal lies." Fed. R. Civ. P. 54(a). A preliminary injunction is an appealable order and is therefore a "judgment" within the meaning of the rules. *See, e.g.*, *Meredith v. Oregon*, 321 F.3d 807, 811 (9th Cir. 2003).

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

motion's caption to its substance" to determine under which rule a particular motion is brought. *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005). The purpose of a motion to reconsider under Rule 59(e) "is to relitigate the original issue," while a motion to modify under Rule 54 "is meant only to relieve inequities that arise after the original order." *Id.* (internal quotation marks omitted). Thus, a motion that "merely seeks to relitigate the issues underlying the original preliminary injunction order" falls under Rule 59, and a motion "that in substance is based on new circumstances that have arisen after the district court granted the injunction" falls under Rule 54. *Id.*

Here, petitioners do not identify any new circumstances or inequities that have arisen since the original order. Instead, they seek to relitigate the original issue decided by this Court, and their request therefore falls under Rule 59(e). That rule provides an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation marks omitted). A motion under that rule "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Id.* (internal quotation marks omitted). And a Rule 59(e) motion "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Id.* (emphasis in original). Petitioners do not point to any newly discovered evidence, clear error, or change in controlling law, nor do they identify any reason why they could not reasonably have made their current arguments earlier. They simply chose to ask for a 7-day time limit and now believe that a 48-hour limit would be more appropriate. (*See* ECF No. 7.) Because petitioners merely present arguments that they reasonably could have raised before, they have not shown any basis for this court to reconsider the 10-day time limit.

In any event, for the reasons stated in the state respondents' motion for reconsideration, this Court should vacate the preliminary injunction entirely, not expand it. (*See* ECF No. 38.)

Page 5 -   STATE RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR
         PRELIMINARY INJUNCTIONS
    JA/mmv/912543969

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

The arguments made there apply with even more force to a 48-hour deadline. There is no authority for the proposition that a 48-hour delay from the time of first appearance amounts to a constitutional violation, much less in all circumstances. Indeed, state respondents have been unable to identify any jurisdiction that imposes a 48-hour limit—or any other hard limit—for appointing counsel. This Court's own plan under the Criminal Justice Act requires only that counsel be provided "as soon as feasible." District of Oregon CJA Plan at 7 (2018), *available at* https://or.fd.org/sites/or/files/pdfs/District%20of%20Oregon%20CJA%20Plan%202018_0.pdf.

Moreover, the balance of the equities and public interests differ when contemplating a 48-hour time limit versus 10 days. Although the court has largely if not always been able to find counsel for people in physical custody within the 10-day limit imposed by this Court's order, there is no reason to believe that the same will ever be true of a 48-hour time limit. Reducing the time would thus result in the release of people without the conditions that the court found necessary to ensure the defendant's appearance and the safety of the victims, witnesses, and the public, or where the court found that no conditions could adequately protect the community.

**B.     Petitioners are not entitled to a preliminary injunction regarding the "restrictive conditions" subclass.**

Petitioners have not shown that the proposed subclass of those on conditional release without counsel for more than 10 days is entitled to preliminary relief, much less those without counsel for only 48 hours. They are not likely to succeed on the merits for three reasons. First, the relief they seek is barred by the *Younger* doctrine. Second, their claims do not challenge the cause of the proposed subclass's custody and therefore do not fall within this Court's habeas jurisdiction. Third, they have not shown that every class member has suffered a constitutional violation. Finally, the balance of the equities and the public interest do not favor granting the broad, far-reaching relief petitioners request.

Page 6 -   STATE RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR
           PRELIMINARY INJUNCTIONS
   JA/mmv/912543969

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

## 1. The relief petitioners seek is barred by the *Younger* doctrine.

Federal courts' authority to intervene in ongoing state-court proceedings, particularly criminal proceedings, is carefully limited. *See Younger v. Harris*, 401 U.S. 37 (1971). *Younger* abstention "is a jurisprudential doctrine rooted in overlapping principles of equity, comity, and federalism." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018. A court must abstain if: (1) the state proceeding is ongoing; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity to raise constitutional challenges in the state proceeding; and (4) the requested relief would enjoin or have the practical effect of enjoining the ongoing state proceedings. *ReadyLink Healthcare, Inc. v. State Compensation Insurance Fund*, 754 F.3d 754, 758 (9th Cir. 2014). The court need not abstain, however, if there is a "showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982). When the *Younger* factors are satisfied, abstention is mandatory and district courts lack discretion to exercise jurisdiction. *Canatella v. California*, 404 F.3d 1106, 1113 (9th Cir. 2005).

