**Fidel Cassino-DuCloux**
   Federal Public Defender
**Stephen R. Sady**
   Chief Deputy Federal Public Defender
**Julie Vandiver, Jessica Snyder,**
**Robert Hamilton, Michael Benson,**
**Peyton E. Lee, and Megha Desai**
   Assistant Federal Public Defenders
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123
Fax: (503) 326-5524

**David F. Sugerman**, OSB 862984
**Nadia H. Dahab**, OSB 125630
Sugerman Dahab
707 SW Washington St., Ste. 600
Portland, OR 97205
Tel: (503) 228-6474
Fax: (503) 228-2556

**Attorneys for Petitioners**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **WALTER BETSCHART, JOSHUA SHANE BARTLETT, CALEB AIONA, TYRIK DAWKINS, JOSHUA JAMES-RICHARDS, TANIELA KINI KIN LATU, RICHARD OWENS, LEON MICHAEL POLASKI, ALEX SARAT XOTOY, TIMOTHY WILSON, JEFFERY DAVIS,[1] RICHARD AARON CARROLL, SR., JENNIFER LYN BRUNETTE, NICHOLAS WALDBILLIG, DEREK PIMENO ZAVALA, CURTIS RAY ANTHONY REMINGTON, CRISTA JEAN DAVIS, NICHOLE LYNN WHALEN, and JACOB ISAAC NATHANIEL COLE, on their behalf, and on behalf of all others similarly situated,** | Case No. 23-cv-01097-CL <br><br> **REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| <div align="center">**Petitioners,**</div> | |
| <div align="center">**v.**</div> | |
| **PATRICK GARRETT, WASHINGTON COUNTY SHERIFF, in his official capacity, WASHINGTON COUNTY CIRCUIT COURT JUDGES, in their official capacities, and THE STATE OF OREGON,** <div align="right">**Respondents.**</div> | |

---

[1] Mr. Jeffery Davis's first name was misspelled in earlier pleadings.

# TABLE OF CONTENTS

**Page**

Table Of Authorities ........................................................................................... ii

Introduction ...................................................................................................... 1

    A.    Under The Appropriate Standard, The Court Should Grant The Preliminary Injunctions .................................................................................. 2

    B.    Both Classes Suffer Constitutional Violations Conferring On This Court Jurisdiction To Intervene To Prevent Irreparable Harm. ........................ 4

    C.    The Constitution Guarantees Counsel In The Early Stages Of And Throughout The Prosecution .................................................................. 6

        1.    The Constitution Guarantees Counsel At Every Step Of A Criminal Prosecution ................................................................. 7

        2.    Oregon's Statutes Create Procedural Steps Requiring Early And Continuous Access To Counsel. ............................................ 8

        3.    The Federal System Protects Constitutional Rights By Providing Early and Continuous Access to Counsel. .......................... 13

    D.    The Court Should Convert The Temporary Restraining Order Into A Preliminary Injunction With The Time To Provide Counsel Reduced To 48 Hours ........................................................................................... 15

    E.    The Court Should Issue A Preliminary Injunction To Prevent Irreparable Harm To The Restrictive-Conditions Class ......................................... 18

        1.    The Restrictive-Conditions Class Suffers The Same Sixth Amendment Violations As The In-Jail Class, And, For The Same Reasons, *Younger* Abstention Does Not Apply. ....................... 19

        2.    The Court Should Apply The Correct Test, And, Even Under A Balance Of The Equities, Injunctive Relief Is Appropriate. ..................... 22

Conclusion ...................................................................................................... 24

# TABLE OF AUTHORITIES

## SUPREME COURT OPINIONS

*Alabama v. Bozeman,*
   533 U.S. 146 (2001) ................................................................ 9

*Albright v. Oliver,*
   510 U.S. 266 (1994) .............................................................. 18

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................ 5

*Coleman v. Alabama,*
   399 U.S. 1 (1970) ......................................................... 10, 17

*Gerstein v. Pugh,*
   420 U.S. 103 (1975) .............................................................. 11

*Gideon v. Wainwright,*
   372 U.S. 335 (1963) ................................................... 7, 14, 20

*Glover v. United States,*
   531 U.S. 198 (2001) .............................................................. 15

*Hensley v. Municipal Court, San Jose-Mlipitas Judicial Dist.,*
   411 U.S. 345 (1973) .............................................................. 19

*Hewitt v. Helms*
   459 U.S. 460 (1983) .............................................................. 11

*Justices of Boston Municipal Court v. Lydon,*
   466 U.S. 294 (1984) .............................................................. 18

*Kirby v. Illinois,*
   406 U.S. 682 (1972) ................................................................ 8

*Lafler v. Cooper,*
   566 U.S. 156 (2012) ......................................................... 7, 15

*Maine v. Moulton,*
   474 U.S. 159 (1985) ................................................................ 7

*Mathews v. Eldridge,*
   424 U.S. 319 (1976) ......................................................... 9, 11

*Meachum v. Fano,*
   427 U.S. 215 (1976) .............................................................. 11

*Mempa v. Rhay*,
389 U.S. 128 (1967) ............................................................. 8

*Padilla v. Kentucky*,
559 U.S. 356 (2010) ............................................................. 7

*Penson v. Ohio*,
488 U.S. 75 (1988) ............................................................. 17

*Powell v. Alabama*,
287 U.S. 45 (1932) ............................................................. 7, 8

*Quackenbush v. Allstate Ins. Co.*,
517 U.S. 706 (1996) ............................................................. 19

*Rothgery v. Gillespie County*,
554 U.S. 191 (2008) ............................................................. 5, 6, 8, 16

*Stack v. Boyle*,
342 U.S. 1 (1951) ............................................................. 11

*Steffel v. Thompson*,
415 U.S. 452 (1974) ............................................................. 20

*Strickland v. Washington*,
466 U.S. 668 (1984) ............................................................. 7

*United States v. Cronic*,
466 U.S. 648 (1984) ............................................................. 7, 19

*United States v. Henry*,
447 U.S. 264 (1980) ............................................................. 7

*United States v. Salerno*,
481 U.S. 739 (1987) ............................................................. 10, 11, 17

*Wardius v. Oregon*,
412 U.S. 470 (1973) ............................................................. 17

*Wiggins v. Smith*,
539 U.S. 510 (2003) ............................................................. 7

*Younger v. Harris*,
401 U.S. 37 (1971) ............................................................. 1, 19, 20, 21

## FEDERAL COURT OPINIONS

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ............................................................. 2

*Arevalo v. Hennessy*,
   882 F.3d 763 (9th Cir. 2018) ......................................................... 21

*Baird v. Bonta*,
   No. 23-15016, 2023 WL 5763345 (9th Cir. Sept. 7, 2023) ........................................... 2, 3, 22

