IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WALTER BETSCHART, JOSHUA
SHANE BARTLETT, CALEB AIONA,
TYRIK DAWKINS, JOSHUA JAMES-
RICHARDS, TANIELA KINI KIN LATU,
RICHARD OWENS, LEON MICHAEL
POLASKI, ALEX SARAT XOTOY,
TIMOTHY WILSON, JEFFREY DAVIS,
RICHARD AARON CARROLL, SR.,
JENNIFER LYN BRUNETTE, NICHOLAS
WALDBILLIG, DEREK PIMENO
ZAVALA, CURTIS RAY ANTHONY
REMINGTON, CRISTA JEAN DAVIS,
NICHOLE LYNN WHALEN, *and* JACOB
ISAAC NATHANIEL COLE, *on their
behalf, and on behalf of all others similarly
situated*,

        Plaintiffs,

    vs.

SHERIFF PATRICK GARRETT,
*Washington County Sheriff, in his official
capacity*, *and* WASHINGTON COUNTY
CIRCUIT COURT JUDGES, *in their
official capacities*, *and* THE STATE OF
OREGON,

        Defendants.

Case No.: 3:23-cv-01097-CL

OPINION AND ORDER

_____

MCSHANE, J.:

*Of all the rights that an accused person has, the right to be represented by counsel is by far the most
pervasive for it affects his ability to assert any other rights he may have. United States v. Cronic*, 466
U.S. 648, 654 (1984).

      The Petitioners are two groups of pre-trial defendants who share the same constitutional

challenge: they have been charged with crimes in the State of Oregon and are without access to

an attorney. While the reasons underlying the shortage of publicly funded attorneys in Oregon are complex, all parties agree that the State is facing a crisis in its constitutional mandate to provide qualified attorneys to those charged with crimes. The problem is institutional, and it is statewide. A lasting fix will require systemic change and legislative resolve. And while judges, district attorney offices, and defender organizations are frustrated by having to witness such a calamity, the solution to the crisis will take time. But the luxury of time, unfortunately, is not something that many Petitioners have when faced with a criminal prosecution.

Some Petitioners have been released from custody but are subject to certain liberty constraints as a condition of their continued release. This "Restrictive Conditions Class" comprises an estimated 2,700 individuals across the state, some awaiting attorneys for as long as 269 days at the filing of this action. Pet'rs' Mot. Prelim. Inj. 12; ECF No. 37. According to statistics provided by Petitioners, as of September 21, 2023, the average number of days of conditional release without counsel was 63.4, and the median number was 43. Manley Decl. 4, ECF No. 98. A significant portion of the Restrictive Conditions Class appears to be subject only to the statutorily mandated restrictions that would apply irrespective of counsel—namely, an order to return to court for a later proceeding and to remain in the state. *Id.* A small minority of Petitioners, however, are facing significantly greater restrictions on their liberty in the community. For example, 0.8% are on house arrest, and 0.4% are required to use GPS monitoring. *Id.* at 5. These restrictions are discretionary and consistent with a state court's legal interest in protecting victims and the community, and assuring the appearance of the defendant in court. Other discretionary conditions commonly include having no contact with a victim, submitting to drug testing, abiding by a curfew, participating in mental health or substance abuse treatment, surrendering a passport, or meeting regularly with a pretrial officer. State courts are

given wide discretion, after a fact-based and individual analysis, to impose conditions on the liberty of a released defendant, so long as those conditions are reasonable.

Petitioners argue that members of the Restrictive Conditions Class, without counsel, cannot challenge the reasonableness of their release conditions. Pet'rs' Mot. Prelim. Inj. 8–10. They also contend that these individuals cannot adequately prepare for trial, noting that witnesses disappear, evidence is lost, and memories fade. *Id.* They ask the Court to certify them as a single class and grant relief in the form of dismissing their cases within 48 hours of arraignment if they have not been provided with an attorney. *Id.* at 1. Today, the Court declines to impose this requested relief, on multiple grounds. First, the doctrine of federal abstention counsels against a ruling in this case. Second, the putative Restrictive Conditions Class fails to satisfy the "commonality" requirement for class certification. And third, Petitioners do not meet the preliminary injunction standard because their constitutional claims are unlikely to succeed on the merits. Nothing in this opinion should suggest that individual Petitioners are not being harmed by the government's failure to provide counsel. But ultimately, it is not the federal court's role to assess harm on a case-by-case basis when these individuals have remedies at law in the state court forum in which they are being prosecuted.

Of greater concern are Petitioners who have been ordered detained in jail and are without an attorney or sufficient process to secure their release or defend their case. In essence, they have been locked away without a voice, being too poor to afford an advocate to speak for them in the courtroom. And the individual Petitioners are not alone. As of October 31, 2023, there were 14 indigent defendants housed in Washington County Detention Centers without access to counsel, and 135 statewide. *Unrepresented Individuals Summary*, OR. CIR. CTS, https://perma.cc/ZH4W-QCS8 (Oct. 31, 2023, 11:24 AM). At their arraignments, many of these individuals were

"appointed" a public defender through the Office of Public Defense Commission ("OPDC") as a placeholder, but no attorney ever appeared to represent them. The Court previously found, in the temporary restraining order issued on August 17, 2923, that because this "Custody Class" of Petitioners were suffering irreparable injury and likely to succeed on the merits of their claims, they were entitled to emergency relief. *Betschart v. Garrett* (*Betschart I*), No. 3:23-cv 01097-CL, 2023 WL 5288098, at \*5 (D. Or. Aug. 17, 2023). The Court ordered that this class of Petitioners, and similarly situated defendants in Washington County, be conditionally released from custody if they did not receive counsel within 10 days of their initial appearance, or if their attorney withdrew, and they were not re-appointed counsel within 10 days. Today, in this preliminary injunction, the Court reduces the timeframe to seven days and applies the injunction statewide.