Here, there can be no dispute that there are ongoing state proceedings that implicate important state interests. Petitioners further do not demonstrate any reason why they would not be able to adequately raise their constitutional challenges in those state proceedings, including after counsel is appointed.[4] And the preliminary relief they seek—dismissal of all criminal charges—would directly enjoin those proceedings. Even removal of the conditions of release, standing on its own, would effectively enjoin the criminal prosecutions, because the courts would lose any ability to require the defendants' presence, which is necessary for the proceeding to continue.

---

[4] The fact that they have not obtained the relief they desire by raising their claims in state court does not mean that they do not have an "adequate opportunity" to present those constitutional challenges. *See, e.g.*, *Moore v. Sims*, 442 U.S. 415, 425–26 (1979) (holding that "abstention is appropriate unless state law *clearly bars* the interposition of the constitutional claims (emphasis added)); *Commc'ns Telesystems Int'l v. Cal. Pub. Util. Comm'n*, 196 F.3d 1011, 1020 (9th Cir. 1999) ("*Younger* requires only the absence of 'procedural bars' to raising a federal claim in the state proceedings.").

Page 7 -   STATE RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR
           PRELIMINARY INJUNCTIONS
           JA/mmv/912543969

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

Petitioners may argue that this case presents an "extraordinary circumstance" that warrants intervention notwithstanding the satisfaction of *Younger*'s four elements. To establish that exception to *Younger* abstention, petitioners must show the existence of "extraordinary circumstances" that present a "danger of irreparable loss [that] is both great and immediate." *Younger*, 401 U.S. at 45. "[S]uch circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." *Moore v. Sims*, 442 U.S. 415, 433 (1979) (internal quotation marks omitted). Certain types of injury, "in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution" are not by themselves considered "irreparable" for purposes of this exception. *Younger*, 401 U.S. at 46. "Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution." *Id.*

In other words, the exception applies only if a favorable post-trial ruling could not fully vindicate the constitutional right at issue. For instance, when a pretrial detainee presents a colorable claim that his prosecution violates the Double Jeopardy Clause, *Younger* does not apply. *See, e.g.*, *Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir. 1992). That is because the right protected by the Double Jeopardy Clause is not to be subjected to the ordeal of trial, and overturning a conviction obtained in violation of that right is not a complete remedy. In contrast, *Younger* does apply to speedy-trial claims. *See, e.g.*, *Brown v. Ahern*, 676 F.3d 899, 900 (9th Cir. 2012). That is because "the speedy trial defense primarily protects the integrity of the trial itself" and, "[l]ike other rights designed to ensure a fair trial, the speedy trial right asserted as a defense can be vindicated through reversal of the improperly-obtained conviction." *Page v. King*, 932 F.3d 898, 904 (9th Cir. 2019).

The right to counsel is, like the speedy trial right, designed to ensure a fair trial. Indeed, the fact that the right is "essential to a fair trial" is the central basis on which the Court relied in holding that it applied to the states:

Page 8 -   STATE RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR
           PRELIMINARY INJUNCTIONS
    JA/mmv/912543969
                         Department of Justice
                         1162 Court Street NE
                         Salem, OR 97301-4096
                  (503) 947-4700 / Fax: (503) 947-4794

> [R]eason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth. . . . That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the wide-spread belief that lawyers in criminal courts are necessities, not luxuries. The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him.

*Gideon v. Wainwright*, 372 U.S. 335, 343–44 (1963). Reversal of a conviction obtained in violation of the right to counsel would provide a complete remedy for that violation. This case therefore does not present the kind of extraordinary circumstances that could support federal intervention.

### 2. Because they do not challenge the cause of their custody, petitioners' claims do not fall within this Court's narrow habeas jurisdiction.