*Barahona-Gomez v. Reno*,
   167 F.3d 1228 (9th Cir. 1999) ......................................................... 3

*Brown v. Ahern*,
   676 F.3d 899 (9th Cir. 2012) ......................................................... 20

*Cavallaro v. Wyrick*,
   701 F.2d 1273 (8th Cir. 1983) ......................................................... 20

*Duke v. Gastelo*,
   64 F.4th 1088 (9th Cir. 2023) ......................................................... 19, 20

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) ......................................................... 2

*Hart v. Massanari*,
   266 F.3d 1155 (9th Cir. 2001) ......................................................... 2

*Hernandez v. Sessions*,
   872 F.3d 976 (9th Cir. 2017) ......................................................... 4, 5, 17

*Higazy v. Templeton*,
   505 F.3d 161 (9th Cir. 2007) ......................................................... 10

*Hovey v. Ayers*,
   458 F.3d 892–02 (9th Cir. 2006) ......................................................... 10

*Innovation Law Lab v. Nielsen*,
   342 F. Supp. 3d 1067 (D. Or. 2018) ......................................................... 3

*Jorgensen v. Cassiday*,
   320 F.3d 906 (9th Cir. 2003) ......................................................... 3

*Lopez-Valenzuela v. Arpaio*,
   770 F.3d 772 (9th Cir. 2014) (en banc) ......................................................... 11

*Oregon Advocacy Ctr. v. Mink*,
   322 F.3d 1101 (9th Cir. 2003) ......................................................... 16

*Oviatt v. Pearce*,
   954 F.2d 1470 (9th Cir. 1992) ......................................................... 9, 11

*Page v. King*,
   932 F.3d 898 (9th Cir. 2019) ......................................................... 19, 21

*S. Wind Women's Ctr. LLC v. Stitt*,
    808 Fed Appx. 677, 2020 WL 1860683 (10th Cir. 2020) ........................ 3

*Sanders v. Ratelle*,
    21 F.3d 1446 (9th Cir. 1994) ........................ 7

*Suzie's Brewery Co. v. Anheuser-Busch Cos., LLC*,
    519 F. Supp. 3d 839 (D. Or. 2021) ........................ 4

*United States v. Danielson*,
    325 F.3d 1054 (9th Cir. 2003) ........................ 8

*United States v. Donnelly*,
    41 F.4th 1102 (9th Cir. 2022) ........................ 15

*United States v. Kowalczyk*,
    805 F.3d 847 (9th Cir. 2015) ........................ 9

*United States v. Leonti*,
    326 F.3d 1111 (9th Cir. 2003) ........................ 7

*Wilbur v. City of Mount Vernon*,
    989 F. Supp. 2d. 1122 (W.D. Wash. 2013) ........................ 19

## UNITED STATES CODE

18 U.S.C. § 3006A ........................ 14

28 U.S.C. § 2241 ........................ 18, 20

28 U.S.C. § 2254 ........................ 1

## STATE CASES

*Gonzalez v. Comm'r of Corr.*,
    308 Conn. 463, 68 A.3d 624 (2013) ........................ 10

*Hurrell-Harring v. State of New York*,
    930 N.E.2d 217 (N.Y. 2010) ........................ 10

*Lavallee v. Justices in the Hampden Superior Court*,
    812 N.E.2d 895 (Mass. 2004) ........................ 21

*Sixth Amendment." Kuren v. Luzerne County*,
    637 Pa. 33, 146 A.3d 715 (2016) ........................ 5, 6

*State v. Fann*,
    571 A.2d 1023 (N.J. Super. Ct. Law Div. 1990) ........................ 10, 17

*State v. Gray,*
    370 Or. 116, 124, 515 P.3d 348, 353 (2022) ................................................ 12, 14

## STATE STATUTES

Or. Rev. Stat. 135.045 ................................................................................................ 9

Or. Rev. Stat. 135.250 ................................................................................................ 6

Or. Rev. Stat. § 132.320 ............................................................................................ 12

Or. Rev. Stat. § 135.010 .............................................................................................. 9

Or. Rev. Stat. § 135.040 .............................................................................................. 9

Or. Rev. Stat. § 135.045(1)(a) .................................................................................... 9

Or. Rev. Stat. § 135.050 ........................................................................................ 9, 11

Or. Rev. Stat. § 136.290 .............................................................................................. 9

Or. Rev. Stat. 163.760 to 163.77 .............................................................................. 23

## RULES

Fed. R. Civ. P. 6(a)(2) .............................................................................................. 16

Federal Rule of Civil Procedure 65(c) ....................................................................... 3

**Introduction**

Reading the respondents' opposition to the preliminary injunction motion is like déjà vu all over again: substantial portions are adapted, or cut-and-pasted, from the State's motion to reconsider (ECF 38), and the respondents' responses to the second amended petition (ECF 51 and 52), to which the petitioners have already answered (ECF 71, 72). To minimize repetition, this reply begins with a guide to where those sections have previously been addressed:

- The petitioners do not agree with the respondents' characterization of the origins, scope, and purpose of this litigation (*compare* ECF 63 at 2 *with* ECF 71 at 1).

- *Younger v. Harris*, 401 U.S. 37 (1971) abstention does not apply to pretrial denial of the right to counsel (*compare* ECF 63 at 7-9 *with* ECF 71 at 4-9 *and* ECF 72 at 20-23).

- The petitioners challenge the lawfulness of their custody, and the case the respondents rely on involves 28 U.S.C. § 2254 and is distinguishable (*compare* ECF at 9-10 *with* ECF 72 at 19-20).

- The Court can enforce the pretrial right to counsel without determining whether each petitioner or class member has been without counsel at a "critical stage" or has suffered prejudice (*compare* ECF 63 at 10-15 *with* ECF 71 at 13-18 *and* ECF 72 at 14-19).

- In addition to violating the Sixth Amendment, lack of counsel after adversary proceedings commenced implicates procedural and substantive due process, the Eighth Amendment, and the Equal Protection Clause (*compare* ECF at 16-17 *with* ECF 71 at 18-22).

In this context, the petitioners respond to the remaining issues in the opposition to the preliminary injunction in four general areas.

First, the Court should reject the respondents' use of the incorrect standard for issuance of preliminary injunctions and mischaracterization of the procedural posture of this case. Second, the Court should recognize the essential role of counsel in the earliest stages of a criminal case. Third, the Court should reduce the time to obtain counsel for the in-jail class to 48 hours. Finally, the

Court should enter a preliminary injunction to prevent irreparable harm to the restrictive-conditions class.