## PROCEDURAL POSTURE

Today's ruling follows the Court's Temporary Restraining Order ("TRO") issued on August 17, 2023. *Betschart I*, 2023 WL 5288098 at \*5. Petitioners initially filed a Writ of Habeas Corpus on July 27, 2023, alleging violations under the Sixth, Eighth, and Fourteenth Amendments. Pet'rs' Writ Habeas Corpus 2, ECF No. 1. Petitioners sought provisional class certification of all unrepresented indigent defendants in Washington County and the unconditional release of all class members from custody, unless counsel was appointed to represent them within 10 days. Pet'rs' Mot. Prov. Class Certification 2, ECF No. 6; Pet'rs' Mot. TRO 2, ECF No. 7. Petitioners first named Washington County Sheriff Patrick Garrett as Respondent, and then added Washington County Judges ("Judges") as a second Respondent. Pet'rs' First Am. Pet. Writ Habeas Corpus 6, ECF No. 18 ("Pet'rs' FAP"). In the TRO, the Court granted provisional class certification and issued a TRO for part of the requested class— individuals in physical custody in Washington County Detention Center ("Custody Class").

*Betschart I*, 2023 WL 5288098 at *5. The Court ordered the release of detainees who were not provided counsel within 10 days of their initial appearance, or within 10 days of the withdrawal of an attorney. *Id.* at *7. The Court did not grant provisional class certification for individuals charged with crimes who were released in the community on restrictive conditions. *Id.* at *5.

Following the Court's TRO, on August 23, 2023, the State of Oregon intervened as a third Respondent. Resp'ts' Unopp. Mot. to Intervene 1, ECF No. 28. On September 1, 2023, Petitioners filed a Second Amended Petition for Habeas Corpus, which named the State of Oregon as a third Respondent and added, as Petitioners, individuals across the state who had been released on conditions in the community and were without an attorney. Pet'rs' Second Am. Pet. Writ Habeas Corpus 4, ECF No. 34 ("Pet'rs' SAP"). On September 12, 2023, Petitioners filed a Motion for Provisional Class Certification for this "Restrictive Conditions Class" and a Motion for Preliminary Injunction, seeking a statewide order requiring that counsel is provided within 10 days of an initial appearance or withdrawal of previously appointed counsel. Pet'rs' Mot. Prov. Class Certification 2, ECF No. 39; Pet'rs' Mot. Prelim. Inj. 1, ECF No. 37. After 30 days of this preliminary injunction, Petitioners requested that this 10-day period be reduced to 48 hours. Pet'rs' Mot. Prelim. Inj. 1. For the Custody Class, Petitioners sought a reduction in the permissible time for appointment from 10 days to 48 hours. *Id.*

Also on September 12, 2023, Respondents submitted a Motion to Dismiss the Washington County judges, arguing they are improper respondents. Resp'ts' Mot. to Dismiss 1, ECF No. 53. Respondents also submitted a Motion for Reconsideration of the Court's TRO. Resp'ts' Mot. for Recons. 1, ECF No. 38

For the following reasons, Respondents' Motion to Dismiss (ECF No. 53) is GRANTED. Respondents' Motion for Reconsideration of Opinion and Order (ECF No. 38) is GRANTED.

Petitioners' Motions for Provisional Class Certification for the Restrictive Conditions Class (ECF No. 39) is DENIED. Petitioners' Motion for Preliminary Injunction (ECF No. 37) is GRANTED in part and DENIED in part. The relief granted in this preliminary injunction shall apply statewide.

## BACKGROUND

Petitioners are indigent defendants who have been charged with crimes in the State of Oregon. They are presently without an attorney, or they were without an attorney at the time of the filing of the initial habeas petition. Pet'rs' SAP 8. Petitioners, at the time of filing, had been appointed counsel procedurally, but no attorney was available to represent them, or previously appointed counsel withdrew and no substitute attorney was available. *Id.*

Some petitioners are or were in custody in Washington County Detention Centers. *Id.* at 7. These petitioners include the class that was provisionally certified in *Betschart I*. 2023 WL 5288098, at *5. They are being held in custody for weeks, and sometimes months, without an attorney. *Id.* at 8–14. Petitioners have appeared at as many as eight proceedings without counsel, including arraignments, release hearings, and case management hearings. *Id.* Some have elected to plead guilty while waiving counsel in order to resolve their cases. Resp't' Obj. to Mot. for Temp. Rest. Order. 3

The second class of Petitioners—individuals who comprise the Restrictive Conditions Class—have been released on conditions in the community throughout the State of Oregon. *Id.* at 7. The conditions of release in this class vary: a small percentage have more restrictive conditions, such as house arrest or GPS monitoring, while nearly all members are released on the statutorily imposed condition that they return to court for the next proceeding and that they remain in the state. *Id.* According to data compiled by Petitioners, as of September 21, 2023,

there were 2,657 unique defendants throughout the State who had been released on conditions and were without an attorney. Manley Decl. 4. Of those, 95.9% were required to return to court; 83.3% were prohibited from leaving the State without permission; 21.9% were ordered to meet with pretrial services; 48.4% were ordered to avoid certain people or places; 28.7% were ordered to avoid alcohol or bars; 13.5% had restrictions imposed on their firearm use; 0.8% were on house arrest; and 0.4% were subject to GPS monitoring. *Id.* at 5.

The duration of the of time without counsel also varies considerably for this class. As for the group of named petitioners, three of them had gone 218, 240, and 269 days, respectively, without counsel at the time of filing. Pet'rs' Mot. Prelim. Inj. 12. One Petitioners had allegedly appeared at least 17 times without counsel. Pet'rs' SAP 15. Class-wide, data from Petitioners show that, as of September 21, 2023, the average number of days of conditional release without counsel was 63.4, and the median number was 43. Manley Decl. 4. Of the 2,657 unique defendants, 152 had been on release for three days or fewer without counsel; 100 had been on release from 4–7 days without counsel; 148 had been on release for 8–10 days without counsel; 598 had been on release for 11–30 days without counsel; 1,523 had been on release for 31180 days without counsel; 105 had been on release for 181–365 days without counsel. Finally, 31 defendants were waiting for more than a year. *Id.*

## DISCUSSION

## I.    <u>**Proper Respondents**</u>

Petitioners initially named Sheriff Patrick Garrett in their Habeas Petition and TRO request. Pet'rs' FAP 6. They then added Washington County Circuit Court Judges, prior the Court's ruling on the initial TRO. Pet'rs' SAP 4. After the order was issued, the State of Oregon

intervened as another Respondent. Resp'ts' Unopp. Mot. Intervene 1. The Judges then moved to dismiss themselves as Respondents. Resp't' Mot. Dismiss 1.

The Judges' Motion to Dismiss is granted. For the Custody Class, the parties appear to stipulate that the proper respondents are the Sheriff and the State of Oregon. The Court agrees. For the Restrictive Conditions Class, the Court does not address the issue of whether the Judges are proper Respondents because the Motion for Preliminary Injunction is denied.