Even if, in the abstract, this Court could intervene in the way petitioners suggest, their allegations do not fall within the limited scope of habeas corpus. "The writ of habeas corpus shall not extend to a prisoner unless," as relevant here, he "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). That statutory language "explicitly requires a nexus between the petitioner's claim and the unlawful nature of the custody." *See Bailey v. Hill*, 599 F.3d 976, 980 (9th Cir. 2010) (so stating in § 2254 case).[5] For example, the federal courts lack jurisdiction over a habeas petition raising a challenge to a restitution order, even if that person is also in physical custody as a result of the same judgment. *Id.* Such a petitioner does not "contend[] that *his custody* offends federal law." *Id.* at 979 (emphasis added).

---

[5] Section 2254 contains nearly identical language, providing that the court may entertain a habeas petition by a person in custody under a state-court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a).

Page 9 -   STATE RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR
           PRELIMINARY INJUNCTIONS
           JA/mmv/912543969

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

Here, petitioners have not shown that there is a nexus between the alleged constitutional violations and their custody status, much less the custody status of each of the 2,500 proposed subclass members. If each petitioner had been appointed counsel on the day of their initial appearance, the basis for their custody—the filing of an information or indictment alleging one or more crimes and supported by probable cause—would be unchanged. Indeed, unconditional release is not available to anyone with pending charges. *See* ORS 135.250; *see also Sexson v. Merton*, 291 Or. 441, 446, 631 P.2d 1367 (1981); *Knutson v. Cupp*, 287 Or. 489, 495, 601 P.2d 129 (1979) ("We hold that no one may be released from custody without executing and filing with the clerk of the court a release agreement."). Having an attorney earlier therefore could affect the custody of those on conditional release only if the attorney could obtain dismissal of the charges altogether. The record provides no basis to believe that any of the named petitioners or proposed class members would have received dismissal if they had been appointed an attorney earlier, much less that every class member would have. In other words, petitioners do not allege that their *custody* offends federal law, and their claims are therefore not cognizable in habeas.

> **3. Petitioners have not shown that every proposed class member has suffered a violation of their constitutional rights.**

The writ of habeas corpus may be granted, as relevant here, only to those who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioners raise four grounds for relief, alleging that the delays in appointing them counsel violate their rights under the Sixth and Eighth Amendments, the Due Process Clause, and the Equal Protection Clause. They have not established, however, that they or the proposed subclass of people on conditional or security release have suffered a constitutional violation.

> **a. The Sixth Amendment requires appointment of counsel within a reasonable time after first appearance to allow adequate representation at critical stages.**

The Sixth Amendment provides those accused in "all criminal prosecutions" with the right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. That right

Page 10 -   STATE RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR
            PRELIMINARY INJUNCTIONS
         JA/mmv/912543969

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

"does not attach until a prosecution is commenced." *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 198 (2008) (internal quotation marks omitted). Here, the parties all agree that a prosecution is commenced in Oregon no later than at the defendant's initial appearance on an information or indictment. But whether the right to counsel has attached—i.e., "whether formal judicial proceedings have begun"—does not answer the "distinct . . . question" of the scope of the right that has attached. *Id.* at 211–12. The Court has not defined the precise contours of that right but has offered a lower bound:

> Once attachment occurs, the accused at least[6] is entitled to the presence of appointed counsel during any "critical stage" of the postattachment proceedings; what makes a stage critical is what shows the need for counsel's presence. Thus, counsel must be appointed within a reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself.

*Id.* at 212 & n.15 (footnote omitted).

The Ninth Circuit considers three factors to determine what constitutes a critical stage in this context[7]—"whether: (1) failure to pursue strategies or remedies results in a loss of significant rights, (2) skilled counsel would be useful in helping the accused understand the legal confrontation, and (3) the proceeding tests the merits of the accused's case." *Hovey v. Ayers*, 458 F.3d 892, 901 (9th Cir. 2006) (internal quotation marks omitted). The presence of any of those factors "may be sufficient to render a stage of the proceeding 'critical.'" *Id.* Proceedings that have been considered critical stages include post-indictment police lineups, *United States v. Wade,* 388 U.S. 218, 227 (1967), arraignments where defenses are waived if not raised, *Hamilton*

---

[6] "We do not here purport to set out the scope of an individual's postattachment right to the presence of counsel. It is enough for present purposes to highlight that the enquiry into that right is a different one from the attachment analysis."