## A. Under The Appropriate Standard, The Court Should Grant The Preliminary Injunctions.

For both the in-jail and restrictive-conditions classes, the preliminary injunction standard depends on the federal constitutional interests at stake: the petitioners seek a preliminary injunction prohibiting constitutional violations, so the likelihood of success is a threshold inquiry and the most important factor because preventing violation of a party's constitutional rights establishes both irreparable harm and tips the public interest sharply in the petitioners' favor. ECF 37 at 2-3; *Baird v. Bonta*, No. 23-15016, 2023 WL 5763345, at *3 (9th Cir. Sept. 7, 2023). Ignoring cases involving constitutional violations and citing only to non-constitutional cases, the respondents ask the Court to follow a "sliding scale" test. ECF 63 at 3 (citing *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (involving a copyright claim for a five-second acting performance), and *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1136 (9th Cir. 2011) (involving Forest Service compliance with the Appeals Reform Act and its implementing regulations)).

The Court should follow the controlling precedent for constitutional violations, and, under any standard, the Court should grant the motion for a preliminary injunction.

- First, as this Court has held, this case involves the Sixth Amendment and related constitutional rights, so *Baird* and the many Ninth Circuit cases cited in that case constitute controlling precedent. *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court.").

- Second, as the petitioners have consistently asserted, they prevail under the "sliding scale" test as well because they raise "serious questions" and the "balance of hardships tips sharply" in their favor. *Alliance for the Wild Rockies*, 632 F.3d at 1134-35; *see* ECF 37 at 3 n.1.

In making its determination regarding the preliminary injunction for both classes, the Court should apply the *Baird* standard that recognizes that, where the petitioners have established a substantial likelihood of success on the constitutional merits, issuance of the preliminary injunction is appropriate. Under any standard, the Court should grant the preliminary injunction.[2]

The respondents attempt to avoid the preliminary injunction standard by recharacterizing the temporary restraining order (TRO) as a preliminary injunction and the motion for preliminary injunction as a motion to reconsider. ECF 63 at 4. Both recharacterizations are wrong. As explained in the response in opposition to the State's motion to reconsider, the TRO is in fact a TRO because it will expire when the Court addresses the preliminary injunction. ECF 72 at 3 (the deadlines on the court calendar reflect the court's intention to promptly rule on the motion for preliminary injunction) (citing *S. Wind Women's Ctr. LLC v. Stitt*, 808 Fed Appx. 677, 2020 WL 1860683 (10th Cir. 2020).

Similarly, the petitioners do not ask the Court to reconsider the TRO, they ask for a preliminary injunction incorporating terms of the TRO and modifying its time limit. In setting the TRO, the Court expressed openness to doing just that. TRO Tr. at 62 ("So I realize this isn't a perfect solution; it's an emergency solution. It's trying to get at the practicalities of what the judges

---

[2] The Sheriff suggests Federal Rule of Civil Procedure 65(c) requires payment of security for damages to a party wrongfully enjoined or restrained. ECF 65 at 2. However, "Rule 65(c) invests the district court 'with discretion as to the amount of security required, *if any*.'" *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (emphasis added) (quoting *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)). The Sheriff does not offer any figure or explanation of damages from the requested preliminary injunction. Because the petitioners and class members are indigent and merely seek to enforce their constitutional rights, the Court should decline to require security. *See* ECF 25 at 12-13 ("it is not apparent to the Court that conditionally releasing unrepresented defendants into the community will increase administrative costs."); *Innovation Law Lab v. Nielsen*, 342 F. Supp. 3d 1067, 1082 (D. Or. 2018) ("The Court has considered the relative hardships and the likelihood of success on the merits and concludes that to require any security in this case would be unjust.").

are facing, what the sheriff needs to do. And we're certainly—I'm not convinced ten days is the final answer."). The motion for a preliminary injunction appropriately requests more durable protection for the rights of the in-jail class before the case reaches final resolution. *See Suzie's Brewery Co. v. Anheuser-Busch Cos., LLC*, 519 F. Supp. 3d 839, 845 n. 2 (D. Or. 2021) ("A preliminary injunction, however, may last for months, if not years, while the lawsuit progresses towards its conclusion.").

## B. Both Classes Suffer Constitutional Violations Conferring On This Court Jurisdiction To Intervene To Prevent Irreparable Harm.

The respondents argue that, for the Court to have jurisdiction over their habeas claims, the petitioners must show that if they had counsel they would not be in custody. ECF 63 at 9-10.[3] In the pretrial context, the habeas corpus statute does not require petitioners to show the alleged constitutional violation is the but-for cause of their confinement. In *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017), the Ninth Circuit held that the petitioners in immigration custody adequately alleged a deprivation of due process from the government's failure to consider their financial circumstances when setting bond amounts. The Court did not find that every person would be able to make bond if those financial circumstances were considered. *Id.* at 992 ("By maintaining a process for establishing the amount of a bond that likewise fails to consider the individual's financial ability to obtain a bond in the amount assessed or to consider alternative conditions of release, the government *risks* detention that accomplishes 'little more than punishing a person for his poverty.'") (emphasis added). Every petitioner is at risk of injury from the failure to have an attorney at every stage of the prosecution, as anticipated by Supreme Court authority as

---

[3] The petitioners have already explained why the sole case upon which the respondents rely, which deals with a postconviction challenge to a restitution order under the Antiterrorism and Effective Death Penalty Act, is inapplicable here. ECF 71 at 9.

well as state statutes. *See Rothgery v. Gillespie County*, 554 U.S. 191, 194 (2008) ("This Court has held that the right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty.").

The very idea of a preliminary injunction is that the Court has the authority to step in to prevent irreparable injury—the petitioners do not need to demonstrate they have already been injured to justify the preliminary injunction (although many have). Habeas jurisdiction is proper when a legal and constitutional claim is "'colorable,' i.e., the claim must have some possible validity." *Hernandez*, 872 F.3d at 988 (internal quotations and citation omitted); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint sufficient if facts alleged establish a "plausible" claim for relief). The Court has already found that the petitioners will likely succeed on their Sixth and Fourteenth Amendment claims—they are at least colorable or plausible. ECF 25 at 12.

The petitioners have pointed to strong precedent supporting relief from prospective violations of the right to counsel. ECF 71 at 13-18; ECF 72 at 14-16. It is worth emphasizing that the United States Department of Justice "maintains that a civil claim for constructive denial of counsel is cognizable under the Sixth Amendment." *Kuren v. Luzerne County*, 637 Pa. 33, 59, 146 A.3d 715, 730 (2016). "The Department asserts that a claim for constructive denial of counsel is 'both legitimate and rooted in U.S. Supreme Court case law.'" *Id*. (quoting DOJ amicus brief). The factors the DOJ found to warrant prospective relief are present to a greater extent here, where the petitioners suffer absence of counsel. The DOJ listed significantly compromised and absent representation, along with structural limitations, as grounds for prospective relief:

> (1) when, on a system-wide basis, the traditional markers of representation—such as timely and confidential consultation with clients, appropriate investigation, and meaningful adversarial testing of the prosecution's case—are absent or significantly compromised; and (2) when substantial structural limitations—such

as a severe lack of resources, unreasonably high workloads, or critical understaffing of public defender offices—cause that absence or limitation on representation.