## II.  <u>Abstention</u>

*Younger* abstention does not apply to the Custody Class due to the extraordinary circumstances of Petitioners, but it is appropriate for the Restrictive Conditions Class. *Younger* abstention is a doctrine "rooted in overlapping principles of equity, comity, and federalism," and it "cautions against federal interference with ongoing state criminal, civil, and administrative proceedings." *San Jose Silicon Valley Chamber of Com. Pol. Action Comm. v. City of San Jose*, 546 F.3d 1087, 1091–92 (9th Cir. 2008); *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018). Specifically, *Younger* is appropriate when "(1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding." *Arevalo*, 882 F.3d at 765. However, "even if *Younger* abstention is appropriate, federal courts do not invoke it if there is a 'showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate.'" *Id*. at 765–66 (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)).

### A.  **Custody Class**

For the Custody Class, this remains a case of "extraordinary circumstances" that demands federal intervention. The extraordinary-circumstances exception in *Younger* applies where "the danger of irreparable loss is both great and immediate." *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1082 (9th Cir. 1987). Indeed, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). In *Page v. King*, the Ninth Circuit examined whether pretrial detention resulting from an unconstitutional probable cause hearing required abstention. 932 F.3d 898 (9th Cir. 2019). The court declined to abstain because "[d]eprivation of physical liberty by detention constitutes irreparable harm." *Id.*

Similar reasoning to *Page* applies here. Petitioners are being held in custody without counsel, and they have a right to the prompt disposition of claims concerning the ongoing violation of their rights under the Sixth and Fourteenth Amendments. Respondents assert that Petitioners can challenge their right to counsel after trial without risk irreparable harm. Resp'ts' Reply Supp. Recons. 9. But this misunderstands the nature of the rights at issue: the Sixth Amendment entitles the accused to adequate representation at all critical stages of trial, irrespective of a showing of prejudice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006) (denial of counsel at the any critical stage is a structural error because it "affec[ts] the framework within which the trial proceeds."). Similarly, the Fourteenth Amendments ensures that severe deprivations of liberty, such as incarceration, are not carried out without due process. *See Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 777 (9th Cir. 2014) (en banc) (applying due process standard to challenge to categorical detention). Therefore, Petitioners' allegations are the

sort of extraordinary circumstances that override the four *Younger* factors and call for injunctive relief from the Court.

### B. Restrictive Conditions Class

*Younger* abstention, however, does apply to the Restrictive Conditions Class. The first two *Younger* factors are easily satisfied here: the criminal prosecutions are ongoing, and they implicate state interests of enforcing criminal laws and protecting public safety. The parties dispute the third factor—whether there is an adequate opportunity in the state proceedings to raise constitutional challenges. Petitioners claim that they do not have an adequate opportunity to raise their claims because they have no counsel. Pet'rs' Reply Supp. Second Am. Pet. 4–5, ECF No. 71. However, as Respondents note, this adequacy prong is concerned less with the nature of the remedy at law and "requires only the absence of 'procedural bars' to raising a federal claim in the state proceedings." *Commc'ns Telesystems Int'l v. Cal. Pub. Util. Comm'n*, 196 F.3d 1011, 1020 (9th Cir. 1999). Here, Petitioners have not raised their federal claims in state court, and there are no procedural rules prohibiting them from doing so.

The fourth *Younger* factor is also satisfied: Petitioners' requested relief—dismissal of the prosecution within 48 hours of first appearance if counsel is not secured—seeks to enjoin, or will have the practical effect of enjoining, the ongoing state judicial proceeding. The Petitioners point the Court to *Arevalo v. Hennessy*, which, like *Page*, involved the alleged Due Process violation in the bail-setting process. 882 F.3d 763, 776 (9th Cir. 2018). The *Arevalo* court declined to apply abstention because the requested relief "may be achieved without an ongoing intrusion into the state's administration of justice." *Arevalo*, 882 F.3d at 766 n.2 (citing *Courthouse News Serv. v. Planet*, 750 F.3d 776, 790 (9th Cir. 2014)). In other words, the dispute over the constitutionality of the bail hearing, and the remedy requested, would not involve "an injunction

against state criminal prosecutions." *Id.* The same cannot be said for the Restrictive Conditions Class. In fact, the express remedy they seek is to enjoin the criminal proceeding of the Petitioners. Here, the Court also has serious reservations about intruding upon the release decisions made by state legislators and elected judges. An order to judges to dismiss all charges if counsel is not present would override the statutory release framework, which involves a combination of strict guidelines from the state legislature as well as the sound discretion of judges.

Finally, this is not a class facing the extraordinary circumstances that would trump the four *Younger* factors. The irreparable harm suffered by the Petitioners on restrictive conditions in the community is far less grave than those who are currently incarcerated. As noted above, the liberty interest for Petitioners who are in custody warrants immediate intervention from the federal courts. But this liberty concern is less urgent for the Restrictive Conditions Class—and considerable so for individuals released on the conditions to reappear at a later date and not to leave the state. As the *Younger* Court noted, "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution" does not alone constitute irreparable harm for this exception. *Younger*, 401 U.S. at 46.

## III.  Provisional Certification of Class Action

### A.  Custody Class

The Court provisionally certified a class of physically detained Petitioners in the initial TRO. Here, at the preliminary injunction stage, the Court maintains the provisional class certification for the Custody Class, which includes the following:

> (1) indigent and unable to afford an attorney, (2) facing criminal charges in Washington County, (3) who are physically housed in a Washington County Detention Center, and (4) who have not had an attorney appointed to represent them within ten days of their initial appearance, (5) or have had an attorney

appointed to their case who subsequently withdrew and no substituted counsel has
been appointed within ten days of their withdrawal.

*Betschart I,* 2023 WL 5288098 at *9. The Court now expands this class to all counties in Oregon
and reduces the timeframe to seven days.

A party seeking class certification must show the: "(1) numerosity of plaintiffs; (2) [that]
common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are
typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanon v.
Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) (citing FED. R. CIV. P. 23(a)). Under Fed.
R. Civ. P. 23(b)(1)–(3), a party must also demonstrate one of the following:

> (a) a risk that separate actions would create incompatible standards of conduct for
> the defendant or prejudice individual class members not parties to the action; (b)
> the defendant has treated the members of the class as a class, making appropriate
> injunctive or declaratory relief with respect to the class as a whole; or (c) common
> questions of law or fact predominate over questions affecting individual members
> and that a class action is a superior method for fairly and efficiently adjudicating
> the action.