[7] The phrase "critical stage" is also used in the context of determining when prejudice is presumed by the complete or constructive denial of counsel under *United States v. Cronic*, 466 U.S. 648 (1984). *See, e.g., Bell v. Cone*, 535 U.S. 685, 695–96 (2002). Although the Ninth Circuit has acknowledged that the two determinations are separate, its case law has "muddled" the two analyses. *See United States v. Martinez*, 850 F.3d 1097, 1103 n.4 (9th Cir. 2017) (summarizing development of case law and collecting cases). Because petitioners and proposed class members have not yet been convicted, the *Cronic* critical stage analysis is not relevant.

Page 11 - STATE RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR
   PRELIMINARY INJUNCTIONS
   JA/mmv/912543969

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

*v. Alabama,* 368 U.S. 52, 53 (1961), entering a guilty plea, *White v. Maryland*, 373 U.S. 59 (1963) (*per curiam*), and sentencing, *Gardner v. Florida,* 430 U.S. 349, 358 (1977). On the other hand, an initial appearance where the court merely informs the defendant of the charges and determines the conditions for pretrial release, *Farrow v. Lipetzky* (*Farrow I*), 637 F. App'x 986, 988 (9th Cir. 2016), a pretrial status conference, *United States v. Benford*, 574 F.3d 1228 (9th Cir. 2009), taking handwriting exemplars from the defendant, *Gilbert v. California*, 388 U.S. 263 (1967), and post-indictment photo lineups, *United States v. Ash*, 413 U.S. 300 (1973), are not critical stages.

Although the critical stage analysis has developed through decades of case law, the same is not true of what it means for counsel to be "appointed within a reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself." *Rothgery*, 554 U.S. at 212. The state respondents are aware of only one case in the Ninth Circuit to have confronted that question.

In *Farrow I*, 637 F. App'x 986, the plaintiffs sought to bring a class-action under 42 U.S.C. § 1983 against the county public defender, alleging that the defendant deprived the plaintiffs of counsel for 5–13 days or longer after their initial appearance. The district court initially dismissed their Sixth Amendment claim because they did not allege that the delay impacted their eventual counsel's representation at subsequent critical stages. *Id.* at 988. The Ninth Circuit reversed, holding that the district court's framing improperly required the plaintiffs to allege actual prejudice and directing the court to "consider whether appointing counsel five to thirteen days and 'sometimes longer' after the right attaches complies with the 'reasonable time' requirement articulated in *Rothgery*." *Id.* at 988–89.

On remand, the district court noted that it was "not aware of any decision articulating a standard by which to examine whether a delay in appointing counsel is reasonable within the meaning of *Rothgery*" and therefore articulated its own standard. *Farrow v. Lipetzky* (*Farrow II*), 2017 WL 1540637, at *15 (N.D. Cal. April 28, 2017). It then concluded that "the

Page 12 -   STATE RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR
      PRELIMINARY INJUNCTIONS
   JA/mmv/912543969

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

reasonableness of a delay in appointing counsel after attachment depends on the totality of the circumstances, including the time needed to prepare for an upcoming critical stage—but not limited to that factor." *Id.* That "broad standard of reasonableness" could not be resolved based on the pleadings, and so the court declined to dismiss the claim. *Id.* at *16.

Ultimately, however, the district court granted the county summary judgment. *Farrow v. Contra Costa Cnty.* (*Farrow III*), 2019 WL 78839 (N.D. Cal. Jan. 2, 2019). The court initially rejected the plaintiffs' suggestion of a hard rule that counsel must always be appointed within a fixed amount of time, or even that some fixed period is presumptively reasonable or unreasonable. *Id.* at *27. The record before the court provided "no basis to determine how much time a generic, competent public defender's office (or other system for appointing counsel) would need to provide a defendant with an attorney—or in other words *how much delay is reasonable*, and thus tolerable, under the Constitution in a typical case." *Id.* (emphasis in original). In the absence of such evidence, the court could not fashion a universal rule that could apply to all defendants. *Id.*