*Id*. at 730-31. "In the Department's view, when the totality of the circumstances indicates a 'system-wide problem of nonrepresentation,' *i.e.*, the appointment of counsel is merely cosmetic and the defendant has a lawyer in name only, prospective relief must be available." *Id*. at 731. The weight of precedent as well as the DOJ's assessment fully supports this Court's authority to intercede to prevent ongoing violations of federal constitutional rights.[4]

Further, contrary to the respondents' claim, the injuries the petitioners face are not neutralized by a statute that details when some defendants must be detained and under what conditions other may be released. ECF 63 at 10 (citing Or. Rev. Stat. 135.250). The respondents' argument is unconvincing because this same statue, when read in conjunction with the statutes on appointment of counsel, anticipates advocacy by defense counsel for the least restrictive conditions. The statute does not ameliorate injury for either class: every defendant should have counsel making initial decisions and providing advice not only about defense of the case but specifically about how to achieve the least restrictive conditions or, as in *Rothgery*, achieving dismissal of the charges.

## C. The Constitution Guarantees Counsel In The Early Stages Of And Throughout The Prosecution.

The Supreme Court provided a crystal-clear example of the difference an attorney can make from the outset of a case in *Rothgery*. The Court explained that, six months after his first appearance and three weeks after he was put in jail due to inability to pay increased bail, Mr. Rothgery was finally assigned a lawyer who promptly obtained a bail reduction winning

---

[4] The petitioners previously explained why the *Farrow* cases cited by the respondents, which do not involve indefinite non-representation of counsel, are unpersuasive here. ECF 71 at 22-24; 72 at 25-27.

Rothgery's release from jail. 554 U.S. at 196-97. Shortly thereafter, the attorney assembled the paperwork showing Rothgery's innocence of the charge, resulting in dismissal of the indictment. *Id.* Every criminal defendant, whether in or out of jail, is constitutionally-guaranteed the assistance of counsel in his or her defense. This right attaches at the first appearance and is continuous. A criminal defendant, regardless of wealth, is entitled to "'the guiding hand of counsel at every step in the proceedings against him'" *Gideon v. Wainwright*, 372 U.S. 335, 345 (1963) (quoting *Powell v. Alabama*, 287 U.S. 45, 69 (1932)). The Court can easily reject the respondents' stingy view that counsel is necessary only to prepare for and appear at critical stages. For the following three reasons, the Court should find that the Constitution guarantees continuous access to counsel after the right attaches.

### 1. The Constitution Guarantees Counsel At Every Step Of A Criminal Prosecution.

The respondents' critical stage analytical framework is based on a backward-looking review of a conviction. *See United States v. Cronic*, 466 U.S. 648, 658-59 (1984); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). But *Gideon*, *Powell*, and their progeny hold that counsel must be provided continuously through all stages of the proceedings. We know that counsel is not only required for critical stages because courts have recognized essential defense functions that are not anchored to specific court events, such as:

- The plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010).

- Contact from law enforcement. *Maine v. Moulton*, 474 U.S. 159, 170 (1985); *United States v. Henry*, 447 U.S. 264, 266 (1980).

- Cooperation with the prosecution. *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003).

- Conducting reasonable investigations. *Wiggins v. Smith*, 539 U.S. 510, 522 (2003); *Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir. 1994).

- Defense counsel as a "medium" between defendant and the government. *United States v. Danielson*, 325 F.3d 1054, 1066 (9th Cir. 2003).

The Court should reject the respondents' temporizing about the attachment and scope of the Sixth Amendment right to counsel as supported by the guarantees of procedural due process and the other constitutional rights asserted by the petitioners. The State suggests that counsel may not be required for the arraignment or other pretrial proceedings. ECF 63 at 13 ("To the extent the arraignment procedure in Oregon could constitute a critical stage…"); at 15 (no right to counsel unless the court sets a "critical stage" hearing). On the contrary, the right to counsel attaches, at latest, at arraignment and continues from that point on: "[A]ppointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." *Mempa v. Rhay*, 389 U.S. 128, 134 (1967). From the arraignment at the latest, "the government has committed itself to prosecute," "the adverse positions of government and defendant have solidified," and the accused "finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." *Rothgery*, 554 U.S. at 198 (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)).

### 2. Oregon's Statutes Create Procedural Steps Requiring Early And Continuous Access To Counsel.

Oregon statutes create a constellation of procedural steps requiring the "guiding hand of counsel." *Powell*, 287 U.S. at 69 From the outset of the case, Oregon defendants are faced with decisions regarding entry of a plea, negotiation or cooperation with the prosecution, speedy trial rights, mental competency to proceed, adequacy of the charges or underlying innocence, and conditions of release or detention. Oregon has codified the constitutional right by requiring counsel at arraignment and throughout the prosecution:

- "If the defendant appears for arraignment without counsel, the defendant shall be informed by the court that it is the right of the defendant to have counsel before

being arraigned and shall be asked if the defendant desires the aid of counsel." Or. Rev. Stat. § 135.040.[5]

- "If the defendant in a criminal action appears without counsel at arraignment or thereafter, the court shall determine whether the defendant wishes to be represented by counsel" Or. Rev. Stat. § 135.045(1)(a).

- "If the defendant does wish to be represented by counsel, the court, in accordance with ORS 135.050, shall appoint counsel to represent the defendant." Or. Rev. Stat. 135.045(1)(b).

- "Suitable counsel shall be appointed" for a defendant "who is before a court" "charged with a crime." Or. Rev. Stat. § 135.050 (1) & (5)(a).

- "Unless otherwise ordered by the court, the appointment of counsel under this section shall continue during all criminal proceedings resulting from the defendant's arrest through acquittal or the imposition of punishment." Or. Rev. Stat. § 135.050(6).

Review of these statues provides a complete rebuttal to the Sheriff's argument that the petitioners challenge the constitutionality of the state's arraignment statutes. ECF 65 at 3. The arraignment statutes require what the petitioners request: appointment of counsel.