*Hernandez v. Lynch,* No. EDCV 16-00620-JGB, 2016 WL 7116611, at *13 (C.D. Cal. Nov. 10,
2016), *aff'd sub nom. Hernandez v. Sessions,* 872 F.3d 976 (9th Cir. 2017).

As the Court concluded in the TRO, the Custody Class meets the requirements of
numerosity, commonality, typicality, and adequacy under FED. R. CIV. P. 23(a)–(b). Petitioners
who are (or were) in physical custody fairly and adequately represent the interests of the class
and are represented by experienced and competent counsel in this matter. Their claims are
typical of the class, and class members share common questions of law and fact. They are all in-
custody indigent individuals who have been charged with a crime and are being detained
indefinitely without counsel in violation of the Sixth and Fourteenth Amendments.

Class members are also easily ascertainable and sufficiently numerous that individual
litigation is impractical. *See* FED. R. CIV. P. 23(b)(1)–(3). Individual litigation would lead to

transitory claims that may expire, resulting in an unconstitutional practice that is "capable of repetition yet evading review." *See Sosna v. Iowa,* 419 U.S. 393, 399–401 (1975). It is evident from the dismissal of prior cases brought against Washington County by individual habeas petitioners (who were subsequently appointed counsel), that certification of this class is the only means to safeguard relief for all current and future unrepresented indigent defendants being detained in Washington County.

Further, as this Court stated in the initial TRO, the transient nature of the class does not bar certification. Indeed, courts have "recognized the right of class representatives to prosecute inherently transitory claims (claims which by their nature may expire for any one individual during the course of the litigation) for those remaining and future members of the class who are still being injured by the policy or practice." *Padilla v. U.S. Immigr. & Customs Enf't,* 379 F. Supp. 3d 1170, 1174 (W.D. Wash. 2019), *reversed on other grounds*; *Sosna,* 419 U.S. at 402 ("[A] controversy may exist . . . between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot."). Although named Petitioners Betschart, Latu, Owens Jr., Polaski, and Wilson had been appointed attorneys at the time of the TRO, the transitory nature of their claims allowed them to represent the fluctuating class of defendants in Washington County detention who face ongoing constitutional violations. The same is true for Petitioners, and the remainder of this class, at the preliminary injunction stage.

### B.  Restrictive Conditions Class

Since the ruling on the initial TRO, the State of Oregon intervened as Respondent. Resp'ts' Mot. to Intervene. Petitioners then moved to certify a class of individuals, throughout the state, who were released in the community on restrictive conditions. Pet'rs' Mot. Prov. Class

Certification 2. Today, the Court declines to certify the class because it does not have requisite commonality.

Petitioners seek certification of the following class:

> All persons who are: (1) indigent and unable to afford an attorney, (2) facing criminal charges brought in the name of the State of Oregon, (3) who, without counsel, have been released on restrictive conditions in the community and are required to return to court for future appearances in that prosecution, and (4) who have not had an attorney appointed to represent them after their initial appearance, or (5) have had an attorney appointed to their case who subsequently withdrew and no substituted counsel has been appointed.

Pet'rs' Second Mot. for Prov. Class Certification 2. Petitioners assert that this putative class satisfies the four factors, as well as Rule 23(b)(2), which requires that "defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole." FED. R. CIV. P. 23(b)(2).

To satisfy commonality, Petitioners must establish that the class members "have suffered the same injury." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982). As the Supreme Court clarified in *Wal-Mart Stores, Inc. v. Dukes*, this does "not mean merely that they have all suffered a violation of the same provision of law." 564 U.S. 338, 350 (2011). The critical question is whether the class-wide proceeding can "generate common *answers* apt to drive the resolution of the litigation." *Id.* "Dissimilarities within the proposed class … have the potential to impede the generation of common answers." *Id.* A commonality inquiry will frequently include a "rigorous analysis" that sometimes requires a court to "probe behind the pleading before coming to rest on the certification question." *Id.*

Here, the Court is unable to find commonality because Petitioners vary widely in the injury they suffer, preventing the Court from finding a common answer that will fairly resolve the litigation. Petitioners rely on *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010), which found commonality for a class of immigration detainees challenging the constitutionality of their

detention. There, despite being in detention for differing reasons and under differing statutes, the court determined that the petitioners shared a "legal issue or a common core of facts"—whether detention for more than sixth months, absent statutory authority, raises constitutional concerns.

By contrast, Petitioners here do not face the same common injury that was of concern in *Rodriguez*. Unlike *Rodriguez*—and unlike the in-custody class of Petitioners in this case—the individual circumstances of the Restrictive Conditions Class vary widely. A "probe behind the pleadings" reveals that certain restrictions, such as the requirement to return to court and the prohibition on leaving the states, are nearly ubiquitous. Manley Decl. 5. However, conditions that severely restrict the liberty of Petitioners are rare: for example, of the 2,657 unique defendants without counsel and released in the community as of September 21, 2023, only 0.4% required GPS monitoring, only 0.8% were on house arrest, and only 13.5% had restrictions on firearms. Manley Decl. 5. For some—such as individuals required to return to court or remain in the state—the appointment of counsel will not change their statutorily mandated conditions. Indeed, state law requires that released defendants "shall be" subject to the conditions that they appear at a later date and do not leave the state without the court's leave. ORS § 135.250. By contrast, the circumstances and injury are much different for the small minority of Petitioners who indeed may have a colorable claim to severe deprivations of liberty and counsel—such as those on house arrest. But when grouped as an entire putative class, an assessment of the merits of these claims will turn importantly on fact-specific questions that diverge considerably. The Court therefore cannot say that resolution of the claim would answer the question for the class. Because the commonality requirement is unmet, provisional class certification is denied.

IV.    **Preliminary Injunction**

    A.  **Posture**

The parties dispute the posture of Petitioners' Motion for Preliminary Injunction. Once the TRO was issued, Respondents submitted a Motion for Reconsideration. Resp'ts' Mot. Recons. 1. They assert that, because the initial order was not issued *ex parte* and did not terminate within 14 days, it is effectively a preliminary injunction. *Id.* at 4. Petitioners object.