Turning to the proposed class representatives' individual circumstances, the court found that they had not shown that their delays were unreasonable. The court first considered whether counsel had adequate time to prepare for the next critical stage—the defendants' second appearance—and found that appointment a day or two before that appearance was sufficient. *Id.* at *30–31. Next, the court considered and rejected other factors relevant to each plaintiff. One had a four-day delay caused by conflicts in a case with five co-defendants, which the court found to be reasonable. *Id.* at *31. The other did not receive counsel from the conflicts panel for 12 days, and there was no explanation for that delay. *Id.* at *32. But the public defense office in the meantime sent a paralegal to meet with the plaintiff and, if that paralegal had identified any issue requiring immediate action, the office would have taken steps to address those needs. *Id.* On appeal for a second time, the Ninth Circuit affirmed. *Farrow v. Contra Costa Cnty.* (*Farrow IV*), 799 F. App'x 520 (2020), *cert. denied*, 141 S. Ct. 1372 (2021).

Page 13 -   STATE RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR
        PRELIMINARY INJUNCTIONS
       JA/mmv/912543969

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

In sum, the Sixth Amendment right to counsel is measured by reference to critical stages of the prosecution, and whether the right has been violated depends on an individualized assessment based on the totality of the circumstances, including but not limited to when the next critical stage will occur.

> **b.** **Petitioners have not shown that the proposed restrictive conditions subclass members have appeared at a critical stage without counsel or that the delays in appointing counsel are unreasonable.**

Under the rubric described above, petitioners have not shown that they, much less every member of the proposed restrictive conditions subclass, have suffered a violation of their Sixth Amendment Rights.[8] Such a violation could occur only if either those defendants appeared unrepresented at a "critical stage" of the criminal proceeding, or if the delays in appointing them counsel are unreasonable considering the totality of the circumstances. Neither is the case.

To the extent the arraignment procedure in Oregon could constitute a critical stage,[9] an attorney is always present to advise the defendants, even if that attorney will not ultimately represent the defendant at trial. (*See* ECF No. 19 at 5.) If counsel cannot be appointed at that time, the next appearance is a case management conference or status hearing at which either counsel is appointed or a further status hearing is set. Such a hearing does not involve the trial-like confrontation that renders a proceeding a critical stage. *See, e.g.*, *Benford*, 574 F.3d 1228. The record shows that petitioners are not forced to attend hearings with such trial-like confrontation until well after counsel is appointed, and petitioners offer nothing to suggest that the proposed class members are treated any differently.

---

[8] Even assuming that one or more individuals have suffered a constitutional violation, a habeas court may not grant relief to people who have not merely because their circumstances are superficially similar. In other words, to be entitled to the class relief requested, petitioners must show that *every class member* is in custody in violation of federal law. *See* 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless," as relevant here, he "is in custody in violation of the Constitution or laws or treaties of the United States[.]").

[9] Unlike in *Hamilton*, no defenses are waived if not raised at arraignment in Oregon. *See* ORS 135.020. Oregon's arraignment process is therefore more like the initial appearance in *Farrow I*, which the Ninth Circuit held is not a critical stage. 637 F. App'x at 988.

Page 14 - STATE RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR
    PRELIMINARY INJUNCTIONS
        JA/mmv/912543969

Petitioners also do not offer the kind of evidence necessary to determine whether, in the totality of the circumstances, the delays in appointing petitioners or the proposed class members counsel are unreasonable. What constitutes a reasonable time in this context necessarily depends on the facts of the case. It would depend on when the first "critical stage" of the proceeding is scheduled to occur and how much time is needed to adequately prepare for it. Whether a defendant is in custody or released on his own recognizance could be a significant consideration. In addition, the complexity of cases—the seriousness of the criminal charges involved, the kinds of relevant evidence available, the extent to which scientific or other expert evidence is at issue, the kinds of defenses that might apply, the extent to which pre-trial motions need to be considered—varies widely. The same period of delay may be insignificant in one case yet prejudicial in another. Similarly, a delay that would be unreasonable for an *initial* appointment in a case may be reasonable for appointing substitute counsel at a later stage in the proceeding, again depending on various factors, including the complexity of the case, the nature and amount of work that the original attorney had done, and the reason why the original attorney could no longer represent the defendant and substitute counsel was required.