Even if the "critical stage" analysis were appropriate here, the early stages of an Oregon case, including arraignment, qualify. A stage is critical when "any one of the factors" is present: (1) "failure to pursue strategies or remedies results in a loss of significant rights," (2) "skilled

---

[5] The statutory use of "shall" means the command is mandatory, so the State is ignoring statutory as well as constitutional rights. *United States v. Kowalczyk*, 805 F.3d 847, 857 (9th Cir. 2015) ("The word 'shall' is ordinarily the language of command.") (quoting *Alabama v. Bozeman*, 533 U.S. 146, 153 (2001)). The Ninth Circuit held that two other statutes established a liberty interest by the use of "shall": Or. Rev. Stat. § 135.010 ("Except for good cause shown. . . , if the defendant is in custody, the arraignment *shall* be held during the first 36 hours of custody, excluding holidays, Saturdays and Sundays."); Or. Rev. Stat. § 136.290 ("[A] defendant shall not remain in custody pending commencement of the trial. . . more than 60 days after the time of arrest unless the trial is continued with the express consent of the defendant[,]" and, if no trial is commenced within 60 days, "the court shall release the defendant. . . ."). *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). As in the present case and in *Oviatt*, the statutory liberty interests are reinforced by the constitutional balancing test under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

counsel would be useful in helping the accused understand the legal confrontation," and (3) "the proceeding tests the merits of the accused's case." *Hovey v. Ayers*, 458 F.3d 892, 901–02 (9th Cir. 2006). Courts have recognized that "[t]here is no question that 'a bail hearing is a "critical stage of the State's criminal process."'" *Hurrell-Harring v. State of New York*, 930 N.E.2d 217, 223 (N.Y. 2010) (quoting *Higazy v. Templeton*, 505 F.3d 161, 172 (9th Cir. 2007) (citing *Coleman v. Alabama*, 399 U.S. 1, 9-10 (1970)). As in *Coleman*, where the Court noted that the preliminary hearing could "fix bail if the offense is bailable," courts have consistently held that arraignments involving release decisions implicate the Sixth Amendment. 399 U.S. at 9 ("[C]ounsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail."); *see Gonzalez v. Comm'r of Corr.*, 308 Conn. 463, 480, 68 A.3d 624, 635-36 (2013); *State v. Fann*, 571 A.2d 1023, 1026 (N.J. Super. Ct. Law Div. 1990).

> The needs for counsel regarding pretrial release are profound: The consequences of pretrial detention are grave. Defendants presumed innocent are subjected to the psychological and physical deprivations of jail life, usually under more onerous conditions than are imposed on convicted defendants. The jailed defendant loses his job if he has one and is prevented from contributing to the preparation of his defense. Equally important, the burden of his detention frequently falls heavily on the innocent members of his family. Moreover, there is strong evidence that a defendant's failure to secure pretrial release has an adverse effect on the outcome of his case. Studies in Philadelphia, the District of Columbia and New York all indicate that the conviction rate for jailed defendants materially exceeds that of bailed defendants.

*Fann*, 571 A.2d at 1026 (citation omitted). The determination of the degree of restraint on pretrial liberty, after the commencement of adversary proceedings, requires assistance of defense counsel to comply with the constitutional minimum under the Sixth Amendment.

Arraignment also implicates the Due Process Clause under *United States v. Salerno*, which only upheld the Bail Reform Act based on procedures that included representation by counsel. 481

U.S. 739, 755 (1987) (to be constitutional, pretrial detention requires procedural safeguards and an adversarial hearing). The respondents assert they "are not aware of any case holding that due process requires that counsel be appointed at a detention hearing or any other pretrial proceeding that is not a 'critical stage.'" ECF 63 at 15-16. They should look harder. "Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983) (citing *Meachum v. Fano*, 427 U.S. 215, 223-27 (1976)). Both sources provide a due process right to counsel at detention and other pretrial proceedings.

Under the basic due process test, the Ninth Circuit en banc held that substantive due process barred loss of liberty through pretrial detention through categorical pretrial detention may "imperil the suspect's job, interrupt his source of income, and impair his family relationships," affect "the defendant's ability to assist in preparation of his defense," and, without the "traditional right to freedom before conviction," does not permit "the unhampered preparation of a defense." *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 781 (9th Cir. 2014) (en banc) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975), and *Stack v. Boyle*, 342 U.S. 1, 4 (1951)). As the Supreme Court embraced the *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), test to determine due process rights under the Bail Reform Act, the Court in *Lopez-Valenzuela* held that statutory detention, in the absence of a "full-blown adversary hearing," violated the Due Process Clause. 770 F.3d at 784-85 (citing *Salerno*, 481 U.S. at 750).

Oregon state statutes also establish due process rights at the detention and other early pretrial stages. *Supra* at 10-11. The statutes are all mandatory, so the State's failure to respect the "shall" directive implicates the due process rights of the individuals referenced in the statutes. The liberty interest is created when the word "shall" is used to mandate certain procedures. *Oviatt*, 954

F.2d at 1475. The relevant statutes use the mandatory "shall" regarding appointment and continuity of counsel "during all criminal proceedings resulting from the defendant's arrest through acquittal or the imposition of punishment." Or. Rev. Stat. § 135.050(6)).

The petitioners urge the Court to shorten the unrepresented period in part due to the lost opportunity to testify before a grand jury. ECF 37 at 6. The Sheriff argues that the harm from denial of the right to testify before the grand jury is speculative and that the petitioners have failed to produce evidence or information that they are being deprived of this right. ECF 65 at 3. On the contrary, unrepresented persons are being indicted by the grand jury after arraignment. *See, e.g.*, ECF 54, Resp. Ex. 103 at 1-2 (Docket for Walter Betschart showing indictment while "represented" by "OPDS"); Resp. Ex. 110 at 1-2 (Docket for Taniela Kini Kini Latu showing indictment while "represented" by "OPDS"); Resp. Ex. 111 at 1-2 (Docket for Richard Owens, Jr. showing indictment while "represented" by "OPDS"). The right to testify before a grand jury is textually contingent on defense counsel— "A defendant who has been arraigned on an information alleging a felony charge that is the subject of a grand jury proceeding *and who is represented by an attorney* has a right to appear before the grand jury as a witness if, prior to the filing of an indictment, the defense attorney serves upon the district attorney written notice requesting the appearance." Or. Rev. Stat. § 132.320 (emphasis added). As the court in *State v. Gray*, explained, "defense counsel has a central role in the entire right" to testify before the grand jury. 370 Or. 116, 124, 515 P.3d 348, 353 (2022).

The Sheriff argues the lost opportunity to testify does not matter because defendants rarely testify in front of a grand jury. But that argument again mistakes the posture of the case. The petitioners seek to prospectively enforce their right to counsel, not undermine a conviction based on results-oriented prejudice. *See* ECF 71 at 13-18; 72 at 13-19 (explaining the difference between

a prospective Sixth Amendment claim alleging a violation of the right to counsel and a retrospective claim of ineffective assistance of counsel impacting the Sixth Amendment right to a fair trial). Every defendant under felony charges should have the option of exercising their statutory right to testify before a grand jury, rather than having it foreclosed by the bureaucratic failure to make counsel available. Class members are being deprived of their right to testify before the grand jury because they are indigent and have not been provided counsel in violation of the Sixth Amendment and the Equal Protection Clause of the Fourteenth Amendment.