The TRO was indeed a TRO. Typically, a temporary restraining order issued without notice may not exceed 14 days.  FED. R. CIV. P. 65(b)(2). However, when a TRO is issued with notice and after a hearing, the 14-day limit does not apply. *Innovation Law Lab v. Nielsen*, 310 F.Supp. 3d 1150, 1156 n.1 (D. Or. 2018). Here, the parties had notice, and the order was issued subsequent to a hearing. This does not mean that the 14-day rule applies indefinitely; but where, as here, the dates and deadlines on the court's docket give "every indication" that the court intends to address the issue as a preliminary injunction, "the district court's order operates as what it purports to be—a TRO." *S. Wind Women's Ctr. LLC v. Stitt*, 808 Fed. App'x. 677, 681 (10th Cir. 2020). Nonetheless, Respondents assert that their arguments in the Motion to Reconsider should still be considered because they bear directly on Petitioners' motion to convert the TRO into a preliminary injunction. The Court agrees and therefore grants the Motion for Reconsideration.

    B.  **Standard**

The standard for a preliminary injunction is a high one: "it may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). A party seeking a preliminary injunction must establish (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary

relief, (3) that the balance of equities tips in its favor, and that (4) an injunction is in the public

interest. *Id.* at 20. The emphasis here is on the likelihood of success on the merits, which "holds

especially true for cases where a plaintiff seeks a preliminary injunction because of an alleged

constitutional violation." *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020).

The mere possibility of irreparable harm is not enough; the plaintiff must establish such harm is

likely. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

Finally, courts distinguish between two types of injunctions. A "prohibitory" injunction

prevents a party from taking a particular action and "preserve[s] the status quo pending a

determination of the action on the merits." *Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal.*, 840 F.2d

701, 704 (9th Cir. 1988). By contrast, a "mandatory" injunction "orders a responsible party to

take action," going "well beyond simply maintaining the status quo." *Marlyn Nutraceuticals, Inc.

v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009). The standard for

mandatory injunctions is therefore "doubly demanding": the moving party must "establish that

the law and facts *clearly favor* [their] position, not simply that [they are] likely to succeed."

*Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis added). The relief requested

here constitutes a mandatory injunction.

### C. **Custody Class**

Petitioners asked the Court to incorporate the previous TRO into a preliminary

injunction, with one modification: reduce the time that counsel must be appointed from 10 days

to 48 hours. Pet'rs' Mot. for Prelim. Inj. 1. As with the TRO, Petitioners raise claims under the

Sixth Amendment and Fourteenth Amendment. *Id.* at 4. The Court concludes that Petitioners are

likely to succeed on the merits of their claims that indefinite delay in the appointment of counsel

to in-custody defendants constitutes a violation of the Sixth Amendment and Due Process. The

Court now orders that counsel must be provided within seven days of the initial appearance, or within seven days of the withdrawal of previously appointed counsel. Failing this, defendants must be released from custody, subject to reasonable conditions imposed by Circuit Court judges.[1]

### 1. <u>Likelihood of Success on the Merits</u>

### a. <u>Sixth Amendment</u>

The Sixth Amendment guarantees "the fundamental right of the accused to the aid of counsel in a criminal prosecution." *Gideon v. Wainwright*, 372 U.S. 335, 343 (1963). This right attaches as soon as the prosecution commences—that is, "the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothgery v. Gillespie Cnty., Tex.,* 554 U.S. 191, 194 (2008). Once attachment has occurred, the accused is entitled, "at the least," to "the presence of appointed counsel during any "critical stage" of the post attachment proceedings." *Id.* at 212. A critical stage is what "shows the need for counsel's presence." *Id.* In addition to each critical stage, the accused is entitled to counsel "within a reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself." *Id.* This leaves two avenues for a Sixth Amendment violation: (1) lack of counsel at a critical stage, or (2) unreasonable delay in appointment that fails to provide for adequate representation at the critical stage.

The Supreme Court has identified numerous critical stages, including arraignments, preliminary hearings, guilty pleas, post-attachment plea negotiations, sentencing, and trial. *See*

---

[1] This order does not override Section 43 the Oregon State Constitution, which prohibits release for the crimes of murder and aggravated murder upon a showing that the "proof is evident or the presumption strong that the person is guilty." OR. CONST. art. I, § 43.

*Hamilton v. Alabama*, 368 U.S. 52 (1961); *United States v. Perez*, 776 F.2d 797 (9th Cir. 1985), overruled by *United States v. Cabaccang*, 332 F.3d 622 (9th Cir. 2003); *White v. Maryland*, 373 U.S. 59 (1963); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Gardner v. Florida*, 430 U.S. 349 (1977); *Alabama v. Shelton*, 535 U.S. 654 (2002). The Ninth Circuit applies a three-factor test to determine additional critical stages, asking whether "(1) failure to pursue strategies or remedies results in a loss of significant rights, (2) skilled counsel would be useful in helping the accused understand the legal confrontation, and (3) the proceeding tests the merits of the accused's case." *Hovey v. Ayers*, 458 F.3d 892, 901 (9th Cir. 2006) (internal quotation marks omitted). Any of those factors "may be sufficient to render a stage of the proceeding 'critical.'" *Id.* In contrast to critical stages, there is much less jurisprudence defining a reasonable delay, post-attachment, to ensure adequate representation at each critical stage.

In Oregon, the statutes governing the timing of trials requires swift appointment of counsel to vindicate a defendant's Sixth Amendment right. For all "releasable offenses," state law entitles in-custody defendants to a trial within 60 days of arrest, unless the defendant waives the right. ORS § 136.290; ORS § 136295(1). The clock is therefore ticking on how much time is needed for counsel to adequately represent a defendant at the critical stage of trial. As lawyers well know, preparation requires a long list of activities: investigation, retaining experts, serving witnesses, reviewing discovery, and negotiations with the opposing party. It also requires pretrial litigation such as discovery motions, suppression motions, demurrers, motions to dismiss, motions in *limine*, motions to change venue, and objections to exhibits. Under this framework, if a defendant is arraigned two days after arrest and appointed counsel seven days thereafter, the lawyer will have 51 days, maximum, to prepare for trial. While preparation time may vary, no

court can reasonably expect an attorney to be prepared for the litigation of a criminal case in significantly less than two months.