To the extent the trial court records describe some of the relevant circumstances about the named petitioners, it is still not possible to determine the reasonableness of the delay without reference to a critical stage, which the courts are not setting until counsel is appointed. The Sixth Amendment requires the appointment of counsel "only as necessary to guarantee the defendant effective assistance at trial," and defendants therefore "will not necessarily be entitled to the assistance of counsel within some specified period" after initial appearance. *Rothgery*, 554 U.S. at 217–18 (Alito, J., concurring). The courts "need only appoint counsel as far in advance of trial, and as far in advance of any pretrial "critical stage," as necessary to guarantee effective assistance at trial." *Id.* at 218. Petitioners offer no basis to conclude that the courts have failed to do so in their individual cases, much less in each of the proposed subclass's cases.

Page 15 -   STATE RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR
       PRELIMINARY INJUNCTIONS
   JA/mmv/912543969

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

### c. Petitioners likewise have not shown that their constitutional rights have been violated in any other respects.

Petitioners raise three additional claims independent of the Sixth Amendment right to counsel. They allege in their Second Claim that the Due Process Clause and the Eighth Amendment prohibit pretrial detention unless the court conducts an adversarial hearing at which counsel is provided to indigent defendants. (ECF No. 34-1 at 27–28.) They further allege in their Third Claim that conducting *any* proceedings in the absence of counsel or a voluntary waiver violates due process. (*Id.* at 28.) They finally allege in their Fourth Claim that the delay in appointing them counsel violates equal protection based on indigency. (*Id.*) Because "[d]ue process and equal protection principles converge," however, in the Court's analysis of the treatment of indigent defendants in the criminal justice system, *Bearden v. Georgia*, 461 U.S. 660, 664–65 (1983), that claim effectively merges with the Second Claim.

State respondents are not aware of any case holding that due process requires that counsel be appointed at a detention hearing or any other pretrial proceeding that is not a "critical stage." The only case petitioners cite for either proposition—*United States v. Salerno*, 481 U.S. 739 (1987)—did not consider those issues.

The *Salerno* Court considered a facial challenge to the Bail Reform Act of 1984, specifically a provision allowing the court to detain a defendant pending trial if the Government showed by clear and convincing evidence that no release conditions would reasonably assure the safety of the community. *Salerno*, 481 U.S. at 741. The Court upheld that provision against three separate attacks—one based on "substantive" due process, another on "procedural" due process, and the last on the Eighth Amendment's Excessive Bail Clause. Throughout its discussion, the Court mentioned the provision of counsel only once, in connection with the procedural due process argument:

> Under the Bail Reform Act, the procedures by which a judicial officer evaluates the likelihood of future dangerousness are specifically designed to further the accuracy of that determination. Detainees have a right to counsel at the detention hearing. 18 U.S.C. § 3142(f). They may testify in their own behalf, present information by proffer or otherwise, and cross-examine witnesses who

Page 16 - STATE RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR PRELIMINARY INJUNCTIONS

JA/mmv/912543969

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

appear at the hearing. *Ibid.* The judicial officer charged with the responsibility of determining the appropriateness of detention is guided by statutorily enumerated factors, which include the nature and the circumstances of the charges, the weight of the evidence, the history and characteristics of the putative offender, and the danger to the community. § 3142(g). The Government must prove its case by clear and convincing evidence. § 3142(f). Finally, the judicial officer must include written findings of fact and a written statement of reasons for a decision to detain. § 3142(i). The Act's review provisions, § 3145(c), provide for immediate appellate review of the detention decision.

*Salerno*, 481 U.S. at 751–52. The Court held that those "extensive safeguards" were sufficient "to repel a facial challenge," but it did not state or even suggest that due process would be violated if any one of the safeguards were omitted. *See id.* at 752.

In any event, none of the members of the proposed restrictive conditions subclass is in physical custody, and it is therefore unclear what relevance the Eighth Amendment or any other limits on detention hearings could have to their individual cases.

### 4. The balance of the equities and public interest do not support the injunctive relief petitioners seek.

A court considering a request for preliminary injunction "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," and "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (internal quotation marks omitted). Notwithstanding petitioners' significant interest in receiving effective assistance of counsel in their pending criminal proceedings, those factors balance against granting the relief they seek.