> **3.** **The Federal System Protects Constitutional Rights By Providing Early and Continuous Access to Counsel.**

The respondents point to the federal system as proof that timing for appointment of counsel is not strict and some leeway is appropriate because the phrase "as soon as feasible" is included in this Court's Criminal Justice Act Plan (CJA Plan). ECF 63 at 6. The respondents fundamentally misunderstand the requirements of the Criminal Justice Act and this Court's CJA plan. By eliding the surrounding context, the respondents suggest that "as soon as feasible" means after the commencement of adversary proceedings. Not at all. With the full context provided, the Court's CJA Plan *requires* appointment from the first appearance on and authorizes appointment of counsel, in the "or" alternatives, *prior* to first appearance:

A. When Counsel Shall Be Provided

1. Counsel shall be provided to eligible persons as soon as feasible after they are taken into custody; when they appear before a judge; when they are formally charged or notified of charges if formal charges are sealed; or in other situations prior to formal charges, court appearances or filing of post-conviction or other petitions, when a judge considers appointment of counsel appropriate under the CJA and related statutes.
2. An appointment may be made retroactive to include any representation furnished prior to appointment.

District of Oregon CJA Plan at 7.[6] The CJA Plan supports the petitioners' request for modification to 48 hours for the in-jail class as well as for the relief sought by the restrictive-conditions class.

By allowing for appointment of counsel prior to first appearances, the Court furthers its policy of placing indigent defendants on a par with the wealthy, whose attorneys would immediately respond to a target letter from the prosecutor or the execution of a search warrant by beginning advocacy for their client. *Id.* at 1 ("The objective of the Criminal Justice Act Plan for the District of Oregon (CJA Plan) is to support the constitutional goal of equal justice for all by providing eligible persons with timely, high quality, and cost-effective representation in a manner that protects the independence of the defense function and safeguards and enforces the rights of individual defendants."); *see Gideon*, 372 U.S. at 344 ("That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the wide-spread belief that lawyers in criminal courts are necessities, not luxuries.").

Under the Criminal Justice Act, appointment of counsel is mandatory for persons, like our class members, who are facing criminal charges that can result in incarceration. 18 U.S.C. § 3006A(a)(1). Under the District of Oregon Plan, prior to the first appearance, the Federal Public Defender provides advice to defendants and, at the first appearance, has authorization "to initially represent all persons arrested in the District before the first appearance and at bail hearings or arraignments[.]" CJA Plan at 7-8. Where there is a conflict, the Federal Public Defender continues to represent the individual until the substitution of a CJA panel attorney.

The continuity of counsel—assuring no gaps in representation—meets the requirement of the CJA (and the Constitution) that defendants be represented throughout the prosecution of the

_____

[6] Available at
https://or.fd.org/sites/or/files/pdfs/District%20of%20Oregon%20CJA%20Plan%202018_0.pdf
(last visited October 6, 2023).

case through appeal: "A person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate judge or the court through appeal, including ancillary matters appropriate to the proceedings." 18 U.S.C. § 3006A(c). As Congress recognized, once the right to counsel attaches, the defendant requires continuous representation through finality, just as the prosecution and the wealthy have continuous representation.

As counsel is guaranteed from the start of, and continuously throughout, a criminal prosecution, the Court should enter preliminary injunctions to prevent the irreparable harm from the constitutional violations for both the in-jail class and the restrictive-conditions class.

### D.  The Court Should Convert The Temporary Restraining Order Into A Preliminary Injunction With The Time To Provide Counsel Reduced To 48 Hours.

Having already found that the in-jail class will prevail on their Sixth Amendment and Fourteenth Amendment claims, the Court should enter a preliminary injunction shortening the amount of time the State and the Sheriff may violate their constitutional rights. ECF 25 at 12. "[A]ny amount of [additional] jail time has Sixth Amendment significance." *Lafler*, 566 U.S. at 165 (quoting *Glover v. United States*, 531 U.S. 198, 203 (2001)). From the commencement of adversarial proceedings, the petitioners need the advice and advocacy of counsel to assure their rights are being protected and that they are being subjected to no greater restrictions on liberty than the law allows. Even within the proposed 48 hours, members of the petitioners' class will face violations of federal constitutional rights because of denial of counsel.

The respondents argue that some delay in the appointment of counsel is reasonable. But they fail to offer a compelling case that their "bureaucratic failure" should justify denial of constitutionally protected rights. *United States v. Donnelly*, 41 F.4th 1102, 1108-09 (9th Cir. 2022)

(Watford, J. concurring) (rejecting agency resource limits as an excuse for failing to comply with statutorily required time limits for competency evaluations); *accord Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003) (violation of liberty interest cannot be justified by "[l]ack of funds, staff or facilities"). As the foregoing discussions make clear, the Constitution demands counsel from the outset of a criminal prosecution and throughout all its stages.

The Sheriff contends that the proposed shortened timeframe would allow a person to commit mass murder on the Friday before a holiday weekend and hit the streets unencumbered by Monday. ECF 65 at 5. This argument, and Lieutenant Stimler's declaration, are perhaps based on a mistaken understanding of when the proposed 48-hour clock would begin to run. ECF 66. The right to counsel attaches at the "initial appearance before a judicial officer." *See Rothgery*, 554 U.S. at 199. The Sheriff supposes that a person who is arrested for mass murder on the Friday evening of a long holiday weekend would be ordered released under the proposed preliminary injunction. On the contrary, in this hypothetical, the person would be arraigned on the Tuesday, and the court would have 48 hours from arraignment to appoint counsel. Even if a person were arraigned on Friday, the Federal Rules of Civil Procedure, which would apply to any order of this Court, would make appointment of counsel necessary on the next day that is not a Saturday, Sunday, or legal holiday. *See* Fed. R. Civ. P. 6(a)(2).

The District Attorney offers in his declaration that requiring appointment of counsel in two days will disrupt the statutory release procedure. ECF 69-1 at ¶ 8-9. In doing so, he explains that a defendant may "have a release hearing within five days of the arraignment" and that court staff "works to advise the court" by "contacting victims and potential responsible parties, considering treatment options, researching the defendant's criminal history, contacting other jurisdictions regarding holds on the defendant, drafting recommended and particularized release conditions, and

preparing a release memorandum for the court's consideration." *Id.* at ¶ 9. Notably, the District Attorney mentions that his office "begins working to contact victims *shortly before a defendant's first appearance.*" *Id.* at ¶ 10 (emphasis added).