And, as noted above, trial is not the only critical stage—lawyers must be present at other proceedings, such as arraignments, preliminary hearings, and guilty pleas. *See Hamilton v. Alabama*, 368 U.S. 52 (1961); *United States v. Perez*, 776 F.2d 797 (9th Cir. 1985), overruled by *United States v. Cabaccang*, 332 F.3d 622 (9th Cir. 2003); *White v. Maryland*, 373 U.S. 59 (1963). Further, courts have found—and this Court agrees—that bail hearings also represent a critical stage. The Supreme Court stated in *Coleman* that "counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail." Drawing on this language, the Second Circuit has concluded, "[t]here is no question that 'a bail hearing is a "critical stage of the State's criminal process."'" *Hurrell-Harring v. State of New York*, 930 N.E.2d 217, 223 (N.Y. App. 2010) (quoting *Higazy v. Templeton*, 505 F.3d 161, 172 (2nd Cir. 2007) (citing *Coleman v. Alabama*, 399 U.S. 1, 9–10 (1970)).

The Court reaches the same conclusion under the Ninth Circuit's test, which identifies a critical stage as one where (1) failure to pursue strategies results in a loss of significant rights, (2) skilled counsel would be useful in helping the accused understand the legal confrontation, or (3) the proceeding tests the merits of the accused's case. Each of these criteria are independently satisfied in a bail hearing, in which witnesses are called, evidence is presented, facts are mitigated, alternatives to incarceration are proposed, and the defendant can address the court.

Respondents seem to argue that because many of the defendants might be held in custody even with the benefit of a bail hearing, it must not be a critical stage when seen through the rear-view mirror. This misunderstands the standard. The prejudice to the defendant is not that

the defendant is assured success at a hearing they would otherwise not enjoy; rather, it is the fact

that they were denied the ability to access the court with counsel in a critical proceeding. Indeed,

denial of counsel at the any critical stage is a structural error because it "affec[ts] the framework

within which the trial proceeds." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006).

Accordingly, as with trials, Oregon's statutory framework for pretrial release confirms

the importance of swift appointment of counsel. Oregon law requires that a release decision is

made at the time of arraignment or other first appearance after the defendant is taken into

custody. If the prosecutor shows good cause, such as the desire to move for preventative

detention, the hearing can be delayed. ORS § 135.245(2)(a). However, in such a case, defendants

have the right to a bail hearing within five days, unless they consent to a hearing at a later date.

ORS § 135.245(7)(a). Even if Respondents are correct that a "stand in" attorney is always

provided at an initial appearance, defendants appear to be on their own if a release hearing is

delayed or recurs at a later date. For example, Petitioner Richard Owens was arraigned on

charges on June 12, 2023, and put in jail. Second Am. Pet. at 12–13. The Washington County

court then held a release hearing four days later in which no lawyer was present, and in which

the prosecutor moved for preventive detention. *Id.* The court held two more release hearings,

during the latter of which Mr. Owens was told he would need to waive counsel for the court to

release him on bail and restrictions. *Id.* He finally received counsel on August 3, 2023, a total of

53 days after arraignment, and was able to modify the bail offer and release conditions and

accept them. *Id.* A similar series of events occurred with Petitioner Leon Michael Polaski, who

had an uncounseled pretrial release and probable cause hearing on June 26, 2023, four days after

arraignment. *Id.* at 13. He appeared at another pretrial release hearing, again uncounseled, on

July 19 and was offered bail and conditions he could not meet. *Id.* Once a lawyer was appointed

to him on August 2, his case was resolved in 16 days. *Id.* As these cases illustrate, defendants are not receiving counsel at the critical stage of bail hearings.

The State, in objecting to a per se rule, appears to argue that there is no Sixth Amendment violation because many of the defendants are not being provided with critical stage hearings. Even setting aside that a bail hearing is a critical stage, Respondents get it backwards: the reason that defendants are not appearing at critical stages is that they don't have a lawyer. That is, Petitioners here do not have counsel to notify them of their right to a bail hearing or other critical proceedings. They are coerced into waiving their right to a trial in 60 days (or the court is simply ignoring this timeline for "good cause"), because they often do not receive counsel for weeks or months. Worse still, they sometimes plead guilty just to be released—again waiving their right to counsel at this critical stage. Taken together, these practices highlight the need for swift appointment of counsel to ensure minimum protections for incarcerated defendants.

### b.  Due Process

Petitioners are also likely to succeed on their claim under the Due Process Clause. The Supreme Court has long placed limits on pretrial detention. It has "prohibited excessive bail … required a judicial determination of probable cause within 48 hours of arrest ... barred punitive conditions of pretrial confinement … prohibited pretrial detention as punishment … and held that restrictions on pretrial release of adult arrestees must be carefully limited to serve a compelling governmental interest." *Lopez-Valenzuela*, 770 F.3d at 777.

In *United States v. Salerno*, the Court upheld the Bail Reform Act under a substantive and procedural due process analysis, finding that there were sufficient safeguards to justify detention for a select number of the suspected crimes. 481 U.S. 739, 755 (1987). One of these safeguards included a prompt adversarial hearing, at which counsel would be present. *Id.* This

protection, the Court said, provided the sort of "extensive safeguards sufficient to repel a facial challenge." *Id.* Applying *Salerno*, the Ninth Circuit in *Lopez-Valenzuela* found that categorical detention, without procedural protections, violated substantive due process. 770 F.3d at 781. There, the court applied the familiar standard: "The Due Process Clause provides heightened protection against government interference with certain fundamental rights and liberty interests, forbidding the government to infringe certain fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Id.* (cleaned up) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719–20 (1997); *Reno v. Flores*, 507 U.S. 292, 302 (1993)).

Here, the failure of Washington and other counties to appoint counsel, while incarcerating pretrial detainees indefinitely, is a grave deprivation of liberty that involves a compelling state interest and requires adequate procedural protections. As the Ninth Circuit has stated, the costs to the arrestee of pretrial detention are profound." *Salerno* at 871. The Supreme Court has noted that detention may impede the ability of the accused to prepare his defense, and that "traditional right to freedom before conviction permits the unhampered preparation of a defense." *Gerstein v. Pugh*, 420 U.S. 103, 123 (1975); *Stack v. Boyle*, 342 U.S. 1, 4 (1951). Indeed, no reliable process guaranteed by the Fourteenth Amendment is present when an indigent defendant is required to proceed against the power of the state without counsel while incarcerated. They are unable to adequately argue for conditional release, secure witnesses, review discovery, challenge the charging instrument, intervene in the grand jury process, negotiate with the prosecution in an arms-length fashion, request the preservation of evidence, or challenge the length of their confinement through speedy trial statutes. For some, an uncounseled guilty plea is the only avenue out of custody. Because the Fourteenth Amendment guarantees

minimum protections when individuals face that most severe forms of liberty restrictions, it bars indefinite detention without counsel.