Petitioners ask this Court to remove all conditions of release and dismiss pending charges for any unrepresented defendant on conditional release for more than 10 days and then, after 30 days, for more than 48 hours. There are currently more than 2,500 unrepresented defendants out of physical custody, and it is unlikely that the courts will be able to locate counsel to represent the vast majority of them within 10 days, much less within 48 hours. In other words, the practical effect of the relief petitioners seek will be the unconditional release of most of those defendants and the dismissal of their charges.

Page 17 -   STATE RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR
                PRELIMINARY INJUNCTIONS
           JA/mmv/912543969

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

Such relief would significantly impair the State's legitimate interest in prosecuting crimes committed within its jurisdiction. Beyond the immediate effect on existing cases, prosecutors throughout the state would hesitate to bring charges that they might otherwise, because they would expect those charges to be dismissed just 10 days, or even 48 hours, later. What cases move forward would be determined by the happenstance of an attorney being available within a narrow window rather than by the proper exercise of prosecutorial discretion.

The relief would also impair the State's ability to protect victims and witnesses, whether through no-contact orders, GPS monitoring, or other means. The risk to the public is particularly grave in cases involving domestic violence:

> Intimate partner abuse rarely consists only of a single, isolated event; instead, the abusive partner more commonly engages in an ongoing process of violence and control. In fact, multiple studies have now shown that past domestic violence is the best predictor of future abuse. In comparison with victims of stranger violence, domestic violence survivors are more likely to be reassaulted, experience more severe levels of violence, and sustain worse injuries, such as knife wounds and internal injuries. As violence escalates, the likelihood that the perpetrator will use a weapon against the survivor also increases, which dramatically increases the risk of lethality. The dynamics of power and control, and the repetitive, escalating nature of domestic violence distinguish intimate partner abuse from single-incident stranger violence . . . .

Jane K. Stoever, *Enjoining Abuse: The Case for Indefinite Domestic Violence Protection Orders*, 67 Vanderbilt L. Rev. 1015, 1024 (2014), *available at* http://ssrn.com/abstract=2362456 (footnotes and citations omitted).

Petitioners of course also have a compelling interest in their liberty, but the strength of that interest varies proportionally with how significant the infringement of their liberty is. Some members of the proposed subclass have no conditions other than the minimal conditions required by ORS 135.250. Others are prohibited from going near certain locations or people (*see, e.g.*, Resp. Ex. 103 at 47) or are on house arrest (*see, e.g.*, Resp. Ex. 110 at 7) or GPS monitoring (*see, e.g.*, Resp. Ex. 111 at 19). The infringement on liberty thus ranges from *de minimis* to more significant liberty restrictions. Considering the class as a whole, the liberty interests are too disparate to justify categorical, class-wide relief.

Page 18 -   STATE RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR
              PRELIMINARY INJUNCTIONS
         JA/mmv/912543969

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

Notably, the relief petitioners request would also hamper the proposed subclass's interests in receiving the advice of counsel and resolving their criminal charges. If their charges were dismissed, the proposed class members would no longer be on the unrepresented persons list, and efforts to obtain counsel for them would cease. But the threat of prosecution would remain until the statute of limitations expires. That is, they would remain in largely the same position they are in now, except that they would be at the bottom of the list if they are recharged.

Given the wide range of conditions they face and the competing interests even the proposed class members have, petitioners have not shown that the proposed subclass's interests outweigh the State's and public's interests in prosecuting crimes and protecting victims and witnesses from harassment or further victimization.

## IV. CONCLUSION

For those reasons, this Court should deny petitioners' Motion for Preliminary Injunctions.

DATED September  26 , 2023.

    Respectfully submitted,

    ELLEN F. ROSENBLUM
    Attorney General


    *s/ James M. Aaron*
    JAMES M. AARON #132865
    Assistant Attorney General
    Trial Attorney
    Tel (503) 947-4700
    Fax (503) 947-4794
    James.Aaron@doj.state.or.us
    Of Attorneys for Respondents Washington County Circuit Court Judges and State of Oregon

Page 19 -   STATE RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR PRELIMINARY INJUNCTIONS
JA/mmv/912543969

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794