The early work by the prosecution and the court to investigate and determine whether a defendant should be released must be addressed equally by an advocate for the defendant. *See Penson v. Ohio*, 488 U.S. 75, 84 (1988) (Our "adversarial system of justice . . . is premised on the well-tested principle that truth—as well as fairness—is best discovered by powerful statements on both sides of the question."); *Coleman*, 399 U.S. at 9 (explaining a lawyer's "skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over"); *Salerno*, 481 U.S. at 755 ("liberty is the norm, and detention . . . is the carefully limited exception"); *Fann*, 571 A.2d at 1026 (detailing the grave consequences of pretrial detention). That these processes are occurring without counsel for the defendants proves rather than disproves the need for the Court to act. The District Attorney establishes the lack of reciprocal procedural protections that due process requires for both the prosecution and the defense. *See Wardius v. Oregon*, 412 U.S. 470, 477-78 (1973) (lack of reciprocity in Oregon discovery statute violated the defendant's constitutional rights).

The Court correctly determined that the in-jail petitioners were suffering ongoing violations of constitutional rights. The constitutional violations, alone, are sufficient to show irreparable harm. ECF 25 at 12 (citing *Hernandez*, 872 F.3d at 994). But in the ten days that they are permitted to be held without counsel, the in-jail class will suffer further harms from the constitutional deprivations. In ten days, detained criminal defendants will have a release hearing but be unable to effectively press for release; if facing felony charges, they will be indicted by a grand jury but be unable to testify in their defense; they may have time-sensitive information that,

if shared with law enforcement, could earn them valuable consideration but will be unable to share it. In jail, they will face other injuries from restraint on their liberty as well, including loss of jobs, housing, and relationships.

The respondents purport to have succeeded in largely complying with the ten-day limitation in Washington County for the in-jail class. ECF 69-1 at ¶ 6. The Court should reduce the time to 48 hours as the minimum allowable delay so that counsel will be able to seek the least restrictive conditions of pretrial custody, prepare for the grand jury, and begin other imminent needs for defense of a criminal case.

### E. The Court Should Issue A Preliminary Injunction To Prevent Irreparable Harm To The Restrictive-Conditions Class.

The restrictive-conditions class is suffering an indistinguishable violation of the right to counsel. They too are constitutionally guaranteed early and continuous access to counsel. They too face restrictions on their liberty that implicate the Due Process Clause and the Eighth Amendment. Justice Ginsburg explained in an analogous Fourth Amendment context the burdens suffered by those released on pretrial conditions:

> A defendant incarcerated until trial no doubt suffers greater burdens. That difference, however, should not lead to the conclusion that a defendant released pretrial is not still "seized" in the constitutionally relevant sense. Such a defendant is scarcely at liberty; he remains apprehended, arrested in his movements, indeed "seized" for trial, so long as he is bound to appear in court and answer the state's charges. He is equally bound to appear, and is hence "seized" for trial, when the state employs the less strong-arm means of a summons in lieu of arrest to secure his presence in court.

*Albright v. Oliver*, 510 U.S. 266, 279 (1994) (Ginsburg, J. concurring) *see Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 301 (1984) (unlawful custody under 28 U.S.C. § 2241 includes release of personal recognizance that includes "restraints not shared by the public

generally.") (quoting *Hensley v. Municipal Court, San Jose-Mlipitas Judicial Dist.*, 411 U.S. 345, 351 (1973)).[7]

The respondents argue that this class is not suffering a constitutional deprivation because the petitioners are being hailed to court merely for status checks without counsel. However, for the reasons described above, criminal defendants, whether they are in or out of jail, are entitled to the assistance of counsel at every stage of a criminal prosecution. They thus are suffering irreparable harm from the constitutional deprivation and, additionally, suffer harm from the restrictions on their liberty—some as great as house arrest—and their ability to mount a defense diminishes as the triggering events get more remote. The Court should enter a preliminary injunction to prevent irreparable harm to this class.

1.     **The Restrictive-Conditions Class Suffers The Same Sixth Amendment Violations As The In-Jail Class, And, For The Same Reasons,** *Younger* **Abstention Does Not Apply.**

The petitioners have previously addressed why *Younger v. Harris*, 401 U.S. 37 (1971), does not apply to these constitutional claims. ECF 71 at 4-9; ECF 72 at 20-23. In brief:

- *Younger* is an exception to the duty of the federal court to decide cases that only applies if each of the four *Younger* factors are present. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996); *Duke v. Gastelo*, 64 F.4th 1088, 1094 (9th Cir. 2023).

- The third factor looks to whether there currently exists an adequate opportunity to raise the constitutional issue in the state proceedings. *Page v. King*, 932 F.3d 898, 901 (9th Cir. 2019); *Duke*, 64 F.4th at 1095-96. The petitioners and proposed class members lack that opportunity because they are without counsel. *See United States v. Cronic*, 466 U.S. 648, 654 (1984) (the right to counsel affects the accused's ability to assert any other rights); *Wilbur v. City of Mount Vernon*, 989 F. Supp. 2d. 1122, 1135 (W.D. Wash. 2013).

- The fourth *Younger* factor is also not present because the petitioners do not seek to enjoin the state proceedings but rather to require the appointment of counsel so that

---

[7] *Albright* found that the Fourth Amendment, not substantive due process, governed this claim that complained of seizure on the basis of a later-dismissed indictment.

their criminal proceedings may continue in compliance with federal constitutional rights. As the Court previously found, "[p]roviding counsel for class members within ten days of their first appearance, will guarantee efficiency, make criminal proceedings less burdensome on all involved, and will prevent cases from being needlessly delayed." ECF 25 at 12.

- Even if each *Younger* factor were present, extraordinary circumstances allow the Court to prevent further harm from the constitutional violations here. *Brown v. Ahern*, 676 F.3d 899, 903 (9th Cir. 2012) (*Younger* does not require abstention in "extraordinary circumstances where irreparably injury can be shown."); *see also Cavallaro v. Wyrick*, 701 F.2d 1273, 1275 (8th Cir. 1983) ("The failure of Missouri to fulfill the prisoner's right to counsel is the exceptional circumstances that makes § 2241 relief appropriate.").

The respondents offer additional reasons why *Younger* should apply. The Court should adhere to its ruling that *Younger* abstention does not apply to the pretrial denial of the right to counsel.