### 2. Irreparable Harm

Petitioners will continue to suffer irreparable harm unless they are released from custody or are provided an attorney. As noted *supra*, "[i]t is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994 (internal quotations omitted) (citing *Melendres*, 695 F.3d at 1002). There is simply no alternative redress for the harm that is being suffered here. No money damages could possibly restore the liberty that is lost. The time that Petitioners have lost in custody cannot be restored by legal fiat.

### 3. Balance of Equities and Public Interest

Finally, the requested relief here poses no fiscal or administrative burden on the government. Providing counsel for class members within seven days of their first appearance will guarantee efficiency, make criminal proceedings less burdensome on all involved, and will prevent cases from being needlessly delayed. Further, it is not apparent to the Court that conditionally releasing unrepresented defendants into the community will increase administrative costs. However, if such costs do exist, they are "far outweighed by the considerable harm to Plaintiffs' constitutional rights in the absence of the injunction." *Hernandez*, 872 F.3d at 995–996. And while the government certainly has an interest in community safety, this ruling will not interfere with the Circuit Court's independent authority to set reasonable pre-trial conditions for release.

This ruling also weighs in favor of the public interest because the deprivation of class members' constitutional rights threatens the rights of all. "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in

upholding the Constitution." *Id.* at 996 (quoting *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)). And while the release of certain pretrial defendants into the community may cause legitimate concern about community safety, that theoretical fear does not mean that we should suspend the Constitution as our response. The public's interest in the rule of law and the protection of our fundamental rights is at the heart of our democracy. With every right there is a measure of risk.

### D.   Restrictive Conditions Class

Petitioners moved from preliminary injunction for a second class: individuals released on restrictive conditions in the community. Pet'rs' Mot. for Prelim. Inj. 1. For this Restrictive Conditions Class, Petitioners request that counsel is provided within 10 days to all indigent defendants released on restrictive conditions. *Id.* After the first 30 days of the injunction, Petitioners ask that the time-period before appointment is reduced to 48 hours. *Id.* If counsel is not appointed within these timelines, Petitioners ask that the court order the dismissal of the case. The Court finds that Petitioners are not likely to succeed on the merits of their claims under the Sixth, Fourteenth, and Eight Amendments.[2]

### 1.   Likelihood of Success on the Merits

#### a.   Sixth Amendment

For the Restrictive Conditions class, the Court applies the same test under *Rothgery*: the accused are entitled to counsel at all critical stages of the proceeding, and within a reasonable time to ensure adequate representation at the critical stages. 554 U.S. at 212. Here, Petitioners are

---

[2] Having concluded that Petitioners are unlikely to succeed on the merits, the Court does not address the additional factors of the preliminary injunction analysis.

unlikely to succeed on their Sixth Amendment claim because they do not clearly demonstrate, on a class-wide basis, an absence of counsel at critical stages.

Oregon law does not require an expeditious trial schedule for defendants released on conditions in the community. State law requires that a misdemeanor is to be tried within two years from the filing of the charging instrument. ORS § 135.746. For a felony, the time period is three years. *Id.* There is room for the court to extend the period and, at least in the case of felonies, any dismissal is without prejudice and the charges may be re-filed. ORS § 135.748. Therefore, there is not the same urgency to appointment of counsel that exists for in-custody defendants who are entitled to a trial within 60 days. While the Petitioners argue that failure to appoint counsel to non-custody defendants within 48 hours is a Sixth Amendment violation, the courts are free statutorily to set out a trial for two or three years—a time frame that does not necessitate a critical stage proceeding with the urgency to justify a per se 48-hour rule for appointment of counsel.

Petitioners remind us, with some merit, that individuals released on restrictive conditions are unable to return to court with a lawyer to modify the conditions of release. For those with highly restrictive conditions, their circumstances begin to mirror that of in-custody defendants. However, as noted in the discussion of commonality, only 32 individuals, at most, out of 2,657 are on house arrest or GPS monitoring. Manley Decl. 4–5. *Id.* Given that the vast majority of individuals do not have severe restrictive conditions equivalent to house arrest, the Court cannot find that they presumptively being deprived of counsel at a critical stage.

This is not to minimize the grievances of individuals without counsel for hundreds of days. It may be that some of these defendants will be prejudiced by the delay. Accordingly, once counsel is appointed, individual Petitioners can—and very well should—bring Constitutional

claims of a speedy trial violation before the trial court, which includes a fact-specific analysis of the length of the delay, the reasonableness of the delay, and any resulting prejudice. Because each claim would require an individualized assessment of the facts, the Court cannot conclude that a failure to appoint counsel within a 48-hour period is per se unreasonable in every criminal case.

Finally, Petitioners cite several cases suggesting the Court may forgo a critical stage analysis. Pet'rs' Reply Supp. Second Am. Pet. 13–14. But the cases address federal court scrutiny of state public defense institutions and whether the right to counsel is being "systematically" denied through a host of deficiencies, such as underfunding, poor training, high case load, and inadequate facilities and technology. *See, e.g., Kuren v. Luzerne Cnty.*, 146 A.3d 715, 719 (Penn. 2016). These cases do not answer the question here—i.e., at what point counsel is constitutionally mandated for a defendant facing criminal charges.

### b.  **Substantive Due Process, Equal Protection, Eight Amendment**

Petitioners are also unlikely to succeed on the merits of their substantive Due Process, Equal Protection, and Eighth Amendment Claims. Beginning with substantive due process, courts apply the standard set forth in *Glucksberg* and *Flores*, balancing the right at stake and the countervailing government interest in the harm. *Lopez-Valenzuela*, 770 F.3d at 781. Beginning with the nature of the liberty interest, the Restrictive Conditions Class as a whole does not face the sort of "fundamental" liberty deprivation as the Petitioners who are in custody. As noted multiple times above, the liberty interest at stake for the Restrictive Conditions Class varies considerably. For individuals with the minimal restriction to re-appear, there does not exist the sort of "fundamental" liberty deprivation at the heart of a due process claim that Petitioners assert.