The respondents argue that the anxiety and inconvenience of defending against a prosecution is insufficient to show irreparable harm warranting federal intervention. ECF 63 at 8 (citing *Younger*, 401 U.S. at 46). But the respondents' reference to *Younger*'s statement that injury from a criminal prosecution does not qualify as irreparable harm presumes an ordinary criminal prosecution, which, after *Gideon*, presumes representation by a criminal defense attorney. *See Steffel v. Thompson*, 415 U.S. 452, 460-61 (1974) (describing *Younger* as "cognizant that a pending state proceeding, in all but unusual cases, would provide the federal plaintiff with the necessary vehicle for vindicating his constitutional rights"). "The Supreme Court has been clear that *Younger* abstention is motivated by the need to refrain from granting injunctive relief where a litigant has adequate legal remedies and *therefore* does not face irreparable injury. . ." *Duke*, 64 F.4th at 1095 (emphasis added). Because counsel is the method by which constitutional claims can be raised, the third factor is missing here, and the Court has full authority to consider the irreparable harm from the uncounseled prosecutions. ECF 71 at 4-6.

The respondents argue that the right to counsel, like the right to a speedy trial, can be remedied through post-conviction reversal. ECF 63 at 8. The respondent's argument is premised on the notion that both counsel and speedy trial are "'designed to ensure a fair trial.'" ECF 63 at 8 (quoting *Page*, 932 F.3d at 904). As thoroughly detailed in previous filings, the petitioners allege a Sixth Amendment claim of the denial of the right to counsel—which is distinct from a claim that ineffective assistance of counsel deprived them of a fair trial. *See* ECF 71 at 13-18. While there is irreparable harm from proceeding in a criminal case without counsel, it is not necessarily amenable to retrospective relief and is therefore more similar to the pretrial detention context that the *Page* court found rendered *Younger* inapplicable. 932 F.3d at 904-05 ("[T]he right asserted by Page implicates the integrity of *pretrial* probable cause procedures. *Arevalo* shows that such a right is not a trial right and therefore cannot be vindicated post-trial.") (emphasis in original) (referencing *Arevalo v. Hennessy*, 882 F.3d 763 (9th Cir. 2018)).

The respondents argue that dismissal will directly enjoin the state proceedings and that removal of conditions will effectively enjoin the state court proceedings without a way to guarantee the petitioner's presence. ECF 63 at 7. First, petitioners seek access to counsel that, as already discussed, will facilitate, not enjoin, the state case. ECF 25 at 12. Second, if the State wishes to exercise control over the petitioners' liberty, it comes at a cost: appointed counsel for indigent defendants. *Lavallee v. Justices in the Hampden Superior Court*, 812 N.E.2d 895, 910, 912-13 (Mass. 2004) ("Public safety, however, comes with a cost. One of the components of that cost is the level of compensation at which counsel for indigent defendants will provide the representation required by our Constitution."). Even if the Court were to find the requested relief would enjoin the proceedings, that alone does not warrant *Younger* abstention because the third factor is absent, and extraordinary circumstances are present.

## 2. The Court Should Apply The Correct Test, And, Even Under A Balance Of The Equities, Injunctive Relief Is Appropriate.

The respondents argue that the balance of the equities disfavors an injunction. ECF 63 at 17-19. As previously explained, "[t]he first factor—likelihood of success on the merits—is the most important (and usually decisive) one in cases where a plaintiff brings a constitutional claim." *Baird*, 2023 WL 5763345, at *9. The respondents admit that the petitioners have a significant interest in receiving effective assistance of counsel in their case and concede that there is a lack of available counsel. ECF 63 at 17-18. The respondents contend that the requested relief will interrupt the ability of the prosecution to continue current prosecutions and undertake additional prosecutions. *Id.* at 18.

Essentially, the respondents argue that the Court should decline to intervene so that the State of Oregon can continue to prosecute indigent individuals without providing them counsel. The Court should not grant an obvious request to allow violations of fundamental constitutional rights to persist when State actors have been, are, and will be the ones with the authority over both the demand and supply side of indigent defense. The requested injunctive relief only removes an unconstitutional option from the State's choices on administration of its criminal justice system.

The respondents argue that the limitations on the restrictive-conditions class are disparate, with some individuals having "de minimis" restrictions and other needing maximum restrictions to protect the community. ECF 63 at 18. The State's view that constitutionally protected liberty interests can be categorized as "de minimis" (lacking significance or importance) demonstrates the importance of federal court intervention to assure that rights that the Supreme Court recognizes as protected under the habeas corpus statute and the liberty interests of the Due Process Clause are not to be ignored. The Court should make clear to the State that its presumptively innocent citizens have significant interests at stake when they are compelled to live under the cloud of a pending

prosecution, required to make repeated court dates, all without the advice and advocacy of a criminal defense lawyer.

In any event, as for the "de minimis" group, if their restrictions are already limited, there is no concomitant public safety need counseling against dismissal without prejudice. For those who are suffering great restrictions—their liberty is being greatly infringed without due process. The respondents argue that victims will be put at risk without the no-contact orders and GPS monitoring that comes along with pending criminal charges. To the extent any individual needs protection, there are civil restraining orders which can be employed. *See* Or. Rev. Stat. 163.760 to 163.77 (Sexual Abuse Restraining Orders); 107.700-107.735 (Family Abuse Prevention Act); 30.866 and 163.730-163.750 (Stalking Protective Order); 124.005-124.040 (Elderly Persons and Persons with Disabilities Abuse Prevention Act). The prosecutors, not the petitioners, are in the position to allocate resources and prioritize cases in a manner that assures counsel for those the prosecution believes need more conditions.

The respondents argue that dismissal without prejudice will make things worse for the petitioners and the proposed class because their criminal charges can be brought again and they will be at the bottom of the list for counsel. The State is systematically depriving the proposed class of their federal constitutional rights. The Court should not look to the State as an authority for what is in the best interest of the class. If their charges are dismissed, the petitioners will be free from the liberty restrictions placed upon them and from the stigma of being under criminal prosecution until such time as criminal defense counsel is available.

**Conclusion**

For the foregoing reasons, and those set forth in the motion for preliminary injunction and other pleadings, and at the scheduled preliminary injunction hearing, the Court should issue the requested preliminary injunction.

Respectfully submitted this October 10, 2023.

/s/ *Fidel Cassino-DuCloux*
Fidel Cassino-DuCloux
Fidel_Cassino-DuCloux@fd.org

/s/ *Stephen R. Sady*
Stephen R. Sady
Steve_Sady@fd.org

/s/ *Julie Vandiver*
Julie Vandiver
Julie_Vandiver@fd.org

/s/ *Jessica Snyder*
Jessica Snyder
Jessica_Synder@fd.org

/s/ *Robert Hamilton*
Robert Hamilton
Robert_Hamilton@fd.org

/s/ *Peyton E. Lee*
Peyton E. Lee
Peyton_Lee@fd.org

/s/ *Megha Desai*
Megha Desai
Megha_Desai@fd.org

/s/ *Michael Benson*
Michael Benson
Michael_Benson@fd.org

/s/ *David Sugerman*
David Sugerman
David@sugermandahab.com

/s/ Nadia Dahab
Nadia Dahab
nadia@sugermandahab.com

*Attorneys for Petitioners*