Furthermore, any liberty deprivation, particularly if not "fundamental," must be weighed against competing government interests. As the Supreme Court has repeatedly held, "preventing crime by arrestees is both legitimate and compelling." *Salerno*, 481 U.S. at 749; *see also De Veau v. Braisted,* 363 U.S. 144, 155 (1960); *Schall v. Martin, supra,* 467 U.S., at 264–265. The State also has an interest in protecting victims of crime and the community at large, a determination that requires an examination of both the facts of the case and the history and characteristics of the defendant.

Though Petitioners contend that the charges and release conditions can remain in place so long as a lawyer is provided, the reality is that Oregon remains ill-equipped to provide lawyers to everyone charged. The inevitable result will be that defendants across the state have their charges dismissed. And this is especially relevant in light of the Court's determination that, while members of the Custody Class are to be released if counsel is not appointed in the requisite timeframe, judges may still subject them to conditions of release that ensure community safety and the appearance of the defendant. For these reasons, it is unlikely that the restrictive conditions class will succeed on its due process claim.

Similar reasons are likely to defeat Petitioners' Equal Protection claim. The parties each assert that they have the winning argument under *Bearden v. Georgia*, which found that it was unconstitutional to revoke probation on the basis of inability to pay. 461 U.S. 660, 673 (1983). There, the *Bearden* Court observed that the due process and equal protections principles "converge." *Id.* at 664. In asking whether the probation revocation was a violation of Equal Protection, a court must "determine whether, and under what circumstances, a defendant's indigent status may be considered," which is "substantially similar to asking directly the due

process question of whether and when it is fundamentally unfair or arbitrary for the State to revoke probation when an indigent is unable to pay the fine." *Id.* at 666.

Similarly, the questions here is whether there is a fundamental interest sacrificed when indigent defendants released on conditions are deprived of counsel. As explained above, the Court cannot conclude that Petitioners released on restrictive conditions—merely with the requirement that they return—is tantamount to being in custody. Therefore, instead of a per se rule, the deprivation of the right to counsel would require the same fact-intensive inquiry that was the basis of our substantive due process analysis.

Finally, Petitioners' advance an Eighth Amendment claim alongside their substantive due process claim. However, they do not explain how, or under what authority, the Eighth Amendment prohibition on excessive bail applies to Petitioners who are released on conditions. While Petitioners states that restrictive pretrial conditions "implicates the substantive liberty interest protected by the Due Process Clause and the Eighth Amendment as well as the Sixth Amendment," they do not provide case law applying this provision to a class that is not in physical custody. Reply Supp. of Mot. for Prelim. Inj. 18. And even if the Eight Amendment provided grounds for relief for Petitioners here, the Court would merge the analysis with that of substantive due process, as Petitioners' claims did. Therefore, the outcome would be the same: Petitioners are unlikely to succeed on the merits of their Eighth Amendment claim.

### c. **Procedural Due Process**

Petitioners also urge the Court the assess their claims under a procedural due process analysis, drawing on language from *Salerno* clarifying that even if government action survives substantive due process scrutiny, "it must still be implemented in a fair manner." 481 U.S. at 746 (citing *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976)). In doing so, the Court applies

another familiar test—*Mathews* "balancing." *Id.* Here, a court weighs (1) the importance of the interest at stake; (2) the risk of an erroneous deprivation of the interest because of the procedures used, and the probable value of additional procedural safeguards; and (3) the government's interest. *Id.* at 321.

First, the interest at stake mirrors substantive due process analysis. There is a liberty interest, although it is minimal compared detention, and it varies considerably amongst the class. There is also an interest in preparing for and contesting the case, something that Petitioners are less able to do without counsel. However, the Court notes that the conditionally released defendants have not been without all process. Felons have had their case reviewed by a grand jury and others have had a probable cause determination by a court. A judge has at least reviewed a recognizance sheet at arraignment while a stand-in attorney was present.

As to the probable value of additional safeguards, they are limited with respect to a substantial portion of the class. The additional safeguard of counsel will not—and often times cannot—make a difference with respect to the statutory conditions of release, such as an order to return for the next court appearance and to remain in the state unless given permission otherwise. ORS § 135.250. There is no nexus between the relief sought (presence of counsel) and the imposition of mandatory restrictions that apply to all defendants, represented or not. And if prejudicial delay is the concern, the Petitioners have procedural remedies at law in state court by raising a motion to dismiss for lack of speedy trial.

Finally, as with the substantive due process analysis, the government's interest in imposing certain conditions on pretrial release—particularly in light of the Court's decision with respect to the custody class—is quite high.

In weighing these factors, therefore, the Court concludes that Petitioners are not likely to succeed on the merits of their procedural due process claim as it relates to those who are not in physical custody.

## CONCLUSION

Respondents' Motion to Dismiss is GRANTED. Respondents' Motion for Reconsideration of Opinion and Order is GRANTED. Petitioners' Motions for Provisional Class Certification for the Restrictive Conditions Class is DENIED. Petitioners' Motion for Preliminary Injunction is GRANTED in part and DENIED in part. The preliminary injunction granted for the Petitioners applies statewide. This order will go into effect fourteen calendar days from the date of this order, and it will supersede the previous TRO issued on August 25, 2023.

1. If counsel is not secured within seven days of initial appearance for any class member currently in physical custody, or if counsel is not appointed within seven days of the withdrawal of previously appointed counsel, the sheriff of that county is ordered to release the class member.

2. Any future class member who has not secured counsel within seven days of their initial appearance must be released from physical custody. And any future class member who has not been appointed counsel within seven days of the withdrawal of previously appointed counsel must be released from physical custody.

3. Released class members are subject to the conditions of release set forth in ORS § 135.250 and any other conditions that the Circuit Court may impose that are related to assuring the appearance of the class member and the safety of the community.

4. The Circuit Court shall ensure that a release agreement is presented to and executed by the class member at the time of their release. Failure of the class member to execute the release agreement will result in the continued detention of the class member. Failure of the class member to abide by the conditions of release set forth in the release agreement may result in the revocation of their release. The Circuit Court retains its statutory authority to impose release conditions on pre-trial defendants and to enforce compliance with those conditions.

IT IS SO ORDERED.

Dated this 2nd day of November 2023.

/s/ Michael McShane
Michael McShane
United States District Judge